UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | February 19, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | N/A | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| N/A | | N/A |

**Proceedings:**   IN CHAMBERS ORDER Re MOTION TO DISMISS and MOTION TO STRIKE [34] [36]

## I.   INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs Phillip Grodzitsky, Stephanie Manzo, Jeremy Bordelon, Mark David Olson, and Solal Shah (collectively, the "Plaintiffs")[1] filed their master class action complaint in this Court on behalf of themselves and all persons in the United States who purchased or leased certain vehicles manufactured, distributed, and/or sold by Defendant American Honda Motor Co, Inc. ("Defendant") with defective window regulators. Compl. ¶ 1 (Dckt. 31). Specifically, Plaintiffs seek to represent individuals who bought or leased Honda Odysseys, Honda Pilots, Honda Elements, Honda Accords, Honda CR-Vs, Honda Civics, and Acura MDX vehicles from model years 1994-2007 (the "Class Vehicles"). Compl. ¶ 2.

Side windows in the Class Vehicles are moved up and down by a device inside the doorframe known as a "Window Regulator," which includes a central track, a metal and polymer shuttle, a cable, and an attached motor. Compl. ¶ 4. The motor pulls the cable, which causes the shuttle to move up and down along the track; the window is attached to the shuttle and moves along with it. Compl. ¶ 4. The

---

[1] Grodzitsky and Manzo are residents of California (the Court refers to them as the "California Plaintiffs"); Bordelon, a resident of Tennessee; Olson, a resident of Iowa; and Shah, a resident of New Jersey. Compl. ¶¶ 12, 17, 20, 24, 27.

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | February 19, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

cable is attached to the shuttle by a polymer bracket; however, according to Plaintiffs, these brackets are "insufficiently strong." Compl. ¶ 4. As a result, the cable becomes detached from the shuttle, rendering the windows inoperative. Compl. ¶ 4. This detachment also "often" causes the window to fall into a partially or fully-open position, and may cause the window to shatter. Compl. ¶ 4. The Court refers to this defect as the "Window Regulator Defect." Plaintiffs allege that the Window Regular Defect is caused by defects in the design, manufacture, and/or assembly of the Window Regulators, defects that "by their nature [are] susceptible to frequent mechanical failure rendering the Class Vehicle's side windows inoperable and often irretrievably stuck in the fully open position." Compl. ¶ 5.

Each lead plaintiff experienced window failure after purchasing his or her Honda, allegedly caused by the Window Regulator Defect. Grodzitsky, who purchased a 2002 Honda Odyssey LX in May of 2005 from a Honda dealership in San Diego, CA, began experiencing window failure in September of 2011. Compl. ¶¶ 12-13. Manzo, who purchased a 2007 Honda Accord in August 2008 from a Honda dealership in Hayward, CA, began experiencing window failure in March of 2012. Compl. ¶¶ 24-25. Bordelon, who purchased a 2006 Honda Element EX-P in December 2009 from a Honda dealership in Chattanooga, Tennessee, began experiencing window failure in July of 2011. Compl. ¶¶ 17-18. Olson, who purchased a Honda Element in 2009 in Ames, Iowa, began experiencing window failure "recently." Compl. ¶¶ 20-21. Shah, who purchased a 2003 Honda Pilot in September 2002 from a Honda dealer in Madison, New Jersey, began experiencing window failure in August 2011. Compl. ¶¶ 27-28. Each paid between $110 and $600 out of pocket to repair the defective windows. See Compl. ¶¶ 13, 18, 22, 25, 28. Although each car came with an express warranty, the windows stopped operating after those warranties had expired.[2]

Side windows are part of "an occupant protection system that protects occupants from outside objects intruding into the passenger compartment, including weather elements that could jeopardize the operator's ability to drive the vehicle safely." Compl. ¶ 3. They also "protect[] occupants from full- and partial-ejecting during normal vehicle operation and during crashes." Compl. ¶ 3. The Window

---

[2] Although the Complaint does not assert the length of the warranties, Honda attached copies of the express warranty provisions from the applicable owner's manuals to their motion to dismiss. See Dckt. 36-2 through 36-6. Consideration of these materials is appropriate under the incorporation by reference doctrine, which allows a court to consider documents where "the plaintiff's claim depends on the contents of a document . . . and the parties do not dispute the authenticity of the document[.]" Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). Here, as discussed below, the expiration of express warranties is relevant to Plaintiffs' consumer fraud and implied warranty claims; moreover, Plaintiffs do not dispute the authenticity of these warranties.

