1  Jonathan D. Selbin (State Bar No. 170222)
   jselbin@lchb.com
2  LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
3  275 Battery Street, 29th Floor
   San Francisco, CA  94111
4  Telephone:  415-956-1000
   Facsimile:  415-956-1008
5
   [Additional attorneys listed on signature page]
6
7  *Attorneys for Plaintiffs*

FILED
CLERK, U.S. DISTRICT COURT

MAR 1 2 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

8             UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA – WESTERNDIVISION

10

| | |
|---|---|
| 11  PHYLLIS GRODZITSKY, JEREMY BORDELON, MARK DAVID OLSON, STEPHANIE MANZO, and SOHAL SHAH, on behalf of themselves and all others similarly situated, | Case No. 2:12-cv-01142-SVW-PLA |

11  PHYLLIS GRODZITSKY,
    JEREMY BORDELON, MARK
12  DAVID OLSON, STEPHANIE
    MANZO, and SOHAL SHAH, on
13  behalf of themselves and all others
    similarly situated,

14                    Plaintiffs,

15  v.

16  AMERICAN HONDA MOTOR
    CO., INC.,
17
                 Defendant.
18

Case No. 2:12-cv-01142-SVW-PLA

**PLAINTIFFS' MASTER CLASS ACTION COMPLAINT (SECOND AMENDED COMPLAINT) FOR:**

(1) **Violations of California's Consumer Legal Remedies Act;**

(2) **Violations of California's Unfair Competition Law;**

(3) **Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act;**

(4) **Deceit and Common Law Fraud pursuant to Cal. Civil Code § 1710;**

(5) **Breach of Implied Warranty of Merchantability Pursuant to Tenn. Code Ann. § 47-2-314;**

(6) **Violation of the Iowa "Private Right of Action for Consumer Frauds Act pursuant to Iowa Code § 714H;**

(7) **Consumer Fraud pursuant to N.J. Stat. Ann. §§ 56:8-1 *et seq.*; and**

(8) **Breach of Implied Warranty.**

**JURY TRIAL DEMANDED**

Generated by CamScanner from intsig.com

## INTRODUCTION

1.     Plaintiffs Phyllis Grodzitsky, Jeremy Bordelon, Mark David Olson, Stephanie Manzo, and Sohal Shah bring this action for themselves and on behalf of all persons in the United States who purchased or leased certain vehicles manufactured, distributed, and/or sold by American Honda Motor Co., Inc., and/or its related subsidiaries or affiliates ("Honda") with defective window regulators, as described below.  In the alternative, Plaintiffs each bring this action for themselves and on behalf of all persons in their home state who purchased or leased certain vehicles manufactured, distributed, and/or sold by Honda with defective window regulators.

2.     The vehicles at issue in this action include Honda Odyssey, Honda Pilot, Honda Element, Honda Accord, Honda CR-V, Honda Civic, and Acura MDX, TSX, RL, and CL vehicles from model years 2000-2011 (the "Class Vehicles").

3.     The Class Vehicles contain an occupant protection system that protects occupants from outside objects intruding into the passenger compartment, including weather elements that could jeopardize the operator's ability to drive the vehicle safely.  Side windows also provide a safety barrier that keeps occupants and occupants' personal property from being intruded upon and/or, in the case of personal property, stolen by ill-intentioned persons.  The occupant protection system in the Class Vehicles also protects occupants from full- and partial-ejection during normal vehicle operation and during crashes.  The occupant protection system includes the side windows.

4.     In the Class Vehicles, side windows are moved up and down by a device mounted inside the doorframe known as a "Window Regulator."  On information and belief, the Window Regulator is identical or substantially identical from an engineering standpoint in all Class Vehicles.  The Window Regulator includes a central track, a metal and polymer shuttle, a cable, and an attached

- 1 -

motor.  The glass pane of the Class Vehicles' side windows is moved up and down by the shuttle on a central track, which shuttle is connected to the ends of a single strand of cable.  The cable is threaded through pulleys at the top and bottom of the Regulator.  The cable is pulled up or down by an electric motor, which causes the shuttle to move the windowpane up or down.  The cable ends are fitted with a metal piece that keeps the cables from being pulled out of place when tension is applied to the cables by the window motor.  The metal cable ends are held in place in the shuttle by a polymer bracket.  The combination of the cable ends and the polymer brackets is insufficiently strong for the application in the Class Vehicles.

5.    Because its faulty design and insufficient strength, during normal and expected conditions, the cable ends are pulled out of place and the windows become inoperative, often falling into a partially- or fully-open position (the "Window Regulator Defect").  When the Window Regulator fails, the window often falls into the doorframe with a loud and sudden noise, and can fall with enough force to shatter the window itself.  The Window Regulator Defect can strike at any time, meaning the window can suddenly crash down while the Vehicle is parked or while it is moving at 65mph on the freeway.  Whenever the Regulator fails due to the Defect, the entire Regulator must be replaced.

6.    Because of defects in their design, manufacture, and/or assembly, the Window Regulators installed in the Class Vehicles are, by their nature, susceptible to frequent mechanical failure rendering the Class Vehicle's side windows inoperable and often irretrievably stuck in the fully open position, endangering the vehicle occupants and compromising the occupant protection system.

7.    Window failure caused by the Window Regulator Defect is not a one-time event in the Class Vehicles.  When a Window Regulator fails, the only fix Honda offers is to replace it with a new Window Regulator part with the same Defect.  Because of its defective design, the new Window Regulator inevitably fails just like the part it replaced, causing many Class Members to repeatedly spend time

1   and money to repair their Class Vehicles as their defective Window Regulators fail,

2   one after another.

3       8.      All persons in the United States who have purchased or leased a Class

4   Vehicle with the subject Window Regulators are herein referred to as Class

5   Members ("Class Members").

6       9.      The Window Regulator Defect inhibits Class Members' proper and

7   safe use of their vehicles' windows, reduces vehicle occupant protection, endangers

8   Class Members and other vehicle occupants, and requires Class Members to pay for

9   repeated replacements of the defective Window Regulators.

10      10.     Prior to the manufacture and sale of the vehicles at issue, Honda knew

11  of the Window Regulator Defect through sources such as pre-release design,

12  manufacturing, and testing data; in-warranty repair data; replacement part sales

13  data; early consumer complaints made directly to Honda, collected by the National

14  Highway Transportation Safety Administration's Office of Defect Investigation

15  ("NHTSA ODI"), and/or posted on public online vehicle owner forums; testing

16  done in response to those complaints; aggregate data from Honda dealers; and other

17  internal sources; yet despite this knowledge, Honda failed to disclose and actively

18  concealed the Window Regulator Defect from Class Members and the public, and

19  continued to market and advertise the Class Vehicles as "reliable" and "durable"

20  vehicles, which they are not.

21      11.     Honda also knew or should have known that the fix it has made

22  available to consumers for the Window Regulator Defect under warranty –

23  replacing the failed part with a new part of the same defective design – results in

24  multiple, repeated Window Regulator failures on the same vehicle.  Yet Honda has

25  failed to reimburse Class Members for the costs of replacing the failed Window

26  Regulators, and has failed to provide a permanent remedy to the Window Regulator

27  Defect.

28

12.     As a result of Honda's alleged misconduct, Plaintiffs and Class Members were harmed and suffered actual damages, in that the Class Vehicles have manifested, and continue to manifest, the Window Regulator Defect.  Honda has not provided a permanent remedy for this Defect.  Furthermore, Class Members have incurred, and will continue to incur, out-of-pocket unreimbursed costs and expenses relating to the Window Regulator Defect, and will remain at risk of injury due to the safety defect.

### PARTIES

### Plaintiffs and Their Experiences with Honda Vehicles

*Phyllis Grodzitsky*

13.     Plaintiff Phyllis Grodzitsky resides in the state of California.  Ms. Grodzitsky owns a 2002 Honda Odyssey LX, which she purchased in May 2005 as a Honda-certified pre-owned vehicle from San Diego Honda dealership Pacific Honda.  Ms. Grodzitsky's Honda was manufactured, sold, distributed, advertised, marketed, and warranted by Honda, and bears the Vehicle Identification No. 2HKRL18552H568271.  Ms. Grodzitsky purchased her Honda primarily for her personal, family, and household use.

14.     Ms. Grodzitsky's Honda experienced window failure due to the Window Regulator Defect.  On September 10, 2011, the front right passenger window on her Honda collapsed into the door and could not be retrieved.  Ms. Grodzitsky took her Honda to be repaired immediately.  Ms. Grodzitsky paid $409.00 out of pocket to repair her Honda's window.

15.     After the incident, Ms. Grodzitsky notified her local Honda service manager about her Honda's window failure.  The Honda service manager told Ms. Grodzitsky that such window failures in Honda vehicles were well known, and that "all [Honda Odysseys] have that problem."

16.     On September 12, 2011, Ms. Grodzitsky called Honda and lodged an official complaint (No. N01201109602402) regarding her Honda's window failure

1   and her frustration about never having been notified by Honda about the Window

2   Regulator Defect and the likelihood that the Defect would cause her Honda's

3   windows to fail.  During that telephone call, Honda refused to acknowledge the

4   existence or frequency of window failures in its vehicles, and failed to offer Ms.

5   Grodzitsky a reimbursement for the repair cost she had incurred, or any permanent

6   remedy for the Window Regulator Defect.

7        17.   Ms. Grodzitsky has continuously seen advertisements for Honda

8   vehicles on television, in magazines, on billboards, in brochures at the dealership,

9   and on the Internet during the years before she purchased her Honda Odyssey in

10   2005.  Although she does not recall the specifics of the many Honda advertisements

11   she saw before she purchased her Odyssey, she does recall that durability and

12   reliability were a very frequent theme across the advertisements she saw.  Those

13   advertisements about durability and reliability influenced her decision to purchase

14   her Pilot.  Had those advertisements or any other Honda materials disclosed to Ms.

15   Grodzitsky that the Class Vehicles had defective Window Regulators, or that she

16   would have to pay for repairs/replacement of the Window Regulator system, she

17   would not have purchased her Honda vehicle at the price paid.

18        *Jeremy Bordelon*

19        18.   Plaintiff Jeremy Bordelon resides in the state of Tennessee.  Mr.

20   Bordelon owns a 2006 Honda Element EX-P, which he purchased in December

21   2009 as a Honda-certified pre-owned vehicle from Chattanooga, Tennessee,

22   dealership Economy Honda.  Mr. Bordelon's Honda was manufactured, sold,

23   distributed, advertised, marketed, and warranted by Honda, and bears the Vehicle

24   Identification No. 5J6YH18776L011954.  Mr. Bordelon purchased his Honda

25   primarily for his personal, family, and household use.

26        19.   Mr. Bordelon's Honda experienced multiple window failures due to

27   the Window Regulator Defect.  In or around July 2011, the front left (driver's side)

28   window on Mr. Bordelon's Honda failed while Mr. Bordelon's wife was driving the

1   vehicle.  Just a month later, in or around August 2011, the front right (passenger

2   side) window failed while Mr. Bordelon was driving his Honda.  In both instances,

3   the repairs were made by a Honda dealer in Chattanooga, Tennessee, Economy

4   Honda, and Honda had notice of the problems Mr. Bordelon experienced with the

5   Honda Window Regulators through Honda's dealer.  To date, Mr. Bordelon has

6   paid over $600.00 out of pocket to repair his Honda's windows.

7        20.    Mr. Bordelon has continuously seen advertisements for Honda

8   vehicles on television, in magazines, on billboards, in brochures at the dealership,

9   and on the Internet during the years before he purchased his Honda Element EX-P

10  in 2009.  Although he does not recall the specifics of the many Honda

11  advertisements he saw before he purchased his Element, he does recall that

12  durability and reliability were a very frequent theme across the advertisements he

13  saw.  Those advertisements about durability and reliability influenced his decision

14  to purchase his Element.  Had those advertisements or any other Honda materials

15  disclosed to Mr. Bordelon that the Class Vehicles had defective Window

16  Regulators, or that he would have to pay for repairs/replacement of the Window

17  Regulator system, he would not have purchased his Honda vehicle at the price paid.

18       _Mark David Olson_

19       21.    Plaintiff Mark David Olson purchased his Honda Element automobile,

20  VIN# 5J6YH18766L000962, in Ames, Iowa from Willey Ford in 2009.  Mr. Olson

21  purchased his Honda primarily for his personal, family, and household use.  The car

22  is not currently under a regular or extended warranty.