                                                                                :
                                     Initials of Preparer              PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | February 19, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

Regulator Defect deprives passengers of these safety benefits, "endangering vehicle occupants and compromising the occupant protection system." Compl. ¶ 5. See also Compl. ¶¶ 47-60 (describing the role side windows play in vehicle safety).

Plaintiffs allege that Defendant knew of the Window Regulator Defect when they sold the Class Vehicles, yet "failed to disclose and concealed" it from Class Members. Compl. ¶ 9. Plaintiffs assert that Defendant became aware of the Window Regulator Defect "through sources unavailable to Plaintiffs, such as pre-release testing data, early consumer complaints to Honda and dealers, testing done in response to complaints, replacement part sales data, aggregate date from Honda dealers, and other internal sources." Compl. ¶ 61. Plaintiffs further assert that three service bulletins issued by Defendant to its dealers relating to problems with side windows establish that Defendant knew of the Window Regulator Defect. Compl. ¶¶ 62-64. The first, issued September 22, 1997, noted that when operating either power or manual windows in 4-door Honda Accords, the rear edge comes out its channel. Compl. ¶ 62. The second, from July 7, 2009, notes that in certain Hondas, the window comes out of the run channel or binds, and then stalls upon closing. Compl. ¶ 63. The final one, from March 5, 2010, notes that in certain Hondas, power windows go up and reverse on their own, and are slow to open and close. Compl. ¶ 64. Plaintiffs further allege that Honda knew or should have known of "numerous consumer complaints" regarding the Window Regulator Defect. Compl. ¶ 65. Though many of the complaints are allegedly in Honda's "exclusive custody and control," Plaintiffs excerpt ten complaints allegedly posted on a website—www.topix.com—as early as 2008, each of which complains that the side windows in their Hondas are stuck.[3] Finally, Plaintiff Grodzistky alleges that, after her window began to fail in September of 2011, she called her local Honda service manager to notify Honda of the failure, and that during her conversation with the service manager, he told her that such window failures were "well-known, and that 'all [Honda Odyssesys] have that problem." Compl. ¶ 14. Grodzitsky subsequently called Honda to lodge an official complaint. Compl. ¶ 15.

Plaintiffs allege that, as a result of Honda's failure to disclose the Window Regulator Defect, Class Members have incurred "and will continue to incur, out-of-pocket costs" to repair the Window Regulator Defect, and "remain at risk of injury due to the safety defect." Compl. ¶ 11.

---

[3] Topix.com is "the leading news community on the Web, connecting people to the informant and discussions that matter to them in every U.S. town and city." http://www.topix.com/topix/about . Topix provides on-line forums, where members of the public can post comments about specified subjects, including, as relevant here, various Honda Models. See, e.g. http://www.topix.com/forum/autos/honda-odyssey .

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | February 19, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

Plaintiffs assert nine causes of action based on the alleged failure to disclose and concealment of the Window Regulator Defect: 1) violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; 2) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; 3) violations of Iowa's Private Right of Action for Consumer Frauds Act, Iowa Code §714H; 4) violations of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 (collectively, the Court refers to these four causes of action as the "Consumer Fraud Claims"); 5) breach of implied warranty pursuant to California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 and 1792.1, *et seq.*; 6) breach of Tennessee's implied warrant of merchantability, pursuant to Tenn. Code Ann. § 47-2-314; 7) breach of New Jersey's implied warranty of merchantability, N.J. Stat. Ann. § 12A:2-314; 8) violation of Cal. Civ. Code § 1710, Deceit and Common Law Fraud and, 9) unjust enrichment.

Defendant filed a motion to dismiss and a motion to strike the class allegations. (Dckt. 34, 36.) For the reasons put forward in this Order, this Court DISMISSES Plaintiffs' Fraud Claims WITH LEAVE TO AMEND. The Court further defers ruling on Defendant's motion to dismiss Plaintiffs' Song-Beverly Act and Tennessee and New Jersey implied warranty of merchantability claims, but DISMISSES Plaintiffs' Deceit and Common Law Fraud and unjust enrichment claims WITH PREJUDICE. Finally, the Court DENIES Defendant's motion to strike.