23       22.    Following his purchase, Mr. Olson operated his vehicle in a manner

24  consistent with its intended use.

25       23.    Mr. Olson's driver side window recently became inoperable and

26  permanently stuck in the closed position.  Mr. Olson took his vehicle to the Ford

27  dealership's mechanic.  According to the Ford dealership, Mr. Olson's vehicle

28

1  suffers from a Window Regulator problem.  Mr. Olson was quoted a price of

2  approximately $189.00 to repair his Honda's window.

3      24.    Mr. Olson had previously owned a late 1980's model Honda Accord

4  before he purchased his Honda Element in 2007.  Mr. Olson expected he would

5  receive the same quality of safety and reliability from his Honda Element as he

6  experienced with his previously owned Honda Accord.  Mr. Olson has continuously

7  seen advertisements for Honda vehicles on television, in magazines, on billboards,

8  in brochures at the dealership, and on the Internet during the twenty plus years

9  before he purchased his Honda Element in 2007.  Although he does not recall the

10  specifics of the many Honda advertisements he saw before he purchased his

11  Element, he does recall that durability and reliability were a very frequent theme

12  across the advertisements he saw.  Those advertisements about durability and

13  reliability influenced his decision to purchase his Element.  Had those

14  advertisements or any other Honda materials disclosed to Mark David Olson that

15  the Class Vehicles had defective Window Regulators, or that he would have to pay

16  for repairs/replacement of the Window Regulator system, he would not have

17  purchased his Honda vehicle at the price paid.

18      *Stephanie Manzo*

19      25.    Plaintiff Stephanie Manzo resides in the state of California.

20  Ms. Manzo owns a 2007 Honda Accord, which she purchased new in August 2008

21  at Hayward Honda.  Ms. Manzo's Honda was manufactured, sold, distributed,

22  advertised, marketed, and warranted by Honda, and bears the Vehicle Identification

23  No. 1HGCM56827A199599.  Ms. Manzo purchased her Honda primarily for her

24  personal, family, and household use.

25      26.    Ms. Manzo's Honda experienced window failure due to the Window

26  Regulator Defect.  On March 24, 2012, the front driver's side window on her

27  Honda collapsed into the door and could not be retrieved.  Ms. Manzo notified

28  Honda's dealer, Hayward Honda, and the dealer informed her that the repair would

cost more than $300.  Ms. Manzo did not want to pay the high cost (over $300) for her Honda dealer to repair the Window Regulator, so she purchased a replacement part for around $110, and her husband did the repair himself.

27.    Ms. Manzo has continuously seen advertisements for Honda vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before she purchased his Honda Accord in 2008. Although she does not recall the specifics of the many Honda advertisements she saw before she purchased her Accord, she does recall that durability and reliability were a very frequent theme across the advertisements she saw.  Those advertisements about durability and reliability influenced her decision to purchase her Accord.  Had those advertisements or any other Honda materials disclosed to Ms. Manzo that the Class Vehicles had defective Window Regulators, or that she would have to pay for repairs/replacement of the Window Regulator system, she would not have purchased her Honda vehicle at the price paid.

*Sohal Shah*

28.    Plaintiff Sohal Shah resides in the state of New Jersey.  Mr. Shah owns a 2003 Honda Pilot, which he purchased new in September 2002 from Honda's dealer in Madison, New Jersey, Madison Honda.  Mr. Shah's Honda was manufactured, sold, distributed, advertised, marketed, and warranted by Honda, and bears the Vehicle Identification No. 2HKYF18533H531868.  Mr. Shah purchased his Honda primarily for his personal, family, and household use.

29.    Mr. Shah's Honda experienced window failure due to the Window Regulator Defect.  In August 2011, the front passenger side window on his Honda stopped working properly, and would no longer roll up or down.  The Window Regulator Defect caused Mr. Shah to incur around $280 to repair his Honda and replace the failed Window Regulator.

30.    Mr. Shah has continuously seen advertisements for Honda vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the

1   Internet during the years before he purchased his Honda Pilot in 2002.  Although he

2   does not recall the specifics of the many Honda advertisements he saw before he

3   purchased his Pilot, he does recall that durability and reliability were a very

4   frequent theme across the advertisements he saw.  Those advertisements about

5   durability and reliability influenced his decision to purchase his Pilot.  Had those

6   advertisements or any other Honda materials disclosed to Mr. Shah that the Class

7   Vehicles had defective Window Regulators, or that he would have to pay for

8   repairs/replacement of the Window Regulator system, he would not have purchased

9   his Honda vehicle at the price paid.

10                                        **Defendant**

11       31.    American Honda Motor Company, Inc. ("Honda") is a California

12   corporation with its headquarters in Torrance, Los Angeles County, California.

13   Honda is registered with the California Department of Corporations to conduct

14   business in California.

15       32.    At all times relevant herein, Honda was engaged in the business of

16   designing, manufacturing, constructing, assembling, marketing, warranting,

17   distributing, selling, leasing, and servicing automobiles, including the Class

18   Vehicles, and other motor vehicles and motor vehicle components throughout the

19   United States.

20       33.    At all times relevant herein, Honda's misconduct occurred in, and

21   emanated from, its principal place of business in Torrance, Los Angeles County,

22   California.

23                                        **JURISDICTION**

24       34.    Jurisdiction is proper in this Court pursuant to the Class Action

25   Fairness Act, 28 U.S.C. § 1332(d).

26       35.    This is a class action.  Members of the proposed Plaintiff Class are

27   citizens of states different from Honda's home state.

28

36. Upon information and belief, aggregate claims of individual Class Members exceed $5,000,000, exclusive of interest and costs.

### VENUE

37. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

38. Honda is deemed to reside in this district pursuant to 28 U.S.C. § 1391(c), so personal jurisdiction is appropriate.

39. In addition, a substantial part of the events or omissions giving rise to these claims occurred in this district.

40. Plaintiffs' venue Declarations pursuant to Cal. Civ. Code § 1780(d) are attached hereto as Exhibits 1 – 4, and Exhibit 9.

### APPLICABLE LAW

41. California law applies to all claims in this action.

42. Plaintiffs, who assert their claims against Honda, a California corporation, seek damages and equitable relief on behalf of themselves and all other persons and entities similarly situated, under the laws of the State of California.

43. All of Honda's relevant business, including the formulation and execution of the unlawful practices alleged herein, occurred in or emanated from California, where Honda has its principal place of business. Thus, California has significant contacts and/or a significant aggregation of contacts to the claims asserted by Plaintiffs and Class Members.

44. California has a materially greater interest than any other State in enforcing the rights and remedies granted to consumers under the California laws invoked in this Complaint. These rights and remedies further strong fundamental public policies of the State of California.

45. In the alternative, the laws of the states where Plaintiffs and Class Members purchased or leased their Class Vehicles apply to those Plaintiffs' and Class Members' claims in this action.

# FACTUAL ALLEGATIONS

46.     Plaintiffs bring this action for themselves and on behalf of all Class Members.  Plaintiffs are informed and believe that, because of the Window Regulator Defect, the Window Regulators in the Class Vehicles have an inordinate and dangerous propensity to fail under normal use conditions that would not cause non-defective window regulators to fail, compromising vehicle occupant protection, endangering Class Members, and requiring them to pay for repeated replacements of the defective Window Regulators.

47.     The Class Vehicles at issue in this action include Honda Odyssey, Honda Pilot, Honda Element, Honda Accord, Honda CR-V, Honda Civic, and Acura MDX, TSX, RL, and CL vehicles from model years 2000-2011.  Plaintiffs reserve the right to amend the definition of "Class Vehicles," should further discovery reveal that additional models and model-years are affected by the Window Regulator Defect.

## The Window Regulator Defect Poses an Unreasonable Safety Risk

48.     The Class Vehicles contain an occupant protection system that protects vehicle occupants from outside objects intruding into the passenger compartment, including weather elements that could jeopardize the operator's ability to drive the vehicle safely.  Side windows also provide a safety barrier that keeps occupants and occupants' personal property from being intruded upon and/or, in the case of personal property, stolen by ill-intentioned persons.

49.     The occupant protection system in the Class Vehicles also protects occupants from full- and partial-ejection during normal vehicle operation and during collisions.  The occupant protection system of the Class Vehicles includes the side windows.

50.     Once the Window Regulator Defect has caused a Class Vehicle's window to fail, and fall into a partially- or fully-open position, the Class Vehicle's occupant protection system is compromised and no longer adequately protects

1    occupants, including from full- and partial-ejection during normal vehicle operation

2    and during crashes.  Moreover, when the Window Regulator fails, the window often

3    falls into the doorframe with a loud and sudden noise that can startle the driver and

4    cause an accident.  And the window can fall with enough force to shatter the glass,

5    creating a risk of injury to driver and occupants.  Thus the Window Regulator

6    Defect poses an unreasonable safety hazard for drivers and occupants of the Class

7    Vehicles.

8           51.    Honda acknowledges that inoperative windows pose a safety risk for

9    vehicle occupants.  In a March 25, 2011 press release, Honda explained that it was

10   voluntarily recalling 2011 Odyssey vehicles to replace the front door side window

11   glass because of a window regulator defect "causing the window to become

12   inoperative and preventing it from being rolled up or down.  In the worst case, the

13   window may bind and shatter onto the occupants."  Statement by American Honda

14   Regarding Front Door Glass Recall: 2011 Odyssey (March 25, 2011), *available at*

15   http://www.honda.com/newsandviews/article.asps?id=5950-en.  Honda further

16   underscored the seriousness of this safety risk by urging all affected vehicle owners

17   to bring their vehicles in for repair right away, "as soon as they receive notification

18   of this recall from Honda."  *Id.*

19          52.    Honda also acknowledges that side windows serve an important role in

20   the vehicles' safety system.  Honda's Chief Engineer for Research and

21   Development responsible for Collision Safety recently testified as a corporate

22   representative of Honda, "[i]t is our position our position that both the windshield

23   and the side windows can prevent a partial ejection of an occupant."  Deposition of

24   Hideki Koga, March 10, 2011, at 62:4-6, in *Cartwright v. American Honda Motor*

25   *Co., Inc., et al.*, No. 9:09-cv-00205-RC-JKG (E.D. Texas).  Mr. Koga also agreed

26   under oath that it was "a goal of the 1997 Honda Accord that the side windows

27   minimize the possibility of people being ejected through the side windows in a

28   collision."  *Id.* at 17:2-6.

53. Similarly, Honda's technical expert in *Cartwright* testified under oath that side windows serve a role in "minimizing ejections" of occupants and that tempered glass [used in Honda's side windows] offers "resistance to ejection" for occupants.  Deposition of Michael Reid Carhart, Ph.D., May 26, 2011, at 133-134, in *Cartwright,* No. 9:09-cv-00205-RC-JKG (E.D. Texas).

54. Side windows in passenger vehicles are the subject of Federal Motor Vehicle Safety Standard ("FMVSS") 205.  49 CFR Ch. V (10-1-04 Edition) § 571.205.  This provision, which sets forth minimum standards that vehicle manufacturers must comply with, was promulgated by the United States Department of Transportation, National Highway Traffic Safety Administration ("NHTSA") and is included under the regulatory section addressing "crashworthiness" of vehicles.

55. FMVSS 205 specifies minimum standards for glazing materials for use in motor vehicles, including side windows.  The stated purposes of FMVSS 205 include "to reduce injuries resulting from impact to glazing surfaces," and "to minimize the possibility of occupants being thrown through the vehicle windows in collisions."

56. FMVSS 205 specifically incorporates by reference the standards set forth in "American National Standard for Safety Glazing Materials for Glazing Motor Vehicles and Motor Vehicle Equipment Operating on Land Highways-Safety Standard," ANSI/SAE Z26.1–1996, Approved by American National Standards Institute, August 11, 1997 ("ANSI Z26.1").  ANSI Z26.1 requires that the side windows in passenger vehicles must comply with certain minimum standards, as evidenced by being subjected to a variety of tests.  The tests set forth in ANSI Z26.1 for passenger vehicle windows include: (1) dropping a ½-pound steel ball from 10 feet in the air onto sheets of specimen glass.  The stated purpose of this test is "to determine whether the safety glazing material has a certain minimum strength to resist impact from exterior projectiles such as stones;" and (2)

1    dropping an 11-pound shot bag from 8 feet in the air onto sheets of specimen glass.

2    The stated purpose of this test is "to determine whether the safety glazing material

3    has a certain minimum strength under impact by a large yield object representing

4    parts of the body of an occupant of a vehicle."  *See* ANSI Z26.1 §§ 5.6, 5.8.