**II.    LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. See Fed. R. Civ. Proc. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id.; see also Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1951).

In reviewing a Rule 12(b)(6) motion, the Court must accept all allegations of material fact as true and construe the allegations in the light most favorable to the nonmoving party. Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002). Accordingly, while a court is not required to accept a pleader's legal conclusions as true, the court must "draw all reasonable inferences in favor of the plaintiff, accepting the complaint's [factual] allegations as true." Knievel v. ESPN, 393 F.3d 1068, 1080 (9th Cir. 2005).

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | February 19, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

The court may grant a plaintiff leave to amend a deficient claim "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Five factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his Complaint." Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990) (citing Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989)). Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. See Desoto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

Claims for fraud must meet the heightened pleading requirements of Rule 9(b). Fed. R. Civ. P. 9(b). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Rule 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud." Vess v. Ciba–Geigy Corp. U.S.A., 317 F.3d 1097, 1103–04 (9th Cir. 2003). A claim is said to be "grounded in fraud" or " 'sounds in fraud' " where a plaintiff alleges that defendant engaged in fraudulent conduct and relies on solely on that conduct to prove a claim. Id. "In that event, ... the pleading of that claim as a whole must satisfy the particularity requirement of [Fed.R.Civ.P.] 9(b)." Id.

The Ninth Circuit clarified the requirements of Rule 9(b) in In re Glenfed Inc. Securities Litigation, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc). When pleading fraud, a complaint "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." Id. at 1548 n. 7 (internal ciations and quotation marks omitted). In other words, Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false." Cafasso ex rel. United States v. Gen. Dynamics C4 Sys. ., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

|  | : |  |
|---|---|---|
|  | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | February 19, 2013 |
|---|---|---|---|

| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. |
|---|---|

### III.   DISCUSSION

####   A.  The CLRA[4]

"The CLRA prohibits 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer.'" Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting Cal. Civ. Code § 1770(a)).[5]  This prohibition bars, among other things, representations that "goods . . . have characteristics which they do not have," and that goods are "are of a particular standard, quality, or grade . . . if they are of another."  Cal. Civ. Code §§ 1770(a)(5), (7).  The standard for deceptiveness is whether conduct is "likely to mislead a reasonable consumer," or "the ordinary consumer acting reasonably under the circumstances." Colgan v. Leatherman Tool Grp., Inc., 135 Cal. App. 4th 663, 680, 682 (2006).  In their FAC, Plaintiffs allege that Defendant violated the CLRA by "failing to disclose the defective nature of the Class of Vehicles."  FAC ¶ 100.

California courts have

> generally rejected a broad obligation to disclose, adopting instead the standard as enumerated by the California Court of Appeal in Daugherty v. American Honda Motor Co., 144 Cal. App. 4th 824 (2006).  Daugherty held that a manufacturer is not liable for a fraudulent omission concerning a latent defect under the CLRA, unless the omission is "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose."

Wilson, 668 F.3d at 1141 (quoting Daugherty, 144 Cal. App. 4th at. 835).  A defendant has a duty to disclose if it "(1) is in a fiduciary relationship with the plaintiff; (2) had exclusive knowledge of material

---

[4] Although not all CLRA and UCL claims are subject to Rule 9(b)'s heightened pleading requirements, allegations of fraudulent omissions—like the ones here—are.  See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig., 754 F. Supp. 2d 1145, 1170 n.17 (C.D. Cal. 2010).

[5] The CLRA further provides that "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person" for listed damages.  Cal. Civ. Code § 1780(a).  The parties do not dispute that Defendant is a "person" and that Plaintiffs are "consumers" within the meaning of the CLRA.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | February 19, 2013 |
|---|---|---|---|

| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. |
|---|---|

facts not known to the plaintiff; (3) actively conceals a material fact from the plaintiff; or (4) makes partial representations but also suppresses some material fact." In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig., 754 F. Supp. 2d 1145, 1172-73 (C.D. Cal. 2010) (citing LiMandri v. Judkins, 52 Cal. App. 4th 326, 336 (1997)); see also Collins v. eMachines, Inc., 202 Cal. App. 4th 249, 255 (2011), reh'g denied (Dec. 15, 2011), as modified (Dec. 28, 2011), review denied (Feb. 15, 2012) (applying the LiMandri factors to a failure to disclose-CLRA claim). "In an omissions case, omitted information is material if a plaintiff can allege that, 'had the omitted information been disclosed, one would have been aware of it and behaved differently.'" Ehrlich v. BMW of N. Am., LLC, 801 F. Supp. 2d 908, 916 (C.D. Cal. 2010) (quoting Mirkin v. Wasserman, 5 Cal. 4th 1082, 1093 (1993)). "Materiality is viewed from the prospective of the reasonable consumer." Ehrlich, 801 F. Supp. 2d 916.