5           57.    Methods for improving the occupant restraint capabilities of side

6    windows in passenger vehicles have been studied extensively by NHTSA and

7    private engineers.  In 2011, NHTSA promulgated FMVSS 226, "Ejection

8    Mitigation," which set forth a new minimum standard for preventing ejection of

9    occupants during collisions, including rollovers.  In this FMVSS, NHTSA stated

10   that it "anticipates that manufacturers will meet the standard by modifying existing

11   side impact air bag curtains, and possibly supplementing them with advanced

12   glazing [in side windows]."

13          58.    One method for meeting the minimum standards set forth in FMVSS

14   226 is through the use of side-curtain airbags, which are intended to cover the side-

15   window area during certain collision events.  In vehicles with side-curtain airbags,

16   side windows serve an additional safety function of serving as a reaction surface –

17   that is, a surface against which the airbag will be braced during a collision, thereby

18   protecting the occupant from hard impact against interior or exterior surfaces.

19          59.    The FMVSSs clearly indicate that side windows in passenger vehicles

20   are generally accepted to serve an important function as part of vehicles' occupant

21   protection system.

22          60.    It has also long been generally accepted in the engineering community

23   that side windows can prevent occupant ejection during collisions.  *See, e.g.*,

24   Patrick, L.M., "Glazing for Motor Vehicles," Society of Automotive Engineers, Inc.

25   (SAE) 952717 at 166 (1995) ("Tempered Glass side windows are strong enough to

26   withstand severe occupant impact, and consequently prevent some ejections.").

27          61.    Moreover, that vehicles can be operated with their windows rolled

28   down does not diminish the role in a safety system that properly functioning

windows serve.  For example, seat belts are indisputably a part of the occupant

protection system.  However, vehicles can be operated without occupants using the

seat belts.  That in no way diminishes the safety hazard that would be presented by

vehicles with defective seat belts that fail unexpectedly.

62.     Because of the role side windows serve in occupant protection, a

defect, such as the subject Window Regulator Defect, that compromises occupants'

ability to operate the windows appropriately, including by moving the windows into

a closed position, necessarily presents a safety defect.

63.     Moreover, when the Window Regulator fails, the window often falls

into the doorframe with a loud and startling noise – if the failure occurs while the

vehicle is being driven, the sudden sound can cause the driver to veer and

potentially cause an accident.

64.     Numerous absent Class Members have told NHTSA, and Honda

directly, that the Window Regulator Defect poses a safety risk, as illustrated by the

following examples: [1]

a.     "The contact owns a 2007 Honda CRV. The power window

devices and controls were not working properly. The contact had to stop the vehicle

50 times to clear the windows manually. The dealer and Honda stated there was

nothing they could do to assist him with diagnosis. The contact indicated the **safety**

**risk involved**. The current and failure mileage were 2400."  Complaint in NHTSA

ODI database, ODI ID No. 10182581, failure date Feb. 14, 2007.

b.     "The window regulators and power door locks on the Honda's I

own keep failing and cost more than 300 dollars to repair. This seems to be a

systemic problem on the Honda's. I have had this happen on all 4 doors of my 2000

Honda Accord and 2 doors on my 2004 Honda Pilot. Honda needs to do a recall

---

[1] Quotes are left as written, except that those originally in all-caps have been
changed to sentence case.  Due to the sheer number of typographical and
grammatical errors, [sic] notation has not been used.  Any emphasis has been
added, unless otherwise noted.

and fix this issue. People shouldn't have to pay for a systemic issue in the car, which can be **a safety issue as well** as you can't put the windows down or up once this happens." Complaint in NHTSA ODI database, ODI No. 10263517, failure date Jun. 22, 2008.

        c.    "While traveling north bound on US hwy 29 [in 2003 Honda Odyssey], traveling at approximately 50 mph with all windows in their fully closed positions, the passenger side window simply disappeared into the door. **After erratic maneuver, due to sudden and surprise in a rush of air into the cabin, speed had to be reduced**. Frantic efforts to raise the window failed. Vehicle was pulled over to the side of the road. … A very similar event occurred to the drivers side door under very similar circumstances. Accident was averted in that event … The fact that no warning occurred in either case, makes this **a very serious problem that could easily cause a driver to steer off of the road or be distracted for the moment it takes to cause an accident (especially during inclement weather).** I would like to see Honda Corporation take responsibility for repairing this very serious mechanical problem that leads to compromised cabin safety." Complaint in NHTSA ODI database, ODI ID No. 10238558, posted Aug. 17, 2008.

        d.    "A sudden collapse of the rear window [on 2003 Honda Civic] the rear window collapsed upon itself for no apparent reason, **filling the back seat with sharp shards of glass**. The car was parked in the driveway … and i was standing right behind the car when the rear window started to collapse upon itself. **I shudder to think what would have happened to a baby restrained in the back seat if such a glass shower landed on it** while driving. I had the rear window replaced at my own cost. My efforts to have the manufacturer reimburse me under the car warranty failed." Complaint posted on NHTSA database, NHTSA ODI No. 10261721, failure date Jan. 1, 2009.

e.      "It just seems like this is a very common problem... I called Honda Customer Care and cannot get them to call me back in a timely manner. The representative acted suprised that I had it fixed already! I am expected to drive around town with the window open and leave it out parked where anyone can get into it? Was I suppose to pay to rent a car I would be safer in and keep mine garaged? As a single woman living in a city, **I bought my car [2006 Honda Pilot EX] for safety and I feel like honda feels this is just an annoyance issue and not a SAFETY issue.** The dealership acted annoyed that I had called customer care and I cannot get my "case worker" to even call me back. It looks like I am just out $377 to replace a part on a window I never use. NICE!"  Complaint posted by melissanv on carcomplaints.com (post date Mar. 28, 2011).

65.      Thus Class Members – reasonable consumers all – clearly consider the Window Regulator Defect to be a material, unreasonable safety hazard for drivers and occupants of the Class Vehicles, as well as for those in other cars on the road.

### Honda Knew of the Window Regulator Defect Prior to Sale or Lease of the Class Vehicles

66.      On information and belief, Honda became aware of the Window Regulator Defect at least as early as 1994, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, through sources such as pre-release design, manufacturing, and testing data; in-warranty repair data; replacement part sales data; early consumer complaints made directly to Honda, collected by NHTSA ODI, and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Honda dealers; as well as through other internal sources unavailable to Plaintiffs prior to discovery.

A.      **Honda's Knowledge of the Window Regulator Defect Gained From Pre-Release Design, Manufacture, Engineering, and Testing Data**

67.      Preliminary expert analysis made without the benefit of discovery indicates that, in or around 1994, Honda changed the design of window regulators

1   used in its Honda and Acura vehicles, switching from a gear-driven model to the

2   plastic shuttle/cable model Window Regulator, presumably to cut costs.  The poor

3   design and flimsy material of the plastic shuttle/cable Window Regulator was

4   quickly and clearly shown by the sudden and significant increase in Window

5   Regulator failures in Honda and Acura vehicles beginning in or around 1994.  For

6   example, one Honda repair shop's records show that, since at least the late 1990s,

7   Window Regulators have been the single most frequently repaired replacement part

8   on the Class Vehicles.

9           68.     During the decision-making process of switching from the reliable

10  gear-driven model to the plastic shuttle/cable Window Regulator, Honda

11  necessarily would have gained comprehensive and exclusive knowledge about the

12  Class Vehicle's Window Regulators:  the types and properties of materials used to

13  make the parts, including their durability and whether those materials would

14  weaken over time regardless of wear and use; the basic engineering principles

15  behind the construction and function of the parts; the forces and stresses the parts

16  would face; when and how the parts would fail; and the cumulative and specific

17  impacts on the parts caused by wear and use, the passage of time, and

18  environmental factors.  This Window Regulator design, engineering, manufacture,

19  and testing data is unavailable to Plaintiffs without discovery, but upon information

20  and belief, an adequate pre-release analysis of the design, engineering, and

21  manufacture of the Window Regulators used in the Class Vehicles would have

22  revealed to Honda that the design and materials selection of the plastic shuttle/cable

23  Window Regulator were insufficient for the intended use, would not last the useful

24  life of the vehicle, even under less-than-normal use, and were defective.

25

26

27

28

**B.**     **Honda's Knowledge of the Window Regulator Defect From In-Warranty Repair Data**

69.     Honda also knew or should have known about the Window Regulator Defect because of the large number of Window Regulator repairs made during the Class Vehicles' warranty periods.

70.     Honda collects, reviews, and analyzes detailed information about repairs made under warranty at its dealerships and service centers, including the type and frequency of such in-warranty repairs.  Honda dictates that when a repair is made under warranty, Honda service centers must provide detailed documentation of the problem and the fix, describing "complaint, cause, and correction" and saving the broken part in case Honda later decides to audit the dealership or otherwise verify the warranty repair.  For their part, Honda service centers are meticulous about providing this detailed information about in-warranty repairs to Honda, because Honda will not pay the service centers for the repair if the "complaint, cause, and correction" are not sufficiently described.

71.     While complete data on warranty repairs is exclusively within Honda's control and unavailable to Plaintiffs without discovery, upon information and belief, Honda service centers began to see an increasing number of Window Regulator failures on Class Vehicles beginning in or around 1994, soon after Class Vehicles fitted with the plastic shuttle/cable Window Regulators hit the market.

72.     In addition, numerous customer complaints collected by NHTSA's Office of Defect Investigation ("NHTSA ODI") and posted in online vehicle owner forums also show that as early as 1994, and certainly well before the Class Vehicles were purchased or leased,  Honda was making – and thus collecting detailed warranty repair data on – a large number of in-warranty Window Regulator repairs on Class Vehicles, including instances of multiple in-warranty Window Regulator repairs made on the same Vehicle.  For example:

- "Complaint about the malfunction on my [1996 Honda Civic] driver side window,and the fact that **this problem occured over three times while under Honda warranty**, and was never resolved."  Complaint in NHTSA ODI database, ODI ID No. 10007761, failure date Oct. 22, 1997.

- "The left rear and right rear window regulator [in 1996 Acura RL] failed. The consumer stated he had used the window no more than 60 to 75 times since owning the vehicle and a window regulator should not fail in such a short period of time. **The dealer did replace the right rear window regulator under warranty**, which had  since expired. The dealer was not willing to take any responsibility, even though they admitted the regulators were prone to failure."  Complaint in NHTSA ODI database, ODI ID No. 10003929, failure date Dec. 16, 2002.

- "The power window regulator [in 1997 Honda Civic] failed early upon, within warranty.  **It was repaired by warranty**."  Complaint in NHTSA ODI database, ODI ID No. 10071325, failure date Jan. 15, 2003.

- "This has happened to me twice! I left work on Friday of Labor Day weekend only to find that my [Honda Element's] passenger side window had vanished while parked in the lot. … **They replaced it the following Tuesday [Sept. 5, 2006] under warranty**.  ¶  I walked to the parking lot last night after work - the same thing, except the driver's side window was missing this time. At least I knew exactly where to look. The first time I thought my car might've been broken into, but no broken glass.....took me a couple of seconds to look down inside the door.  ¶  Anyway, **it is back at the dealer today getting the second window regulator replaced in exactly one month's time** - 9/5 and 10/5."  Complaint posted by leslie k on elementownersclub.com (post date Oct. 4, 2006).

- "My driver front window [on Acura TSX] stopped rolling down just the other day. ¶ … This is the 2nd time I've had a window go out(**first was under warranty**)…"  Complaint posted by TinkySD on tsx.acurazine.com (post date Aug. 6, 2007).

- "In late August of this year [2007], I am raising the driver's side window [on 2004 Honda Element EX] and I hear a *SNAP* and the window slowly rolls down and will not go back up.  ¶  I take the E to my dealer and am told it's the window regulator cable and that the part is **On Backorder Nationally**. They do get the part within the week and **the repair is covered under my 7year/70K extended warranty**, so everything is cool.  ¶  until.... ¶ October 9th [2007].....I am raising the passenger side window and *SNAP* there goes the other one....!  … **Again, covered under warranty**. … So it appears that if I want to keep my E for an extended time, the only smart thing to do would be to continue to extend the warranty (if further extended warranties would cover the part), since it appears that I may be dropping $700 every 3-4 years to replace these buggers."  Complaint posted by snowman882 on elementownersclub.com (post date Oct. 12, 2007).