Where, as here, a design defect manifests itself *after* a warranty has expired, federal courts have "generally interpreted Daugherty as holding that a manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." Wilson, 668 F.3d at 1141 (internal citations, quotation marks, and alteration omitted); see also Smith v. Ford Motor Co., 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) ("Further, where, as here, a plaintiff's claim is predicated on a manufacturer's failure to inform its customers of a product's likelihood of failing outside the warranty period, the risk posed by such asserted defect cannot be merely the cost of the product's repair; rather, for the omission to be material, the failure must pose "'safety concerns.'") (internal citations and quotation marks omitted); In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig., 758 F.Supp.2d 1077, 1095 (S.D. Cal.2010) ("[A] manufacturer's duty to disclose under the CLRA is limited to safety-related issues."). The requirements that an omission be material and "safety"-related "are intertwined: in most cases, 'nondisclosures about safety considerations of consumer products are material.'" Rice v. Sunbeam Products, Inc., No. CV 12-7923-CAS-AJWX, 2013 WL 146270, at *4 (C.D. Cal. Jan. 7, 2013) (quoting In re Toyota, 754 F.Supp.2d at 1173) (alteration omitted).

Plaintiffs argue that the Window Defect is a "safety issue," and therefore that Defendant violated the CLRA by failing to disclose it.[6] In order to state a claim under the CLRA for failing to disclose a safety defect, Plaintiffs must allege 1) the existence of a design defect; 2) the existence of an unreasonable safety hazard; 3) a causal connection between the alleged defect and the alleged safety hazard; and 4) that Defendant knew of the defect at the time a sale was made. Wilson, 668 F.3d at 1143-

---

[6] As Plaintiffs concede, their CLRA claim is *not* premised on an assertion that Defendant made an affirmative misrepresentation. See Pl. Mem. in Opp. to Mot. to Dismiss at 9 n.1.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | February 19, 2013 |
|---|---|---|---|

| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. |
|---|---|

1146. Because Plaintiffs have failed to sufficiently allege that Defendant knew of the Window Regulator Defect when the Class Vehicles were sold, they have failed to state a claim under the CLRA.[7]

      1.      Knowledge

Under the CLRA, "plaintiffs must sufficiently allege that a defendant was aware of a defect *at the time of sale* to survive a motion to dismiss." Wilson, 668 F.3d at 1145 (emphasis added). Plaintiffs allege that Defendant's knowledge of the Window Defect can be inferred from "sources unavailable, such as pre-release testing data, early consumer complaints to Honda and dealers, testing done in response to complaints, replacement part sales data, aggregate data from Honda dealers, and other internal sources." Compl. ¶61; see also Compl. ¶ 65 ("Upon information and belief, Honda also knew or should have known of numerous consumer complaints regarding failures of the Window Regulator. The precise content of the complaints and the date on which Honda received the complaints is information presently in the exclusive custody and control of Honda and is not yet available to Plaintiffs."). Plaintiffs further allege that Defendant's knowledge of the Window Defect can be inferred from online complaints and their allegation that customers "communicated their dissatisfaction directly to Honda, Honda dealerships, or Honda Service Centers." Compl. ¶ 75.