- "I bought this car [2004 Honda Odyssey LX] from Honda dealer as new. **All of the 4 window regulators were broken just slightly before and after warranty time (2006 - 2007) and were replaced by the dealer**.  Honda refused to pay the cost for two of them (front).  This Monday (1/17/2011), 3 of them were broken again at the same time."  Complaint posted by fea4you, on carcomplaints.com (post date Jan. 17, 2011).

73.    The complete warranty repair data in Honda's exclusive possession, including the large number of Window Regulator repairs made on Class Vehicles during the warranty period, and many instances of the same vehicle requiring

1   multiple Window Regulator repairs, put Honda on notice of the Window Regulator

2   Defect.

3       C.    **Honda's Knowledge of the Window Regulator Defect Gleaned
             from the Large Number of Replacement Window Regulators
4            Ordered from Honda**

5       74.    Honda also knew or should have known about the Window Regulator

6   Defect because of the high number of replacement Window Regulator parts that

7   were ordered from Honda, which should have alerted Honda that this was a serious

8   defect affecting a wide range of its vehicles.

9       75.    Upon information and belief, all Honda service centers are required to

10  order replacement parts, including Window Regulators, directly from Honda.  Other

11  independent vehicle repair shops that service the Class Vehicles also order

12  replacement parts, including Window Regulators, directly from Honda.

13      76.    Thus Honda has detailed, accurate, and real-time data regarding the

14  number and frequency of replacement part orders.  The sudden increase in orders

15  for replacement Window Regulators beginning in or around 1994, and the ongoing

16  high sales of replacement Window Regulators from that time forward, was known

17  to Honda, and alerted Honda that its plastic shuttle/cable Window Regulators were

18  failing at an alarmingly high rate and were defective.

19      D.    **Honda's Knowledge of the Window Regulator Defect Gained
             From Class Member Complaints Made Directly To Honda**
20

21      77.    Honda also knew or should have known about the Window Regulator

22  Defect because numerous consumer complaints regarding failures of the Window

23  Regulator were made directly to Honda.  The large number of complaints, and the

24  consistency of their descriptions of the Window Regulator Defect and the window

25  failure it caused in the Class Vehicles, alerted Honda to this serious safety defect

26  affecting a wide range of its vehicles.

27      78.    The full universe of complaints made directly to Honda about the

28  Window Regulator Defect is information presently in the exclusive custody and

control of Honda and is not yet available to Plaintiffs prior to discovery. However, upon information and belief, many Class Vehicle owners complained directly to Honda and Honda dealerships about the repeated Window Regulator failures their vehicles experienced. For example, some instances of these direct-to-Honda complaints are described in Class Vehicle owners' complaints logged with NHTSA ODI and posted on online vehicle owner forums:

- "Door cable regulator [in 1999 Acura CL] broke. Due to the broken cable, the window dropped down into the doors. **The dealer was notified and acknowledged the problem**, but will not fix it. … **Acura was not interested in developing a fix** for the problem. The problem may recur in any of the windows and it was unsafe to leave the vehicle in the rain, shopping center, etc., due to the fact the they could open by themselves." Complaint in NHTSA ODI database, ODI ID No. 10044530, failure date Oct. 22, 2003.

- "Has anyone **reported window regulator to Acura** (not dealer). My 1996 RL rear left window failed 3 yrs. ago and today the right rear window failed. Fault - crappy mechanism. **I intend to contact Acura**. My history - no children - window barely operated compared to front windows. I doubt if rear window operations total 50." Complaint posted by venny on acuraworld.com (post date May 6, 2005).

- "My [2006 Honda Pilot LX] driver side, rear window fell down into the car with a loud bang! ¶ The dealer says they can't cover it and **Honda corporation is saying they can't help**. ¶ There are so many problems with this on the web that you would think a class action suit is in order." Complaint posted by John B., on carcomplaints.com (post date Mar. 15, 2011).

- "It just seems like this is a very common problem and I don't understand why it costs so much to have fixed. **I called Honda Customer Care** and cannot get them to call me back in a timely manner. The representative acted suprised that I had it fixed already! I am expected to drive around town with the window open and leave it out parked where anyone can get into it? Was I suppose to pay to rent a car I would be safer in and keep mine garaged? As a single woman living in a city, I bought my car [2006 Honda Pilot EX] for safety and I feel like honda feels this is just an annoyance issue and not a SAFETY issue. The dealership acted annoyed that I had called customer care and I cannot get my "case worker" to even call me back. It looks like I am just out $377 to replace a part on a window I never use. NICE!"  Complaint posted by melissanv on carcomplaints.com (post date Mar. 28, 2011).

- "**I called Honda Customer Care and reported exactly what happened** [on 2006 Honda Pilot]:  ¶ While pulling into the garage, there was a loud THUNK. When we turned around to investigate the noise, we saw that the rear passenger window was all the way down - INSIDE THE DOOR. It would not roll up.  …  **I was given a case number and told to make an appointment with the dealer for the diagnostic as soon as possible, and to call Customer Care back with the diagnostic findings** and that a case worker will get back to me with their determination within 24 - 48 hours."  Complaint posted by Jen E., on carcomplaints.com (post date Sept. 9, 2011).

79.     As the above sampling of complaints makes clear, Class Members have been vocal in complaining directly to Honda about the Window Regulator Defect, and the number and consistency of their complaints should have alerted Honda about the Window Regulator Defect.

**E.    Honda's Knowledge of the Window Regulator Defect From Class Member Complaints Collected by NHTSA's Office of Defect Investigations**

80.    In addition to complaints made directly to Honda, many Class Vehicle owners lodged complaints about the Window Regulator Defect with NHTSA's Office of Defect Investigations ("NHTSA ODI"), beginning as early as 1994, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles.

81.    Federal law requires automakers like Honda to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement, backed by criminal penalties for violation, of confidential disclosure of defects by automakers to NHTSA, including field reports, customer complaints, and warranty data.  *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

82.    Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements.  *Id.*

83.    Similarly, automakers should and do monitor NHTSA databases for consumer complaints regarding their automobiles as part of the automakers ongoing obligation to identify potential defects in their vehicles, including safety-related defects, such as failures in their occupant protection systems including side windows.  *Id.*  Thus Honda knew or should have known of the many complaints about Window Regulator failure logged by NHTSA ODI, and the content, consistency, and large number of those complaints alerted, or should have alerted, Honda to the Window Regulator Defect.

84.    NHTSA's publicly available ODI database contains only complaints made in the past five years on its website; thus complaints made before 2008 are not readily accessible.  Honda, however, had contemporaneous and on-going access to the NHTSA consumer complaint data and that information cannot be obtained by Plaintiffs without discovery.  A sampling of the publicly available complaints

lodged with NHTSA ODI, however, includes those quoted in paragraphs ¶¶ 64(a)-(d), 72, 78, and 91, as well as the following:

- "Automatic window regulator failed [on 1994 Honda Civic]."  Complaint in NHTSA ODI database, ODI ID No. 479143, failure date Apr. 1, 1994.

- "The driver's side window [on 1995 Honda Accord] failed."  Complaint in NHTSA ODI database, ODI ID No. 517479, failure date Jun. 1, 1995.

- "Power window regulators [on 1995 Honda Accord] failed two times."  Complaint in NHTSA ODI database, ODI ID No. 542560, failure date Oct. 16, 1996.

- "When driver's side power window [on 1995 Honda Accord] was rolled down it got stuck down in the door and will not come back up."  Complaint in NHTSA ODI database, ODI ID No. 829898, failure date Nov. 1, 1998.

- "[On 1996 Honda Civic] the windows themselves have fall off there holding devices, causing them to fall within the frames of both doors; they have not broken…yet!!!!"  Complaint in NHTSA ODI database, ODI ID No. 749890, failure date Oct. 15, 2000.

- "While rolling [1999 Honda Civic] driver's side window up with automatic button, window stopped approx 1/3 of the way from the top and wouldn't go farther... Upon examination, found to be the window regulator."  Complaint in NHTSA ODI database, ODI ID No. 757694, failure date Jan. 29, 2002.

- "Power windows fail [on 1997 Honda Civic]. The incident has occurred at least 7 times in the past five years. ... The part is always replaced and always fails."  Complaint in NHTSA ODI database, ODI ID No. 10008350, failure date Feb. 27, 2003.

- "The [driver's side] window [on 1995 Honda Accord] will go down just fine, but will not go back up.  You have to keep the window up so you can pull up on the window glass and press the window switch 'up' to get the window back up…"  Complaint in NHTSA ODI database, ODI ID No. 10071091, failure date Oct. 15, 2003.

- "The contact owns a 2003 Honda Accord. The contact stated that the two front windows on her vehicle would not go up or down. The vehicle has been to the dealer at least three times and they replaced the motors, but the windows still do not go up and down."  Complaint in NHTSA ODI database, ODI ID No. 10272764, failure date May 3, 2005.

85.    As the above sampling of complaints makes clear, Class Members have been vocal in complaining to NHTSA ODI about the Window Regulator Defect since at least 1994, and Honda was, or should have been, aware of and monitoring those complaints, and thus should have known about the Window Regulator Defect since at least 1994, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles.

**F.    Honda's Knowledge of the Window Regulator Defect Gleaned From Class Member Complaints on Public Online Forums**

86.    In addition to complaints made directly to Honda and collected by NHTSA ODI, many Class Vehicle owners posted complaints about the Window Regulator Defect on public online vehicle owner forums.  The following is a small sampling of such complaints:

- "2006 Odyssey. Same problem happened just yesterday. passenger side power window and both rear windows will not operate. Driver's window operating normally. I checked all fuses - OK. Power window lock-out switch normal. You can hear a click like a relay engaging when you toggle the switches, but the window motors are not functioning. Can't be motors

because all three just quit working at the same time! Is there a master relay power circuit not providing juice to the window motors? I checked the master 40 Amp fuse under the hood designated 'power windows'- OK. Any knowledge here appreciated."  www.topix.com (posted on Feb. 9, 2008)

- "I have exactly the same issue on an 02 Honda Odyssey. We cleaned the car yesterday and suddenly the Drivers control switch only operates the driver side window. The passenger side switch does not work either. Checked all fuses under the hood and on the passenger side panel to no avail. Did anyone figure this out?"  www.topix.com   (posted on Nov. 20, 2009)

- "2003 honda odyssey passenger side window not operating at all removed and replaced window regulator hear a clicking sound but still does not work what could be wrong?"  www.topix.com   (posted on Oct. 25, 2010)

- "Same thing on my 2007 HO. Only the drivers' side window goes down, the other three don't. I hear a clicking sound when I try to roll the windows down from the drivers' side. The other windows won't go down from their individual switches either, same clicking sound. It did happen after I had to have the drivers' side door open during a rain storm. Can it be fixed inexpensively? Any help would be appreciated!"  www.topix.com (posted on June 8, 2011)

- "I just rolled the driver side window down on my 2003 Honda Element and it won't come back up. I heard a noise when it went down. Cable maybe? I can hear a noise when I hit the window switch. Any help is appreciated!" www.justanswer.com  (posted on Jan. 2010)

- "I have 2003 element. I have read all the threads concerning the windows and regulators and such...the only thing stopping me from buying the part online

and installing myself is this-most of the ppl in this forum who needed new regulators, heard some noises... either at the time of failure, and/or after failure.  I didnt hear anything when it got stopped moving up... and I do not hear anything when either of the power window buttons are pushed now. The passenger side power window is stuck approx. 2/3 up. it can be lifted up manually from my experiements.  questions- for this 2003 element, which fuses should i check first?  do you think it is the regulator or another issue?" www.elementownersclub.com  (posted on Dec. 11, 2008)

- "I am hoping for some advice in isolating a problem with my power driver's side window.  After putting the window up, it would not go down. When activating the switch to the down position there is no click at all, but when moved to the 'up' position one hears a relay type click. I removed the door panel (many thanks to earlier threads) in hope of a loose connection but no such luck. I have reviewed the threads and am still uncertain if this is a switch or regulator problem. I come to the mountain seeking wisdom....any advice on how to discern which part I need?"  www.elementownersclub.com (posted on Oct. 13, 2009)

- "2002 Civic EX power window problem – I was wondering if anyone can help me with my power window problem.  Passenger window is having problem rolling up.  I can roll the window down using the switch but its not rolling up.  Is it the motor or is it the switch?  Please advise on how to solve the issue."  Thanks. www.civicforums.com (posted on Dec. 10, 2008)