The Ninth Circuit recently found almost identical allegations insufficient to support the inference that a defendant knew about a design defect at the time of sale in Wilson v. Hewlett-Packard Co.. In Wilson, the plaintiffs alleged that the defendant knew about an alleged design defect because they had "access to the aggregate information and data regarding the risk of overheating" and had received fourteen customer complaints—twelve undated, and two after the sales in question took place—about

---

[7] Some courts have also held that, in order to state a claim under the CLRA, Plaintiffs must allege actual reliance on the fraudulent omissions. See Ehrlich, 801 F. Supp. 2d at 919 ("For fraud-based claims under the CLRA . . . Plaintiff must also plead actual reliance.") (citing Buckland v. Threshold Enters., 155 Cal. App. 4th 798, 810 (2007)); see also Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 794 (9th Cir. 2012) ("[C]onsumers seeking to recover damages under the CLRA based on a fraud theory must prove 'actual reliance on the misrepresentation and harm.'") (quoting Nelson v. Pearson Ford Co., 186 Cal. App. 4th 983, 112 (2010)). Furthermore, to the extent that a plaintiff asserts a duty to disclose under the "active concealment" theory, courts have also required a plaintiff to assert factual allegations of such concealment. See In re Toyota, 754 F. Supp. 2d at 1174; Ehrlich, 801 F. Supp. 2d at 919. Because Plaintiffs have not adequately alleged that Defendant knew of the defect, the Court need not address whether they have adequately alleged these elements.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | February 19, 2013 |
|---|---|---|---|

| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. |
|---|---|

the defect. The Court found the allegation that the defendant knew of the defect because it had access to aggregate data "speculative" because it failed to "suggest how any tests or information could have alerted [the defendant] to the defect." Wilson, 668 F.3d at 1147. Similarly, Plaintiffs' generalized assertion that unspecified "pre-release testing data" and "aggregate data from Honda dealers" fails to suggest how this information could have informed Defendant of the alleged defect at the time of sale. Cf. In re Toyota, 754 F. Supp. 2d at 1192 (finding that a complaint adequately alleged that defendants had knowledge of a defect upon alleging that it knew of "NHTSA's findings of a 400% increase in 'Vehicle Speed' complaints in [defendant's cars], 37,000 concealed consumer complaints, secret Field Technical Reports and Dealership Report, issues with the electronic throttle actuator assemblies shared only with dealers and later NHTSA, eliminated references to [its cars'] speed control problems, concealed 'surging' complaints, and received consumer complaints post-recall, demonstrating the problem has not been fixed"); Cirulli v. Hyundai Motor Co., No. SACV 08-0854 AG MLG, 2009 WL 5788762, at *4 (C.D. Cal. June 12, 2009) (holding that the plaintiff had sufficiently pled Hyundai was aware that its vehicles were unusually vulnerable to premature oxidation and corrosion, and consequently structural deterioration, where plaintiff alleged that "[s]ince 1999, [Defendant] has . . . constantly tracked the National Highway Traffic Safety Administration . . . database to track reports of defective Sonata sub-frames. From this source, [Defendant] knew that its 1999–2004 Sonatas were experiencing unusually high levels of sub-frame deterioration, steering control arm separation, steering loss, and highway accidents . . . ."); see also Kowalsky v. Hewlett-Packard Co., No. 10-CV-02176-LHK, 2011 WL 3501715, at *4 (N.D. Cal. Aug. 10, 2011) (finding that plaintiffs raised a plausible inference that a defendant knew of a defect by alleging that it had advertised that it tested its printers using recognized standards that would have revealed the alleged defect and had received complaints three months prior before the plaintiff purchased his printer).

   Nor can Plaintiffs establish a plausible inference of knowledge based on their allegation that Defendant received customer complaints *after* the sales of the vehicles in question. As the Wilson court noted, "courts have expressed doubt that customer complaints in and of themselves adequately support an inference that a manufacturer was aware of a defect," because "complaints posted on a manufacturer's *webpage* merely establish the fact that some consumers were complaining. By themselves they are insufficient to show that the manufacturer had knowledge of the defect." Wilson, 668 F.3d at 1147 (internal citations and quotation marks omitted)(emphasis added); see also Baba v. Hewlett–Packard Co., No. C 09–05946 RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) ("Awareness of a few customer complaints, however, does not establish knowledge of an alleged defect."). Here, four of the ten online complaints identified by Plaintiffs were made *after* each lead Plaintiff bought his or her vehicle; and nine of the ten complaints were made *after* three of the five lead plaintiffs bought his or her vehicle. Moreover, the listed complaints were all posted on a website that