- "Hi, Ive a accord 2007, and i have been having problem with my pasenger side and the rear two windows. The driver side works perfectly fine but the other three windows are not going down... i can hear the click sound but thats it. I checked the fuse they all are fine.. someone told me it could be

something to do with the reseting of the windows. Is that the case? if so how do you do that? if not, pls suggest how to fix that."  http://honda-tech.com (posted on March 19, 2010)

- "I have a problem with my power window on my <u>2002 Honda</u> Civic LX coupe.  Its the passenger side window. Basically, I rolled my window down this Sunday and was cleaing the inside of my vehicle and when I went to roll it back up it would not work.  What I have done so far as trouble shooting: I have checked fuses and they are fine. All other electrical components are working including the driver side power window and all power door locks and lights. I have taken the door panel off and checked all wires in the acual switch for power and the the first from left to right are hot as follows: the first, middle and last leads are hot. The two on each side of the middle are grounds to my knowledge and are not hot.  We connected the window switch and disconnected the lead to the window regulator motor and both are hot when the window switch is pressed up or down as if we were trying to roll the window up or down.  I have ordered and replaced the entire window regulator brand new and not a rebuilt item.  So I can only think of two options:  A bad new window regulator or a bad ground which I dont know how to check for.  I will test the bad window regulator out by taking my driver side regulator that is working and test it on the passenger side just to see if works there.  As far as how to test for the bad ground wire I welcome any advice or if it could be anything else please let me know." www.civicforums.com (posted on July 15, 2009)

- "As soon as I go to the Honda Dealer, I explain my issues.... a big POP sound and then the window slowly disappeared into the door. The guy says... 'Ow, sounds like the window regulator.' Hmm, seems like this is a constant thing if he knew exactly what it was? I asked if it would be covered by the

warranty since it's not something that should be happening within 3 yrs of owning the vehicle, I'm the original owner. He said no. ¶ I'll be writing into the Honda Corp to see if they may have pity on my sole and spare me some discount…"  Complaint posted by T C, on carcomplaints.com (post date Nov. 2, 2009).

87.    As this small sampling of complaints makes clear from websites such as www.topix.com, www.justanswer.com, www.elementownersclub.com, www.driveaccord.net, www.honda-tech.com, and www.civicforums.com, consumers have been vocal in complaining about the Window Regulator Defects and the damage being caused by these Defects.  A multi-billion dollar vehicle manufacturing company such as Honda undoubtedly had and has a marketing department that tracks such sites and should reasonably have been aware of the Window Regulator Defect in the Class Vehicles.

G.    **Honda's Knowledge of the Window Regulator Defect Shown in Service Bulletins Honda Sent to its Dealerships and Service Centers**

88.    Service bulletins issued by Honda to its dealerships indicate that at least as early as 1997, and certainly well before Plaintiffs and Class Members purchased or leased their vehicles, Honda was aware of ongoing operating problems with the Class Vehicles' Window Regulators.  On September 22, 1997, Honda issued a service bulletin to its dealers regarding 1994-97 Honda Accord 4-door vehicles.  Specifically the bulletin noted that when operating a front window (power or manual), the rear edge of the glass comes out of its channel.  Service Bulletin attached hereto as Exhibit 5.  The bulletin purportedly advised how to adjust the Window Regulator to correct this problem.

89.    On July 7, 2009, Honda issued another service bulletin to its dealers describing a similar problem but expanding the vehicles affected to include certain 2006-08 Civic 4-Doors, and 2007-09 Civic Hybrids.  Service Bulletin attached

hereto as Exhibit 6.  The bulletin explained that when the window comes out of the run channel or binds, it then stalls when you try to close the window.  The bulletin advised, among other things, to replace the Window Regulator.

90.     On March 5, 2010, Honda issued yet another service bulletin to its dealers describing further problems with the windows and further expanding the vehicles affected to include all 2003-10 Accords, 2006-10 Civics, 2007-10 Civic Hybrids, 2007-10 CR-Vs, 2003-10 Elements, 2009-10 Fits, 2010 Insights, 2005-10 Odysseys, 2009-10 Pilots, and 2006-10 Ridgelines.  Service Bulletin attached hereto as Exhibit 7.  According to this service bulletin the power windows raise and reverse on their own, are slow to open and close, and/or squeal, creak, clunk, or click. The bulletin advised, among other things, to replace the Window Regulator.

**H.     Honda's Knowledge of Window Regulator Defect Shown by Honda Service Center Employees' Knowledge of Defect**

91.     Honda's knowledge of the Window Regulator Defect is also shown by the fact that some Honda service center employees admitted to Class Members, including Mrs. Grodzitsky, that Window Regulator failure was a well-known and pervasive problem affecting the Class Vehicles.  For example:

- "The left rear and right rear window regulator [in 1996 Acura RL] failed. The consumer stated he had used the window no more than 60 to 75 times since owning the vehicle and a window regulator should not fail in such a short period of time. The dealer did replace the right rear window regulator under warranty, which had  since expired. The dealer was not willing to take any responsibility, even though **they admitted the regulators were prone to failure**."  Complaint in NHTSA ODI database, ODI ID No. 10003929, failure date Dec. 16, 2002.

- "I also replaced the rear window(left and right) on my 97" [Acura] RL.  ¶ **As I talked with the Honda dealer here, (he is also a 97" RL owner), he told me it's normal on this model since Honda/Acura use plastic "gear"(slip**

ring) on this regulator structure which is very easy to break/creak down as time goes by."  Complaint posted by SJSU95132 on acuraworld.com (post date May 9, 2005).

- "**I am sick and tired of the run around from Honda saying there is no excessive problem with the window regulators** in the 2006 Honda Pilot. I first had the LR window regulator fail and the window fell down into the door ( small plastic guide broke ) at a cost of about $350. Then the LF window dropped down into the door. That was another $350. About 2 months later, the same window stopped working in either direction. **I took the vehicle back to the dealer and they said the window regulator was defective and replaced it at no charge.** Just three weeks ago the LR window fell down in the door for a second time and cost me about $300 (got a small measly discount). Then, on Friday, August 19, 2011, only 3 weeks after the last failure, while on vacation in Laughlin, Nevada I had just fill up with gas and heard a loud thud. This time it was the RR window that had fallen down in the rear door. I had to tape cardboard in the back window and risk someone breaking into my car until I got back home this weekend.....This my friends is the fifth time I will have my window regulator replaced by Honda …. I will be in the Honda Dealership tomorrow to fight with them and will raise holy hell if they do not repair this one at no cost to me..I also fear I have one more window that has not yet failed. I'll cross that bridge when (not if ) it comes."  Complaint posted by Joe S., on carcomplaints.com (post date Aug. 19, 2011).

92.     In sum, as early as 1994, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, Honda was aware of the Window Regulator Defect, should have been aware of the Window Regulator Defect through the exercise of reasonable care, and/or was negligent in failing to be

1    aware of the Window Regulator Defect, based on, among others, the following

2    sources:

3           a.      Knowledge Honda must have gleaned during design,

4    manufacture, and pre-release testing of the Window Regulators and the Class

5    Vehicles;

6           b.      Detailed data gathered by Honda about large number of in-

7    warranty Window Regulator Defect repairs;

8           c.      Knowledge Honda had of the large number of replacement

9    Window Regulators ordered from Honda;

10          d.      Numerous and consistent vehicle owner complaints made

11   directly to Honda about the Window Regulator Defect;

12          e.      Numerous and consistent vehicle owner complaints collected by

13   NHTSA ODI about the Window Regulator Defect;

14          f.      Numerous and consistent vehicle owner complaints made on

15   online vehicle owner forums;

16          g.      Service bulletins sent by Honda to its dealerships evincing

17   knowledge of ongoing issues with Window Regulators in the Class Vehicles; and

18          h.      Honda service center employees' familiarity with and

19   knowledge of the Window Regulator Defect.

20       93.    Moreover, the large number and consistency of Class Member

21   complaints describing the Window Regulator Defect as a safety risk underscores

22   the fact that Class Members considered the Window Regulator Defect to be a

23   material issue to the reasonable consumer.

24                    **Honda's Marketing and Concealment**

25       94.    Upon information and belief, Honda knowingly manufactured and sold

26   the Class Vehicles with the Window Regulator Defect, while willfully concealing

27   the true inferior quality and poor reliability of the Class Vehicles and failing to

28   disclose material facts about the Class Vehicles' safety.

95.     Honda directly markets the Class Vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media.

96.     Honda's marketing material describes the various Class Vehicles as "reliable," "rugged," "durable," "tough," and "able to handle almost any condition." Honda also touts the "extended maintenance intervals" of the Class Vehicles, implying that they will require less-frequent maintenance than other vehicles.

97.     For example, Honda introduced its Element model in 2002, and since then has advertised it nationally, via many media, as a durable vehicle particularly suited to active lifestyles.  Honda marketing targets the Element towards "Generation Y," individuals born between 1977 and 1994, who have active lifestyles and want a vehicle that is affordable yet rugged.  On its website, Honda described the Element as "[possibly] the most functional vehicle on the road today. We designed it to get you and yours … anywhere you want to go."  The Element "takes functionality to the extreme so you can do whatever on your own terms." But the Window Regulator Defect prevalent in the Class Vehicles, including the Element, indicates otherwise – the so-called "go anywhere," "do anything" vehicle supposedly suited to "active," "extreme" lifestyles is instead not even suitable for everyday use.

98.     Similarly, Honda's national, multimedia marketing for its Odyssey, CR-V, Accord, Civic, and Pilot models, as well as its Acura vehicles, repeatedly emphasizes the supposed reliability, durability, and toughness of the Class Vehicles and the "extended maintenance intervals" that suggest the Class Vehicles will require fewer repairs than other vehicles.  Honda's marketing makes no mention of the weak, defectively designed Window Regulators installed in the Class Vehicles that will fail repeatedly and require numerous, costly repairs to these supposedly "reliable," "rugged" vehicles with "extended maintenance intervals."

- 35 -

99.   In practice, the Class Vehicles are neither as durable nor as functional as Honda's marketing suggests.  Honda concealed the fact that the so-called "reliable" Class Vehicles, supposedly "able to handle almost any condition," are instead not even suitable for ordinary conditions because the Window Regulators fail repeatedly even under ordinary use.

100.   Plaintiffs and Class Members were exposed to Honda's long-term, national, multimedia marketing campaign touting the supposed reliability and durability of the Class Vehicles, and Class Members justifiably made their decisions to purchase/lease their Class Vehicles based on Honda's misleading marketing that concealed the true, defective nature of the Class Vehicles.

101.   Further, Honda knowingly misled Class Members about the true, defective nature of the Class Vehicles.  As detailed above, upon information and belief, Honda has been aware of the Window Regulator Defect since at least 1994, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, through pre-release design, manufacture, and testing data, the high number of in-warranty Window Regulator repairs and replacement part sales, and the numerous and consistent complaints about the Window Regulator Defect made directly to Honda, collected by NHTSA and posted in public online forums.

102.   But despite Honda's knowledge of the numerous and consistent consumer complaints and in-warranty repairs reported directly to Honda, Class Members who called Honda customer service about the Window Regulator Defect were told that Honda had never heard of the problem before and that no others had reported issues with their vehicles' Window Regulators.

103.   However, for only some of those owners who loudly complained about the Window Regulator Defect causing their vehicles' windows to fail quickly and often repeatedly, Honda would occasionally repair the Window Regulator for free, or for a reduced price, even though the vehicle's warranty period had expired.  This indicates that Honda was aware of the pervasiveness of the Window Regulator

Defect, as well as the fact that the Defect would occur repeatedly because the broken Window Regulators were simply replaced with the same defective part, virtually guaranteeing the replacement Window Regulators would also fail, bringing the angry owner back into the shop for another repair.  This conduct amounted to a secret recall or selective warranty extension by Honda, which further establishes that Honda had notice of the Window Regulator Defect prior to the manufacture and sale of the Class Vehicles.

104.   Some sample descriptions of these "goodwill" repairs include the following:

- "I have had a recurring problem with the power window on the drivers side door of my [1996] Accord EX coupe. The first incident ocurred on July 27, 1997 at an odometer reading of 21536. The problem was fixed for no cost. The next failure ocurred on October 20, 1998 when the odometer reading was 43050. **This was also fixed without charge under a goodwill warranty**. The last failure ocurred on 9/28/99 when the odometer read approximately 61442. The dealer (Woodland Hills Honda) indicated the car was well past warranty and they would do **a one time only warranty repair for 50% of the repair cost.** I was required to pay the balance of $182.09. I told the service department that this was a recurring problem and thought Honda should cover the entire repair. I was told the district service manager denied the request."  Complaint in NHTSA ODI database, ODI ID No. 712533, failure dates Jul. 27, 1997, Oct. 20, 1998, and Sep. 28, 1999.