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | February 19, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

had no connection to Defendant. These customer complaints, like those in Wilson, are insufficient to show that Defendant had knowledge of the Window Regulator Defect at the time of sale. See Wilson, 668 F.3d at 1148 (finding that plaintiffs had not sufficiently alleged that the defendant knew of the alleged defect at the time of sale when plaintiffs' complaint alleged that the defendant had "access to the aggregate information and data regarding" the defect and identified twelve undated customer complaints and two customer complaints made over two years after purchase); Baba, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) (finding that three complaints posted on the defendant's website prior to the lead plaintiff's sale did not establish knowledge); Berenblat v. Apple, Inc., 08-4969 JF (PVT), 2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) (holding that an unspecified number of complaints posted on the defendant's website insufficient to show that the defendant had knowledge of an alleged defect).[8]

So too is Plaintiffs' allegation that customers "communicated their dissatisfaction directly to Honda, Honda dealerships, or Honda Service Centers." Compl. ¶ 75. The only specific complaint communicated directly to a Honda dealer is Plaintiff Grodzitsky's call to her local Honda service manager in September of 2011—again, after the sales of each of the cars. Just as *online* complaints submitted after the sales in question are insufficient to demonstrate knowledge, so too are *in person* complaints. Finally, Plaintiffs' allegation that Honda issued three bulletins to its dealers describing problems with side windows in certain class vehicles does not alter the conclusion that Defendant did not know of the Window Regulator Defect when the sales were made. One of the bulletins was issued after each sale was made; another, after three of the five sales were made. Moreover, the latter bulletin describes a different problem than the one described by Plaintiffs: the window coming out of the run channel. Similarly, the third bulletin describes a different issue than the problem asserted by Plaintiffs: although issued in 1997, this bulletin noted that when operating *either* power *or manual* windows in Honda Accords, the rear edge of the glass came out of the channel. Not only is this problem different from the one alleged by Plaintiffs, but it occurred in both power and manual windows, suggesting that the problem had little to do with the power window regulator at issue in this suit. These allegations are

---

[8] Plaintiffs argue that allegations "nearly identical" to theirs were deemed sufficient to establish knowledge under the CLRA by the district courts in Falk and Ehrlich; however, those decisions were made before the Ninth Circuit's decision in Wilson. Moreover, the Falk court found that the defendant there knew of the alleged defect based on a record of complaints made *when the vehicles at issue were being sold.* See Falk, 496 F. Supp. 2d at 1096 ("The record of complaints to GM between 2003 and 2007 [i.e. when the vehicles at issue were sold] show that GM was clearly aware of a problem with its speedometers[.]"). Here, by contrast, the only complaints provided were after the sale of the vehicles in question.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | February 19, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

insufficient to state a claim that Defendant knew of the Window Regulator Defect while selling the Class Vehicles. See Rice, 2013 WL 146270, at *8 (finding allegations that defendant had previously demanded consumers return their defective products, had received unspecified "customer service/warranty service call center records for returns and/or complaints and "numerous individual letters and communications sent by members of the Class" insufficient to allege knowledge under the CLRA). Therefore, Plaintiffs' CLRA claim is DISMISSED WITH LEAVE TO AMEND.

    **B. The UCL Claim**

California's UCL creates a cause of action for business practices that are 1) unlawful, 2) unfair, or 3) fraudulent. Cal. Bus. & Prof. Code § 17200; see also Gutierrez v. Wells Fargo Bank, NA, --- F.3d ---, No. 10-17689, 2012 WL 6684748 (9th Cir. Dec. 26, 2012) (same). "Although remedies under the [UCL] are limited to injunctive relief and restitution, the law's scope is 'sweeping.'" Gutierrez, (quoting Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999)). Moreover, each "prong" of the UCL provides a separate and distinct theory of liability. See Lozano v. AT & T Wireless Servs., Inc., 504 F.3d 718, 731 (9th Cir.2007) (citing South Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861, (1999)). Plaintiffs' allege that Defendant has committed unlawful, unfair, and fraudulent business practices.

"To be 'unlawful' under the UCL, the [alleged business practice] must violate another 'borrowed' law." Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1168 (9th Cir. 2012); see also Cel–Tech, 20 Cal. 4th at 180 ("[S]ection 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.") (internal quotation marks omitted). "Virtually any state, federal or local law can serve as the predicate for an action under section 17200." Davis, 691 F.3d at 1168 (internal citations, quotation marks, and alteration omitted). Plaintiffs allege that Defendant committed an unlawful business practice by violating the CLRA; however, as discussed above, Plaintiffs have failed to state a claim for violation of the CLRA. Therefore, Plaintiffs' UCL claim, to the extent it is premised on their CLRA claim, is DISMISSED WITH LEAVE TO AMEND.