- "Driver's power window [on 1996 Honda Odyssey] made a metallic spring-like sound when closing. Mechanic diagnosed … 'window regulator & motor were bad, replaced them.' Power window worked normally when delivered to dealers service, just made a noise. When he called me, mechanic said window was not working at all. **After much argument, dealer agreed to a**

**'50% goodwill' split of charges** due to age/mileage. My share of repair cost was $320.49." Complaint in NHTSA ODI database, ODI ID No. 10107674, failure date Aug. 18, 1999.

- "I hit the end of my warrantee yesterday, and guess what... problems today. I went out to my car [Honda Element] after work, and the driver's side window had apparently slid down into the door. … **Honda Cars of Corona (CA), fixed my window for FREE! Even though my mileage was just over warrantee**. It was apparently a fairly expensive part too." Complaint posted by Legioss on elementownersclub.com (post date Nov. 22, 2006).

- "Has anyone experienced their windows falling down and then not being able to get them back up? I have a 2001 and today is the third time this has happened on the third different window. I walk out to my car and find the window dropped down into the door. The glass doesn't break but I guess the part that holds it up breaks. … I am bringing it to the dealer tomorrow but I am out of warranty so they will not cover it... [Five days later:] The good news was that **after some nice & gentle complaining about this being crazy that 3 of my 4 windows had fell down, acura did cover the repair (would have been $400 at N. Scottsdale Acura).** … I still think it's very suspect for something like that to happen so many times on the same car!" Complaint posted by aschulder on mdxers.org (post dates Sept. 5, 2007 and Sept. 10, 2007).

- "While traveling north bound on US hwy 29 [in 2003 Honda Odyssey], traveling at approximately 50 mph with all windows in their fully closed positions, the passenger side window simply disappeared into the door. After erratic maneuver, due to sudden and surprise in a rush of air into the cabin, speed had to be reduced. Frantic efforts to raise the window failed. Vehicle

was pulled over to the side of the road. Dealership was contacted. … No accidents occurred. … Dealership repaired problem and charged approximately $250.00, claiming part was not covered under any warranty. A very similar event occurred to the drivers side door under very similar circumstances. Accident was averted in that event, **due to the suddenness of the even[t] the dealership repaired the very same issue at no charge**. The fact that no warning occurred in either case, makes this a very serious problem that could easily cause a driver to steer off of the road or be distracted for the moment it takes to cause an accident (especially during inclement weather). I would like to see Honda Corporation take responsibility for repairing this very serious mechanical problem that leads to compromised cabin safety." Complaint in NHTSA ODI database, ODI ID No. 10238558, posted Aug. 17, 2008.

- "I called Honda Customer Care and reported exactly what happened: ¶ While pulling [2006 Honda Pilot] into the garage, there was a loud THUNK. When we turned around to investigate the noise, we saw that the rear passenger window was all the way down - INSIDE THE DOOR. It would not roll up. ¶ **Honda Customer Care Response: … Take to dealer for diagnostic. If they conclude that it is defective part versus owner negligence, Honda will determine possible financial assistance**. … [Two months later:] … Our dealer took care of everything - contacted the regional service manager - and coordinated payment with Honda Care...**total cost for repair $460 - our share was only $100**." Complaint posted by Jen E. on carcomplaints.com (post dates Sept. 9, 2011 and Dec. 19, 2011).

105.   As with in-warranty repairs, Honda required its service centers to fully document these low- or no-cost "goodwill" repairs made outside warranty, providing detailed "complaint, cause, correction" information as well as a

1    description of the "goodwill" deal given.  Thus these "goodwill" repairs also were a

2    source of detailed information for Honda about the number and frequency of

3    Window Regulator failures in the Class Vehicles, and should have further alerted

4    Honda to the existence of the Window Regulator Defect.

5        106.   And yet, despite the mounting evidence to the contrary, Honda

6    continued – and continues – to market the Class Vehicles as "reliable," "durable,"

7    "tough," and "rugged," even as the weak, defectively designed Window Regulators

8    installed in the Class Vehicles fail again and again, proving the Class Vehicles

9    anything but "durable," "reliable," and low-maintenance.

10       107.   In sum, despite its knowledge of the existence and pervasiveness of the

11   Window Regulator Defect, Honda has actively concealed the existence and nature

12   of the Window Regulator Defect from Class Members since at least 1994, and

13   certainly well before Plaintiffs and Class Members purchased or leased their Class

14   Vehicles.  Specifically, Honda has:

15       a.    Failed to disclose, at and after the time of purchase, lease, and/or

16   repair, any and all known material defects of the Class Vehicles, including the

17   Window Regulator Defect;

18       b.    Failed to disclose, at and after the time of purchase, lease, and/or

19   repair, that the Class Vehicles' Window Regulators were defective and not fit for

20   their intended purposes;

21       c.    Failed to disclose, and actively concealed, the fact that the Class

22   Vehicles' Window Regulators were defective, despite the fact that Honda learned

23   of the Window Regulator Defect as early as 1994, and certainly well before

24   Plaintiffs and Class Members purchased or leased their Class Vehicles, through

25   reports of in-warranty repairs from dealers, replacement part sales data, customer

26   complaints made directly to Honda and its dealers, complaints collected by NHTSA

27   ODI, complaints posted on online vehicle owner forums, as well as other internal

28   sources in Honda's exclusive knowledge;

1          d.     Failed to disclose, and actively concealed, the existence and

2    pervasiveness of the Window Regulator Defect even when directly asked about it

3    by Class Members during communications with Honda, Honda Customer Care,

4    Honda dealerships, and Honda service centers;

5          e.     Actively concealed the Window Regulator Defect by forcing

6    Class Members to bear the cost of repeatedly replacing the defective parts, while at

7    the same time replacing defective Window Regulators at no (or lower) cost for

8    those who complained vocally and often, and calling these "goodwill"

9    replacements;

10         f.     Actively concealed the Window Regulator Defect by

11   consistently replacing broken Window Regulators with the same defective part, so

12   that the Window Regulator Defect is not permanently corrected in Class Members'

13   vehicles, even though Class Members were led to believe that the replacement had

14   cured the Window Regulator Defect in their vehicles; and

15         g.     Actively concealed the Window Regulator Defect by knowingly

16   selling and installing replacement Window Regulators in Class Members' vehicles,

17   while knowing and concealing that the replacements are just as defective as the

18   broken Window Regulators they replaced, and that using the same defective parts

19   will force Class Members to repeatedly repair their Class Vehicles as the defective

20   Window Regulators – and the equally defective replacements – fail again and again.

21       108.   By engaging in the conduct described above, Honda has concealed,

22   and continues to conceal, the Window Regulator Defect from Class Members.  If

23   Class Members had knowledge of the information Honda concealed, they would

24   have factored the existence of the Window Regulator Defect into their decision to

25   purchase/lease (or not to purchase/lease) the Class Vehicles.

26                    **Fraudulent Concealment Allegations**

27       109.   Absent discovery, Plaintiffs are unaware of, and unable through

28   reasonable investigation to obtain, the true names and identities of those individuals

1    at Honda responsible for disseminating false and misleading marketing materials

2    regarding the Class Vehicles.  Honda necessarily is in possession of all of this

3    information.  Plaintiffs' claims arise out of Honda's fraudulent concealment of the

4    Window Regulator Defect and the safety hazard it poses, and its representations

5    about the quality, durability, reliability, toughness, and ruggedness of the Class

6    Vehicles.  To the extent that Plaintiffs' claims arise from Honda's fraudulent

7    concealment, there is no one document or communication, and no one interaction,

8    upon which Plaintiffs base their claims.  Plaintiffs allege that at all relevant times,

9    including specifically at the time they purchased or leased their vehicle, Honda

10   knew, or was reckless in not knowing, of the Window Regulator Defect; Honda

11   was under a duty to disclose the Defect based upon its exclusive knowledge of it, its

12   affirmative representations about it, and its concealment of it; and Honda never

13   disclosed the Defect to the Plaintiffs or the public at any time or place or in any

14   manner.

15       110.   Plaintiffs make the following specific fraud allegations with as much

16   specificity as possible absent access to the information necessarily available only to

17   Honda:

18           a.     **Who**:  Honda actively concealed the Window Regulator Defect

19   from Plaintiffs and the Class while simultaneously touting the durability, reliability,

20   safety, and ruggedness of the Class Vehicles, as alleged in paragraphs 94 - 108,

21   above.  Plaintiffs are unaware of, and therefore unable to identify, the true names

22   and identities of those specific individuals at Honda responsible for such decisions.

23           b.     **What**:  Honda knew, or was reckless or negligent in not

24   knowing, that the Class Vehicles contain the Window Regulator Defect, as alleged

25   above in paragraphs 66 - 93.  Honda concealed the Defect and made representations

26   about the durability, reliability, safety, ruggedness, and other attributes of the Class

27   Vehicles, as specified above in paragraphs 94 - 108.

28

1          c.      **When**:  Honda concealed material information regarding the

2   Defect at all times and made representations about the quality, durability,

3   reliability, toughness, and ruggedness of the Class Vehicles, starting no later than

4   1994, or at the subsequent introduction of certain models of Class Vehicles to the

5   market, continuing through the time of sale/lease, and on an ongoing basis, and

6   continuing to this day, as alleged above in paragraphs 94 – 108.  Honda has not

7   disclosed the truth about the Defect in the Class Vehicles to anyone outside of

8   Honda.  Honda has never taken any action to inform consumers about the true

9   nature of the Defect in Class Vehicles.

10         d.      **Where**:  Honda concealed material information regarding the

11   true nature of the Defect in every communication it had with Plaintiffs and the

12   Class and made representations about the quality, durability, reliability, toughness,

13   and ruggedness of the Class Vehicles.  Plaintiffs are aware of no document,

14   communication, or other place or thing, in which Honda disclosed the truth about

15   the Defect in the Class Vehicles to anyone outside of Honda.  Such information is

16   not adequately disclosed in any sales documents, displays, advertisements,

17   warranties, owner's manual, or on Honda's website.

18         e.      **How**:  Honda concealed the Window Regulator Defect from

19   Plaintiffs and the Class and made representations about the quality, durability,

20   reliability, toughness, and ruggedness of the Class Vehicles.  Honda actively

21   concealed the truth about the existence and nature of the Defect from Plaintiffs and

22   Class Members at all times, even though it knew about the Defect and knew that

23   information about the Defect would be important to a reasonable consumer and

24   Honda promised in its marketing materials that Class Vehicles have qualities that

25   they do not have.

26         f.      **Why**:  Honda actively concealed material information about the

27   Defect in Class Vehicles for the purpose of inducing Plaintiffs and Class Members

28   to purchase and/or lease Class Vehicles, rather than purchasing or leasing

competitors' vehicles and made representations about the quality, durability, reliability, toughness, and ruggedness of the Class Vehicles.  Had Honda disclosed the truth, for example in its advertisements or other materials or communications, Plaintiffs (and reasonable consumers) would have been aware of it, and would not have bought the Class Vehicles or would have paid less for them.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment Tolling

111.   Upon information and belief, Honda has known of the Window Regulator Defect in the Class Vehicles since at least 1994, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, and has concealed from or failed to notify Plaintiffs, Class Members, and the public of the full and complete nature of the Window Regulator Defect, even when directly asked about it by Class Members during communications with Honda, Honda Customer Care, Honda dealerships, and Honda service centers.  Honda continues to conceal the Defect to this day.

112.   Any applicable statute of limitation has therefore been tolled by Honda's knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

### Estoppel

113.   Honda was and is under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the Class Vehicles.  Honda actively concealed – and continues to conceal – the true character, quality, and nature of the Class Vehicles and knowingly made representations about the quality, durability, reliability, toughness, and ruggedness of the Class Vehicles.  Plaintiffs and Class Members reasonably relied upon Honda's knowing and affirmative representations and/or active concealment of these facts.  Based on the foregoing, Honda is estopped from relying on any statutes of limitation in defense of this action.

**Discovery Rule**

114.   The causes of action alleged herein did not accrue until Plaintiffs and Class Members discovered that their Class Vehicles had the Window Regulator Defect.