As to Plaintiffs' allegation that Defendant engaged in "unfair" or "fraudulent" business practices, "the failure to disclose a fact that a manufacturer does not have a duty to disclose, i.e., a defect of which it is not aware, does not constitute an unfair or fraudulent practice" under the UCL. Wilson, 668 F.3d at 1146; see also Kowalsky, 2011 WL 3501715, at *6-*7 (noting that California courts and federal courts applying California law in defective product actions "have generally required a plausible showing that the defendant knew, or by the exercise of reasonable care should have known, of the alleged defect when it made the representations alleged to be deceptive."); In re Sony Grand Wega KDF-E A10/A20

|  | : |  |
|---|---|---|
| Initials of Preparer | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | February 19, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

Series Rear Projection HDTV Television Litig., 758 F. Supp. 2d 1077, 1090 (S.D. Cal. 2010) (dismissing Plaintiff's UCL claim because "Plaintiffs have failed to offer sufficiently particularized allegations showing that [the defendant] was aware of the defect when Plaintiffs purchased the televisions."); Daugherty, 144 Cal. App. 4th at 838 ("We cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is [fraudulent] within the meaning of the UCL."). Thus, because Plaintiffs have failed to plausibly allege that Defendant knew of the Window Regulator Defect, its claim that Defendant engaged in unfair and fraudulent business practices in violation of the UCL is DISMISSED WITH LEAVE TO AMEND.

### C. The New Jersey Consumer Fraud Act Claim[9]

The New Jersey Consumer Fraud Act, N.J.S.A 56:8-1 to -20 declares unlawful the "act, use or employment by any person of . . . [an] omission of any material fact with intent that others rely upon such . . . omission, in connection with the sale or advertisement of any merchandise or real estate . . . ." N.J. Stat. Ann. § 56:8-2.[10] However, "[f]or liability to attach to an omission or failure to disclose, however, the plaintiff must show that the defendant acted with knowledge." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 605, 691 A.2d 350, 365 (1997). As discussed above, Plaintiffs have failed to plausibly allege that Defendants knew of the Window Regulator Defect at the time of sale; therefore, their claim under the New Jersey Consumer Fraud Act necessarily fails. This claim is therefore DISMISSED WITH LEAVE TO AMEND.

---

[9] The New Jersey Consumer Fraud Act is subject to Rule 9(b)'s heightened pleading requirements. Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

[10] The New Jersey Act further provides that "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . may bring an action or assert a counterclaim therefor in any court of competent jurisdiction." N.J. Stat. Ann. § 56:8-19. The parties do not dispute that Defendant and Plaintiffs are both "persons" within the meaning of the New Jersey Act.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:12-cv-1142-SVW-PLA | Date | February 19, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

### D. Iowa Consumer Fraud Act Claim[11]

Iowa's Private Right of Action for Consumer Frauds Act (the "Iowa Act") prohibits persons from "engaging in a practice or act the person knows or reasonably should know is an . . . omission of a material fact, with the intent that others rely upon . . . the omission in connection with the advertisement, sale, or lease of consumer merchandise[.]" Iowa Code Ann. § 714H.3.[12] The plain language of the statute requires Plaintiffs to show that Defendant knew that they were omitting a material fact.[13] See Scenic Builders, L.L.C. v. Peiffer, 801 N.W.2d 628 (Iowa Ct. App. 2011) ("We do not search beyond the express terms of a statute when the statute is plain and its meaning is clear."); see also Rodriguez v. Holder Jr., 619 F.3d 1077, 1079 (9th Cir. 2010) ("'When the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'") (quoting Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004)). As discussed above, Plaintiffs have failed to plausibly allege that Defendants knew of the Window Regulator Defect at the time of sale; therefore, their claim under the Iowa Consumer Fraud Act necessarily fails. This claim is therefore DISMISSED WITH LEAVE TO AMEND.