115.   However, Plaintiffs and Class Members had no realistic ability to discern that the Class Vehicles were defective until – at the earliest – after the Window Regulator Defect caused their vehicle's windows to fail.  Even then, Plaintiffs and Class Members had no reason to know the Window Regulator failure was caused by a defect in the Class Vehicles because of Honda's active concealment of the Window Regulator Defect.  Not only did Honda fail to notify Plaintiffs or Class Members about the Window Regulator Defect, Honda in fact denied any knowledge of or responsibility for the Window Regulator Defect when directly asked about it.  Thus Plaintiffs and Class Members were not reasonably able to discover the Window Regulator Defect until after they had purchased or leased the Class Vehicles, despite their exercise of due diligence, and their causes of action did not accrue until they discovered that the Window Regulator Defect caused their vehicle's window failure.

**CLASS ACTION ALLEGATIONS**

116.   Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other Class Members similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

117.   The Class is defined as:

> All persons in the United States who purchased or leased
> a Class Vehicle with the Window Regulator (the "Class");

118.   In the alternative, the following Subclasses are defined as:

1
2
3

> All California residents who purchased or leased a Class Vehicle with the Window Regulator in California (the "California Subclass");

4
5
6

> All Tennessee residents who purchased or leased a Class Vehicle with the Window Regulator in Tennessee (the "Tennessee Subclass");

7
8
9

> All Iowa residents who purchased or leased a Class Vehicle with the Window Regulator in Iowa (the "Iowa Subclass"); and

10
11
12

> All New Jersey residents who purchased or leased a Class Vehicle with the Window Regulator in New Jersey (the "New Jersey Subclass").

13   119.   Excluded from the Class and/or Subclasses are: (1) Honda, any entity

14   or division in which Honda has a controlling interest, and its legal representatives,

15   officers, directors, assigns, and successors; (2) the Judge to whom this case is

16   assigned and the Judge's staff; (3) governmental entities; and (4) those persons who

17   have suffered personal injuries as a result of the facts alleged herein.  Plaintiffs

18   reserve the right to amend the Class and Subclass definitions if discovery and

19   further investigation reveal that the Class and/or Subclasses should be expanded,

20   otherwise divided into subclasses, or modified in any other way.

21                    **Numerosity and Ascertainability**

22   120.   Although the exact number of Class Members is uncertain and can

23   only be ascertained through appropriate discovery, the number is great enough such

24   that joinder is impracticable.  The disposition of the claims of these Class Members

25   in a single action will provide substantial benefits to all parties and to the Court.

26   Class Members are readily identifiable from information and records in Honda's

27   possession, custody, or control, as well as from records kept by the Department of

28   Motor Vehicles.

**Typicality**

121.   The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by Honda.  The representative Plaintiffs, like all Class Members, have been damaged by Honda's misconduct in that they have incurred or will incur the cost of repairs relating to the Window Regulator Defect.  Furthermore, the factual bases of Honda's misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

**Adequate Representation**

122.   Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective vehicles.

123.   Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so.  Neither Plaintiffs nor their counsel have interests adverse to those of the Class.

**Predominance of Common Issues**

124.   There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members, the answer to which will advance resolution of the litigation as to all Class Members.  These common legal and factual issues include:

a.   whether the Class Vehicles suffer from the Window Regulator Defect;

b.   whether the Window Regulator Defect constitutes an unreasonable safety risk;

c.   whether Honda knew or should have known about the Window Regulator Defect, and, if yes, how long Honda has known of the defect;

d.      whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Class Vehicle;

e.      whether Honda has a duty to disclose the defective nature of the Class Vehicles to Plaintiffs and Class Members;

f.      whether Honda omitted and failed to disclose material facts about the Class Vehicles;

g.      whether Honda's concealment of the true defective nature of the Class Vehicles induced Plaintiffs and Class Members to act to their detriment by purchasing Class Vehicles;

h.      whether Honda represented, through its words and conduct, that the Class Vehicles had characteristics, uses, or benefits that they did not actually have, in violation of California's Consumer Legal Remedies Act ("CLRA");

i.      whether Honda represented, through its words and conduct, that the Class Vehicles were of a particular standard, quality, or grade when they were of another, in violation of the CLRA;

j.      whether Honda advertised the Class Vehicles with the intent not to sell them as advertised, in violation of the CLRA;

k.      whether Honda's affirmative misrepresentations about the true defective nature of the Class Vehicles were likely to mislead or deceive, and therefore fraudulent, within the meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

l.      whether Honda's affirmative misrepresentations about the true defective nature of the Class Vehicles were and are unfair within the meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

m.      whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

n.     whether Honda engaged in unfair and/or deceptive acts in violation of Iowa Code §714H;

o.     whether Honda's representations, omissions, concealment of material facts, and other conduct violated New Jersey's Consumer Fraud Act, N.J. Stat. Ann. §56:8-1;

p.     whether Plaintiffs and the other Class Members are entitled to a declaratory judgment stating that the Window Regulators in Class Vehicles are defective and/or not merchantable;

q.     whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction; and

r.     whether Honda should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of permanently remedying the Window Regulator Defect in the Class Vehicles.

### **Superiority**

125.   Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Honda's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

126.   Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Honda's misconduct.  Absent a class action, Class Members will continue to incur damages, and Honda's misconduct will continue without remedy.

127.   Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class

treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

### FIRST CAUSE OF ACTION

(Violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.)

128.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

129.   Plaintiffs bring this cause of action for themselves and on behalf of Class Members.

130.   Honda is a "person" as defined by the CLRA.  Cal. Civ. Code § 1761(c).

131.   Plaintiffs and Class Members are "consumers" within the meaning of the CLRA.  Cal. Civ. Code § 1761(d).

132.   By failing to disclose the defective nature of the Class Vehicles to Plaintiffs and Class Members, Honda violated Cal. Civ. Code § 1770(a), because Honda represented that the Class Vehicles had characteristics and benefits (i.e. reliability, durability, etc.) that they do not have, and represented that the Class Vehicles were of a particular standard, quality, or grade (i.e. rugged, durable, etc.) when they were of another.  *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

133.   Honda's unfair and deceptive acts or practices occurred repeatedly in Honda's course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and imposed a safety risk on the public.

134.   Honda knew, as early as 1994, and certainly before the sale or lease of the Class Vehicles, that the Class Vehicles' Window Regulators suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

135.   Honda was under a duty to Plaintiffs and Class Members to disclose the defective nature of the Window Regulators, as well as the associated costs that would have to be repeatedly expended in order to repair the Class Vehicles due to the Window Regulator Defect, because:

a.   The Window Regulator Defect is a safety hazard;

b.   Honda was in a superior position to know the true state of facts about the Window Regulator Defect in the Class Vehicles;

c.   Plaintiffs and Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had the Window Regulator Defect until, at the earliest, the manifestation of the Defect; and

d.   Honda knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the Window Regulator Defect prior to its manifestation.

136.   In failing to disclose the defective nature of the Class Vehicles, Honda knowingly and intentionally concealed material facts and breached its duty not to do so.

137.   The facts concealed or not disclosed by Honda to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase a Class Vehicle.  Moreover, a reasonable consumer would consider the Window Regulator Defect to be a safety risk, as Class Members did.  Had Plaintiffs and other Class Members known that the Class Vehicles had the Window Regulator Defect, they would not have purchased a Class Vehicle.

138.   Plaintiffs and Class Members are reasonable consumers who do not expect their Class Vehicles will experience a Window Regulator Defect.  That is the reasonable and objective consumer expectation relating to the safe and normal operation of vehicle windows.

139.   As a result of Honda's conduct, Plaintiffs and Class Members have been harmed and have suffered actual damages in that the Class Vehicles repeatedly manifest the Window Regulator Defect, causing inconvenience, creating a safety hazard, and causing Class Members to spend money to repeatedly repair the recurring Defect.

140.   As a direct and proximate result of Honda's unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

141.   Plaintiffs and the Class are entitled to equitable relief.

142.   Plaintiffs have provided Honda with proper notice of its alleged violations of the CLRA pursuant to Cal. Civ. Code § 1782(a), via a letter sent to Honda and its registered service agent on November 10, 2011.  Honda failed to provide the appropriate relief for its violation of the CLRA within 30 days of the date of the notification letter.  Plaintiffs' notice letter is attached hereto as Exhibit 8.

143.   Thus, pursuant to Cal. Civ. Code § 1782(a), Plaintiffs seek, in addition to equitable relief, actual, statutory, punitive damages as permitted under the CLRA (Cal Civ. Code §1750, *et seq.*) and applicable law.

## SECOND CAUSE OF ACTION

(Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code
§ 17200, *et seq.*)

144.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

145.   Plaintiffs bring this cause of action for themselves and on behalf of Class Members.

146.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."  Honda engaged in conduct that violated each of this statute's three prongs.

147.   Honda committed an *unlawful business act or practice* in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., when it violated the CLRA as alleged in Paragraphs 129 - 144, above.

148.   Honda committed *unfair business acts and practices* in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., when it concealed the existence and nature of the Window Regulator Defect and represented that the Class Vehicles were "reliable," "durable," and low-maintenance when, in fact, they are not. The Window Regulator Defect presents a safety hazard for occupants of the Class Vehicles.

149.   Honda committed *unfair business acts and practices* in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., when it failed to provide a permanent remedy to fix the Window Regulator Defect once and for all in the Class Vehicles.

150.   Honda committed *fraudulent business acts and practices* in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., when it concealed the existence and nature of the Window Regulator Defect, while representing in its marketing, advertising, and other broadly disseminated representations that the Class Vehicles were "reliable," "durable," and low-maintenance when, in fact, they are not. Honda's representations and active concealment of the Defect are likely to mislead the public with regard to the true defective nature of the Class Vehicles.

151.   Honda disseminated *unfair, deceptive, untrue and/or misleading advertising* in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. and § 17500, *et seq*. when it concealed the existence and nature of the Window Regulator Defect, while stating in its marketing, advertising, and other broadly disseminated representations that the Class Vehicles are "reliable," "durable," and low-maintenance when, in fact, they are not.  These representations and active concealment of the Defect are likely to deceive the public.  Honda's misleading marketing and advertising statements are set forth at Paragraphs 94 – 109, above.

152.   Honda's unfair or deceptive acts or practices occurred repeatedly in the course of Honda's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

153.   As a direct and proximate result of Honda's unfair and deceptive practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

154.   As a result of its unfair and deceptive conduct, Honda has been unjustly enriched and should be required to make restitution to Plaintiffs and Class Members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

## THIRD CAUSE OF ACTION

(Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 and 1792.1, *et seq.*)

155.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

156.   Plaintiffs bring this cause of action against Honda for themselves and on behalf of Class Members.

157.   Honda was at all relevant times the manufacturer, distributor, warrantor, and/or seller of Class Vehicles.  Honda knew or had reason to know of the specific use for which the Class Vehicles were purchased.

158.   Honda provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.  However, the Window Regulators in the Class Vehicles are not fit for their ordinary purpose, and in fact fail under normal wear.  The Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles suffer from the Window Regulator Defect that poses a safety risk to vehicle occupants.

159.   Honda impliedly warranted that the Class Vehicles were of merchantable quality and fit for their ordinary purpose of providing reasonably reliable and safe transportation.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Honda were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use while the Class Vehicles were being operated.

160.   Contrary to the applicable implied warranties, the Class Vehicles are not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective and pose a safety risk to vehicle occupants.

161.   Honda's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for their ordinary purpose of providing reasonably reliable and safe transportation, and are in violation of Cal. Civ. Code §§ 1792 and 1792.1.

## **FOURTH CAUSE OF ACTION**

(Breach of Implied Warranty of Merchantability Pursuant to Tenn. Code Ann. § 47-2-314 - Applicable to Tennessee Subclass Only)

162.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

163.   Plaintiff Jeremy Bordelon brings this cause of action against Honda for himself and on behalf of Tennessee Subclass Members.

164.   Honda was at all relevant times the manufacturer, distributor, warrantor, and/or seller of Class Vehicles.  Honda knew or had reason to know of the specific use for which the Class Vehicles were purchased.

165.   Honda provided Plaintiff and Class Members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.  However, the Window Regulators in

the Class Vehicles are not fit for their ordinary purpose, and in fact fail under less-than-normal wear.  The Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles suffer from the Window Regulator Defect that poses a safety risk to vehicle occupants.

166.   Honda impliedly warranted that the Class Vehicles were of merchantable quality and fit for their ordinary purpose of providing reasonably reliable and safe transportation.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Honda were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use while the Class Vehicles were being operated.