### E. The Deceit and Common Law Fraud and Unjust Enrichment Claims

Defendant moved to dismiss Plaintiffs' fourth cause of action for violation of California Code § 1710 (Deceit and Common Law Fraud) and their ninth cause of action, unjust enrichment. Plaintiffs failed to oppose this motion in their Opposition. Nowhere in their thirty-page opposition to Defendant's motion to dismiss their Complaint do Plaintiffs so much as address these claims. Under the Local Rules, "[t]he failure to file any required paper, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion." Local Rule 7-12. Therefore, the Court DISMISESS

---

[11] The Court has found no federal authority interpreting the Iowa Consumer Fraud Act, but applies Rule 9(b)'s heightened pleading statute as it is a claim sounding in fraud.

[12] The Iowa Act further provides that a "consumer who suffers an ascertainable loss of money or property as the result of a prohibited practice or act in violation of this chapter may bring an action at law to recover actual damages. Iowa Code Ann. § 714H.5. The parties do not dispute that Defendant is a "person" and that Plaintiffs are "consumers" within the meaning of the Iowa Act.

[13] The Court has found only one case interpreting this provision, which addressed solely the question of whether it applied to contracts for the construction of personal residences. See Scenic Builders, L.L.C. v. Peiffer, 801 N.W.2d 628 (Iowa Ct. App. 2011).

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | February 19, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

Plaintiffs' Fourth and Ninth Causes of action WITH PREJUDICE.  See LaBrada v. Deutsche Bank Nat. Trust Co., No. CV 10-7373-CAS FMOX, 2011 WL 5570108, at *1 (C.D. Cal. Nov. 16, 2011) (dismissing a plaintiff's claim for failure to oppose pursuant to Local Rule 7-12); Nicholson v. Fed. Exp. Corp., No. CV 09-00761 MMM RZX, 2010 WL 1607832, at *7 (C.D. Cal. Apr. 20, 2010) (same).

### F. The Song-Beverly Act, Tennessee Implied Warranty of Merchantability, and New Jersey Implied Warranty of Merchantability Claims

Because the Court has dismissed Plaintiff's fraud claims with leave to amend, it will defer ruling on Defendant's motion to dismiss Plaintiffs' Song-Beverly Act and Tennessee and New Jersey implied warranty of merchantability claims.  Should Plaintiffs amend their Complaint as to the fraud claims, the amended complaint would moot the motion to dismiss; if not, the Court will rule on the motion to dismiss as to these claims then.

## IV.   MOTION TO STRIKE

Defendant moves to strike Plaintiffs' class allegations.  While some cases have held that class allegations can be stricken at the pleading stage, see, e.g. Sanders v. Apple Inc., 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009), "it is in fact rare to do so in advance of a motion for class certification." Cholakyan v. Mercedes-Benz USA, LLC, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011); see also id. (citing cases); 7AA Charles Alan Wright, Arthur R. Miller & Mary K. Kane, FEDERAL PRACTICE AND PROCEDURE Civil § 1785.3 (3d 2005) (noting that the practice employed in the overwhelming majority of class actions is to resolve class certification only after an appropriate period of discovery).  Here, Defendant has yet to file an answer and discovery has not yet begun; given the early stage of the proceedings, and the fact that the Court, in this order, is dismissing some of Plaintiffs' claims, it is premature to determine if this matter should proceed as a class action.  Accordingly, the Court DENIES Defendant's motion to strike plaintiffs' class allegations.

## V.   CONCLUSION

For the reasons put forward in this Order, this Court DISMISSES Plaintiffs' Fraud Claims WITH LEAVE TO AMEND.  Plaintiffs shall have twenty-one days from the date of this Order to submit an amended complaint.  If Plaintiffs do not intend to amend their Complaint, they are ordered to submit a declaration to the Court no later than twenty-one days from the date of this Order indicating as much.  The Court further defers ruling on Defendant's motion to dismiss Plaintiffs' Song-Beverly Act and

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:12-cv-1142-SVW-PLA | Date | February 19, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

Tennessee and New Jersey implied warranty of merchantability claims until after the Plaintiffs have submitted an amended complaint or a declaration indicating that they do not intend to amend their Complaint.  The Court further DISMISSES Plaintiffs' Deceit and Common Law Fraud and unjust enrichment claims WITH PREJUDICE.  Finally, the Court DENIES Defendant's motion to strike.

|  | : |  |
|---|---|---|
| Initials of Preparer | PMC | |