167.   Contrary to the applicable implied warranties, the Class Vehicles are not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective and pose a safety risk to vehicle occupants.

168.   Honda's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for their ordinary purpose of providing reasonably reliable and safe transportation, and are in violation of Tenn. Code Ann. § 47-2-314.

169.   Plaintiff and Tennessee Subclass Members have suffered damages as a result of Honda's breach of its implied warranty.

## FIFTH CAUSE OF ACTION

(Iowa Code § 714H - Violation of the Iowa "Private Right of Action for Consumer Frauds Act" – Applicable to Iowa Subclass Only)

170.   Plaintiff, on behalf of himself and on behalf of all others similarly situated, realleges and incorporates herein by reference each of the foregoing paragraphs on behalf of the alternatively pled Iowa Subclass.

171.   Plaintiff Mark David Olson brings this cause of action against Honda for himself and on behalf of Iowa Subclass Members.

172.   The Iowa "Private Right of Action for Consumer Frauds Act" prohibits unfair and deceptive trade practices in the sale, lease, or advertisement of a product or service, and in the solicitation of charitable contributions.  The Act's purpose is to protect consumers against these unfair and deceptive business practices, and to provide efficient and economical procedures to secure such protection.

173.   Specifically, Plaintiff alleges that Honda has violated the Iowa "Private Right of Action for Consumer Frauds Act" by engaging in the unfair and/or deceptive acts and practices set forth within the Act.  Honda knew, as early as 1994, and certainly before the sale or lease of the Class Vehicles, that the Class Vehicles' Window Regulators suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.  Honda's unfair and deceptive business practices in carrying out the marketing program described above were and are intended to and did and do result in the purchase of Honda's products by consumers, including Plaintiff, in violation of the Iowa "Private Right of Action for Consumer Frauds Act."

174.   Plaintiff's right as a consumer to bring this action at law derives from the Iowa "Private Right of Action for Consumer Frauds Act," 714H.  The Iowa legislature enacted the Iowa "Private Right of Action for Consumer Frauds Act" to allow Iowa consumers who have been victimized by an unfair or deceptive trade business practice to obtain damages and other such equitable relief as the Court deems necessary to protect the public from further violations.

175.   As a result of Honda's unfair and/or deceptive business practices, Plaintiff and all purchasers of Honda's products have lost money in that they paid for products that did not have the benefit as represented.  Plaintiff seeks and is

1   entitled to an order enjoining Honda from continuing to engage in the unfair and

2   deceptive business practices alleged herein.

3       176.   Plaintiff and his counsel have sought and have obtained the approval to

4   bring this claim pursuant to §714H.7.

5                        **SIXTH CAUSE OF ACTION**

6   (Violation of N.J. Stat. Ann. § 56:8-1 *et seq.*– Consumer Fraud - Asserted on
                         Behalf New Jersey Subclass)

7       177.   Plaintiffs hereby incorporate by reference the allegations contained in

8   the preceding paragraphs of this Complaint.

9       178.   Plaintiff Sohal Shah brings this cause of action against Honda for

10  himself and on behalf of New Jersey Subclass Members.

11      179.   New Jersey Plaintiff, the New Jersey Subclass, and Ford are "persons"

12  with the meaning of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat.

13  Ann. § 56:8-1 (d).

14      180.   The NJCFA provides in relevant part as follows:

15          The act, use or employment by any person of any

16          unconscionable commercial practice, deception, fraud,

17          false pretense, false promise, misrepresentation, or the

18          knowing, concealment, suppression, or omission of any

19          material fact with intent that others rely upon such

20          concealment, suppression or omission, in connection with

21          the sale or advertisement of any merchandise or real

22          estate, or with the subsequent performance of such person

23          as aforesaid, whether or not any person has in fact been

24          misled, deceived or damaged thereby, is declared to be an

25          unlawful practice.

26  N.J. STAT. ANN. § 56:8-2.

27

28

181.   Honda knew, as early as 1994, and certainly before the sale or lease of the Class Vehicles, that the Class Vehicles' Window Regulators suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

182.   By making representations about the quality, reliability, durability, toughness, and ruggedness of the Class Vehicles, failing to disclose the Window Regulator Defects in the Class Vehicles, and failing to properly repair the Window Regulator Defect, as fully set forth above, Honda engaged in unfair or deceptive acts or practices prohibited by the NJCFA.

183.   Honda's unconscionable conduct described herein included the knowing omission and concealment of material facts concerning the defective Window Regulators in Class Vehicles as set forth above.

184.   Honda owed New Jersey Plaintiff and the New Jersey Consumer Fraud Subclass a duty to disclose the defects in the Honda vehicles equipped with the defective Window Regulators because it possessed exclusive and superior knowledge of the defects and did not disclose these defects.

185.   Information regarding these defects, which result in substantial additional repair costs and jeopardized the safety of vehicle occupants, is material to a reasonable consumer in deciding to purchase a vehicle and considering how much to pay for a vehicle.

186.   A reasonable consumer with knowledge of the defective nature of the Class Vehicles and their Window Regulators would not have purchased Honda vehicles equipped with the defective Window Regulators or would have paid less for them.

187.   Honda knew or should have known that reasonable consumers would likely regard information regarding these defects as material to deciding to purchase a vehicle and considering how much to pay for a vehicle.

188.   Honda's unfair or deceptive acts or practices were therefore likely to or had a tendency or capacity to deceive reasonable consumers about the true nature of the Honda vehicles equipped with the defective Window Regulators.

189.   Honda intended that New Jersey Plaintiff and the other members of the New Jersey Subclass rely on their representations and omissions, so that New Jersey Plaintiff and other New Jersey Subclass Members would purchase Honda vehicles equipped with the defective Window Regulators.

190.   As a result of the foregoing acts, omissions, and practices New Jersey Plaintiff and the New Jersey Subclass have suffered an ascertainable loss as set forth above, and these class members are entitled to recover such actual damages, together with appropriate penalties, including treble damages, equitable relief, injunctive relief, diminution of value, reasonable attorneys' fees, costs of suit, and such other relief set forth below.

191.   Pursuant to N.J. STAT. ANN. § 56:8-20, New Jersey Plaintiff will serve the New Jersey Attorney General a copy of this complaint.

## SEVENTH CAUSE OF ACTION

(Breach of Implied Warranty Pursuant to New Jersey Law – Applicable to New Jersey Subclass only.)

192.   Plaintiff and Class Members incorporate by reference those paragraphs set out above as though fully set forth herein.

193.   Plaintiff Sohal Shah brings this cause of action against Honda for himself and on behalf of New Jersey Subclass Members.

194.   Plaintiff and Class Members purchased or leased Class Vehicles equipped with subject Window Regulators.

195.   When the Class Vehicles left Defendant Honda's possession, they were unmerchantable.  Plaintiffs and Class Members used their vehicles in the normal manner for which the Class Vehicles were designed.  Despite Plaintiffs'

1  proper use of the Class Vehicles, they malfunctioned in a manner that Honda failed

2  to fix by repairing, replacing, or adjusting.

3      196.   The Class Vehicles equipped with the subject Window Regulators are

4  inadequate and incapable of performing the very tasks they were designed to carry

5  out.  The inadequacies of the engines include but are not limited to: the Window

6  Regulators are defectively designed, insufficiently strong, and fail during ordinary

7  and expected use.

8      197.   Upon information and belief, Honda has actual knowledge of the

9  specific defects associated with defective Window Regulators in Class Vehicles and

10  the problems resulting therefrom.

11      198.   To date, Honda has neither adequately cured the actual Window

12  Regulator defects nor replaced the defective Window Regulators with non-defective

13  parts.

14      199.   As a result of Honda's breach of implied warranty of merchantability,

15  Plaintiffs suffered damages in the amount of the difference between the value of the

16  vehicles equipped with the defective engines and the value of the vehicles if they

17  had been equipped as warranted.

18      200.   Plaintiffs also suffered diminution in the value of their vehicles, out-

19  of-pocket expenditures related to the cost to repair/service the Class Vehicle

20  (including deductibles paid when repairs were made during covered by express

21  warranty, and the full cost of repair when they were not covered), and other

22  damages as described herein.

23      201.   Defendant Honda's defective Window Regulator in Class Vehicles

24  was the direct and proximate cause of Plaintiffs' injuries.

25                              **RELIEF REQUESTED**

26      202.   Plaintiffs, on behalf of themselves, and all others similarly situated,

27  request the Court to enter judgment against Honda, as follows:

28

1          a.        an order certifying the proposed Class and/or Subclasses,

2    designating Plaintiffs as named representatives of the Class and/or Subclasses, and

3    designating the undersigned as Class Counsel;

4          b.        a declaration that the Window Regulators in Class Vehicles are

5    defective;

6          c.        a declaration that Honda is financially responsible for notifying

7    all Class Members about the defective nature of the Class Vehicles;

8          d.        an order enjoining Honda from further deceptive distribution,

9    sales, and lease practices with respect to the Class Vehicles, and to permanently

10   repair the Class Vehicles so that they no longer possess the Window Regulator

11   Defect;

12         e.        an award to Plaintiffs and Class Members of compensatory,

13   exemplary, and statutory damages, including interest, in an amount to be proven at

14   trial;

15         f.        a declaration that Honda must disgorge, for the benefit of

16   Plaintiffs and Class Members, all or part of the ill-gotten profits it received from the

17   sale or lease of the Class Vehicles, or make full restitution to Plaintiffs and Class

18   Members;

19         g.        an award of attorneys' fees and costs, as allowed by law;

20         h.        an award of attorneys' fees and costs pursuant to Cal. Code Civ.

21   P. § 1021.5;

22         i.        an award of pre-judgment and post-judgment interest, as

23   provided by law;

24         j.        leave to amend this Complaint to conform to the evidence

25   produced at trial; and

26         k.        such other relief as may be appropriate under the circumstances.

27

28

## **DEMAND FOR JURY TRIAL**

203.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated:  March 12, 2013                    Respectfully submitted,

By:_____
                Jonathan D. Selbin

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Jonathan D. Selbin (State Bar No. 170222)
jselbin@lchb.com
Kristen E. Law-Sagafi (State Bar No. 222249)
klaw@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

Mark P. Chalos (*pro hac vice*)
mchalos@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
One Nashville Place
150 Fourth Avenue, Suite 1650
Nashville, TN  37219-2423
Telephone:  (615) 313-9000
Facsimile:   (615) 313-9965

Annika K. Martin (*pro hac vice*)
akmartin@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

Marc Godino
mgodino@glancylaw.com
GLANCY BINKOW & GOLDBERG, LLP
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160

1 | Jon A. Tostrud
2 | jtostrud@tostrudlaw.com
  | TOSTRUD LAW GROUP, P.C.
3 | 1901 Avenue of the Stars, Suite 200
  | Los Angeles, CA  90067
4 | Telephone:   (310) 278-2600
  | Facsimile:    (310) 278-2640

5 | J. Barton Goplerud
6 | jbgoplerud@hudsonlaw.net
  | HUDSON MALLANEY SHINDLER &
7 | ANDERSON, P.C.
  | 5015 Grand Ridge Drive, Suite 100
8 | West Des Moines, IA  50265
  | Telephone:   (515) 223-4567
9 | Facsimile:    (515) 223-8887

10 | *Attorneys for Plaintiffs*

- 64 -

1

## PROOF OF SERVICE

2

3      I hereby certify that a copy of the foregoing: **PLAINTIFFS' MASTER**

4  **CLASS ACTION COMPLAINT (SECOND AMENDED COMPLAINT) AND**

5  **THIS PROOF OF SERVICE** were served by E-Mail and First Class Mail on

6  March 12, 2013 to the following:

7          Paul G. Cereghini
          *paul.cereghini@bowmanandbrooke.com*
8          Marion V. Mauch
          *marion.mauch@bowmanandbrooke.com*
9          BOWMAN AND BROOKE LLP
          879 West 190th Street, Suite 700
10         Gardena, CA  90248-4227
          (301) 768-3068
11
          *Attorneys for Defendant AMERICAN HONDA MOTOR*
12         *CO., INC.*

13         Ryan L. Nilsen
          *ryan.nilsen@bowmanandbrooke.com*
14         150 South Fifth Street, Suite 3000
          Minneapolis, MN  55402
15         (612) 339-8682

16         *Attorney for Defendant AMERICAN HONDA MOTOR*
          *CO., INC.*
17

18

19

20  Dated:  March 12, 2013          _____
                                     Annika K. Martin
21

22

23

24

25

26

27

28