UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:12-cv-1142-SVW-PLA | Date | June 10, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | N/A | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| N/A | | N/A |

**Proceedings:** IN CHAMBERS ORDER Re MOTION TO DISMISS [63]

### I. INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs Phillip Grodzitsky, Stephanie Manzo, Jeremy Bordelon, Mark David Olson, and Solal Shah (collectively, the "Plaintiffs")[1] filed their Second Amended Complaint ("SAC") in this Court on March 12, 2013, on behalf of themselves and all persons in the United States who purchased or leased certain vehicles manufactured, distributed, and/or sold by Defendant American Honda Motor Co, Inc. ("Defendant") with defective window regulators. SAC ¶ 1 (Dckt. 31). Specifically, Plaintiffs seek to represent individuals who bought or leased Honda Odysseys, Honda Pilots, Honda Elements, Honda Accords, Honda CR-Vs, Honda Civics, and Acura MDX, TSX, RL, and CL vehicles from model years 2000-2011 (the "Class Vehicles"). SAC ¶ 2.

Side windows in the Class Vehicles are moved up and down by a device inside the doorframe known as a "Window Regulator," which includes a central track, a metal and polymer shuttle, a cable, and an attached motor. SAC ¶ 4. The motor pulls the cable, which causes the shuttle to move up and down along the track; the window is attached to the shuttle and moves along with it. SAC ¶ 4. The cable is attached to the shuttle by a polymer bracket; however, according to Plaintiffs, these brackets are

---

[1] Grodzitsky and Manzo are residents of California (the Court refers to them as the "California Plaintiffs"); Bordelon, a resident of Tennessee; Olson, a resident of Iowa; and Shah, a resident of New Jersey. SAC ¶¶ 13, 18, 21, 25, 28.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | June 10, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

"insufficiently strong." SAC ¶ 4. Because of the Window Regulator's "faulty design and insufficient strength," the cable ends are "pulled out of place," rendering the windows inoperative. SAC ¶ 5. These defects also "often" cause the window to fall into a partially or fully-open position, a fall that can cause the window to shatter. SAC ¶ 5. The Court refers to this defect as the "Window Regulator Defect." Plaintiffs allege that the Window Regular Defect is caused by defects in the design, manufacture, and/or assembly of the Window Regulators, defects that "by their nature [are] susceptible to frequent mechanical failure rendering the Class Vehicle's side windows inoperable and often irretrievably stuck in the fully open position." SAC ¶ 6.

Each lead plaintiff experienced window failure after purchasing his or her Honda, allegedly caused by the Window Regulator Defect. Grodzitsky, who purchased a 2002 Honda Odyssey LX in May of 2005 from a Honda dealership in San Diego, California, began experiencing window failure in September of 2011. SAC ¶¶ 13-14. Manzo, who purchased a 2007 Honda Accord in August 2008 from a Honda dealership in Hayward, California, began experiencing window failure in March of 2012. SAC ¶¶ 25-26. Bordelon, who purchased a 2006 Honda Element EX-P in December 2009 from a Honda dealership in Chattanooga, Tennessee, began experiencing window failure in July of 2011. SAC ¶¶ 18-19. Olson, who purchased a Honda Element in 2009 in Ames, Iowa, began experiencing window failure "recently." SAC ¶¶ 21-23. Shah, who purchased a 2003 Honda Pilot in September 2002 from a Honda dealer in Madison, New Jersey, began experiencing window failure in August 2011. SAC ¶¶ 28-29. Each paid between $110 and $600 out of pocket to repair the defective windows. See SAC ¶¶ 14, 19, 23, 26, 29. Although each car came with an express warranty, the windows stopped operating after those warranties had expired.[2]

Side windows are part of "an occupant protection system that protects occupants from outside objects intruding into the passenger compartment, including weather elements that could jeopardize the operator's ability to drive the vehicle safely." SAC ¶ 3. They also "protect[] occupants from full- and partial-ejection during normal vehicle operation and during crashes." SAC ¶ 3. The Window Regulator

---

[2] Although the SAC does not assert the length of the warranties, Honda attached copies of the express warranty provisions from the applicable owner's manuals to their motion to dismiss. See Dckt. 63-2 through 63-7. Consideration of these materials is appropriate under the incorporation by reference doctrine, which allows a court to consider documents where "the plaintiff's claim depends on the contents of a document . . . and the parties do not dispute the authenticity of the document[.]" Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). Here, as discussed below, the expiration of express warranties is relevant to Plaintiffs' consumer fraud and implied warranty claims; moreover, Plaintiffs do not dispute the authenticity of these warranties.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | June 10, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

Defect deprives passengers of these safety benefits, "endangering the vehicle occupants and compromising the occupant protection system." SAC ¶ 6. Moreover, when the windows fall, they can cause a loud and sudden noise that can startle the driver, and can fall with enough force to shatter the glass, creating a risk of injury to driver and occupants. SAC ¶ 50. See also SAC ¶¶ 48-62 (describing the role side windows play in vehicle safety).

Plaintiffs allege that, as a result of Honda's failure to disclose the Window Regulator Defect, Class Members have incurred "and will continue to incur, out-of-pocket costs" to repair the Window Regulator Defect, and "remain at risk of injury due to the safety defect." SAC ¶ 11.

Plaintiffs assert eight causes of action based on the alleged failure to disclose and concealment of the Window Regulator Defect: 1) violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; 2) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; 3) violations of Iowa's Private Right of Action for Consumer Frauds Act, Iowa Code §714H; 4) violations of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 (collectively, the Court refers to these four causes of action as the "Consumer Fraud Claims"); 5) breach of implied warranty pursuant to California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 and 1792.1, *et seq.*; 6) breach of Tennessee's implied warranty of merchantability, pursuant to Tenn. Code Ann. § 47-2-314; 7) breach of New Jersey's implied warranty of merchantability, N.J. Stat. Ann. § 12A:2-314; and 8) violation of Cal. Civ. Code § 1710, Deceit and Common Law Fraud.[3]

Defendant filed a motion to dismiss the class allegations. (Dckt. 63) For the reasons put forward in this Order, this Court DENIES Defendant's motion as to Plaintiffs' CLRA, UCL, and Iowa Consumer Fraud Act claims. The Court GRANTS Defendant's motion as to Plaintiffs' New Jersey Consumer Fraud Act, Song-Beverly Act, Tennessee Implied Warranty of Merchantability, New Jersey Implied Warranty of Merchantability, and Deceit and Common Law fraud claims and DISMISSES those claims WITH PREJUDICE.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. See Fed. R. Civ. Proc. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

---

[3] In its Order granting Defendant's motion to dismiss Plaintiffs' First Amended Complaint, this Court dismissed Plaintiffs' Deceit and Common Law Fraud claim with prejudice. (Dckt. 61.)

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | June 10, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id.; see also Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1951).

In reviewing a Rule 12(b)(6) motion, the Court must accept all allegations of material fact as true and construe the allegations in the light most favorable to the nonmoving party. Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002). Accordingly, while a court is not required to accept a pleader's legal conclusions as true, the court must "draw all reasonable inferences in favor of the plaintiff, accepting the complaint's [factual] allegations as true." Knievel v. ESPN, 393 F.3d 1068, 1080 (9th Cir. 2005).

The court may grant a plaintiff leave to amend a deficient claim "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Five factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his Complaint." Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990) (citing Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989)). Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. See Desoto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

Claims for fraud must meet the heightened pleading requirements of Rule 9(b). Fed. R. Civ. P. 9(b). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Rule 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud." Vess v. Ciba–Geigy Corp. U.S.A., 317 F.3d 1097, 1103–04 (9th Cir. 2003). A claim is said to be "grounded in fraud" or " 'sounds in fraud' " where a plaintiff alleges that defendant engaged in fraudulent conduct and relies on solely on that conduct to prove a claim. Id. "In that event, ... the pleading of that claim as a whole must satisfy the particularity requirement of [Fed.R.Civ.P.] 9(b)." Id.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | June 10, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

     The Ninth Circuit clarified the requirements of Rule 9(b) in In re Glenfed Inc. Securities Litigation, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).  When pleading fraud, a complaint "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." Id. at 1548 n. 7 (internal citations and quotation marks omitted).  In other words, Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false." Cafasso ex rel. United States v. Gen. Dynamics C4 Sys. ., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

     **III.    STANDING**

     Defendant argues that Plaintiffs do not have standing to sue over products they did not purchase.  Specifically, while the named Plaintiffs purchased Honda's Odyssey, Element, Accord, and Pilot models, they seek to represent a class that includes six other models, spread out over a twelve year period.  In response, Plaintiff argues that that they have standing to sue over all models that contained the same defect, which extends (at least) to the named models and years.

     The Court finds Defendant's argument ill-suited to a motion to dismiss.  "District courts in California routinely hold that the issue of whether a class representative may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 530 (C.D. Cal. 2011) (internal citations and quotation marks omitted).  Defendant's argument is better made at the class certification stage.

                                                                                          :

Initials of Preparer                    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | June 10, 2013 |
|---|---|---|---|

| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. |
|---|---|

### IV.    THE CONSUMER FRAUD CLAIMS

####       A.  The CLRA[4]

"The CLRA prohibits 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer.'" Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting Cal. Civ. Code § 1770(a)).[5]  This prohibition bars, among other things, representations that "goods . . . have characteristics which they do not have," and that goods are "are of a particular standard, quality, or grade . . . if they are of another." Cal. Civ. Code §§ 1770(a)(5), (7). The standard for deceptiveness is whether conduct is "likely to mislead a reasonable consumer," or "the ordinary consumer acting reasonably under the circumstances." Colgan v. Leatherman Tool Grp., Inc., 135 Cal. App. 4th 663, 680, 682 (2006). In their FAC, Plaintiffs allege that Defendant violated the CLRA by "failing to disclose the defective nature of the Class of Vehicles." FAC ¶ 100.

California courts have

> generally rejected a broad obligation to disclose, adopting instead the standard as enumerated by the California Court of Appeal in Daugherty v. American Honda Motor Co., 144 Cal. App. 4th 824 (2006). Daugherty held that a manufacturer is not liable for a fraudulent omission concerning a latent defect under the CLRA, unless the omission is "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose."

Wilson, 668 F.3d at 1141 (quoting Daugherty, 144 Cal. App. 4th at. 835).  A defendant has a duty to disclose if it "(1) is in a fiduciary relationship with the plaintiff; (2) had exclusive knowledge of material

---

[4] Although not all CLRA and UCL claims are subject to Rule 9(b)'s heightened pleading requirements, allegations of fraudulent omissions—like the ones here—are. See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig., 754 F. Supp. 2d 1145, 1170 n.17 (C.D. Cal. 2010).

[5] The CLRA further provides that "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person" for listed damages. Cal. Civ. Code § 1780(a). The parties do not dispute that Defendant is a "person" and that Plaintiffs are "consumers" within the meaning of the CLRA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | June 10, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

facts not known to the plaintiff; (3) actively conceals a material fact from the plaintiff; or (4) makes partial representations but also suppresses some material fact." In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig., 754 F. Supp. 2d 1145, 1172-73 (C.D. Cal. 2010) (citing LiMandri v. Judkins, 52 Cal. App. 4th 326, 336 (1997)); see also Collins v. eMachines, Inc., 202 Cal. App. 4th 249, 255 (2011), reh'g denied (Dec. 15, 2011), as modified (Dec. 28, 2011), review denied (Feb. 15, 2012) (applying the LiMandri factors to a failure to disclose-CLRA claim). "In an omissions case, omitted information is material if a plaintiff can allege that, 'had the omitted information been disclosed, one would have been aware of it and behaved differently.'" Ehrlich v. BMW of N. Am., LLC, 801 F. Supp. 2d 908, 916 (C.D. Cal. 2010) (quoting Mirkin v. Wasserman, 5 Cal. 4th 1082, 1093 (1993)). "Materiality is viewed from the prospective of the reasonable consumer." Ehrlich, 801 F. Supp. 2d 916.

Where, as here, a design defect manifests itself *after* a warranty has expired, federal courts have "generally interpreted Daugherty as holding that a manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." Wilson, 668 F.3d at 1141 (internal citations, quotation marks, and alteration omitted); see also Smith v. Ford Motor Co., 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) ("Further, where, as here, a plaintiff's claim is predicated on a manufacturer's failure to inform its customers of a product's likelihood of failing outside the warranty period, the risk posed by such asserted defect cannot be merely the cost of the product's repair; rather, for the omission to be material, the failure must pose "'safety concerns.'") (internal citations and quotation marks omitted); In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig., 758 F.Supp.2d 1077, 1095 (S.D. Cal. 2010) ("[A] manufacturer's duty to disclose under the CLRA is limited to safety-related issues."). The requirements that an omission be material and "safety"-related "are intertwined: in most cases, 'nondisclosures about safety considerations of consumer products are material.'" Rice v. Sunbeam Products, Inc., 2013 WL 146270, at *4 (C.D. Cal. Jan. 7, 2013) (quoting In re Toyota, 754 F.Supp.2d at 1173) (alteration omitted).

Plaintiffs argue that the Window Defect is a "safety issue," and therefore that Defendant violated the CLRA by failing to disclose it.[6] In order to state a claim under the CLRA for failing to disclose a safety defect, Plaintiffs must allege 1) the existence of a design defect; 2) the existence of an unreasonable safety hazard; 3) a causal connection between the alleged defect and the alleged safety

---

[6] As Plaintiffs concede, their CLRA claim is *not* premised on an assertion that Defendant made an affirmative misrepresentation.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | June 10, 2013 |
|---|---|---|---|

| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. |
|---|---|

hazard; and 4) that Defendant knew of the defect at the time a sale was made. Wilson, 668 F.3d at 1143-1146.[7]

       1.     Existence of a Design Defect

Plaintiffs' SAC describes the alleged design defect—the Window Regulator Defect—in great detail. The alleged defect is Window Regulator's "faulty design and insufficient strength," which result in the cable ends being "pulled out of place." These alleged defects "often" cause the window to fall into a partially or fully-open position, a fall that can cause the window to shatter. These allegations are sufficient to state a claim that a design defect existed. See Wilson, 668 F.3d at 1143 (holding that plaintiffs had alleged a design defect by "describ[ing] the design defect in some detail," including allegations that the connection between a computer's power jack and the motherboard were "designed in a manner that was exceedingly fragile") (internal quotation marks omitted).

       2.     Existence of an Unreasonable Safety Hazard and a Causal Connection Between the Design Defect and the Safety Hazard

Moreover, Plaintiffs have alleged the existence of an unreasonable safety defect. In their SAC, Plaintiffs allege that side windows are part of "an occupant protection system that protects occupants from outside objects intruding into the passenger compartment, including weather elements that could jeopardize the operator's ability to drive the vehicle safely." They also "protect[] occupants from full- and partial-ejection during normal vehicle operation and during crashes." The Window Regulator Defect deprives passengers of these safety benefits, "endangering the vehicle occupants and compromising the occupant protection system." Moreover, when the Window Regulator fails, the window often falls into the doorframe with a "loud and startling noise," which can "cause the driver to

---

[7] Some courts have also held that, in order to state a claim under the CLRA, Plaintiffs must allege actual reliance on the fraudulent omissions. See Ehrlich, 801 F. Supp. 2d at 919 ("For fraud-based claims under the CLRA . . . Plaintiff must also plead actual reliance.") (citing Buckland v. Threshold Enters., 155 Cal. App. 4th 798, 810 (2007)); see also Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 794 (9th Cir. 2012) ("[C]onsumers seeking to recover damages under the CLRA based on a fraud theory must prove 'actual reliance on the misrepresentation and harm.'") (quoting Nelson v. Pearson Ford Co., 186 Cal. App. 4th 983, 112 (2010)). Under California law, "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." In re Tobacco II Cases, 46 Cal. 4th 298, 327 (2009). Because Plaintiffs have alleged that the omission was material, they have sufficiently pled actual reliance.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

Case 2:12-cv-01142-SVW-PLA   Document 75   Filed 06/12/13   Page 9 of 18   Page ID #:2805

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:12-cv-1142-SVW-PLA | Date | June 10, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

veer and potentially cause an accident." In addition, Plaintiffs allege that the window can fall with enough force to "shatter the glass, creating a risk of injury to drive and occupants." See generally SAC ¶¶ 4-6, 48-63 (describing the role side windows play in vehicle safety). Moreover, Plaintiffs plausibly allege that these hazards are caused by the Window Regulator Defect. SAC ¶ 6. These allegations are sufficient to allege the second and third elements of the Wilson test. See Ehrlich, 801 F. Supp. 2d at 918 (finding that Plaintiff had alleged a safety defect by asserting that the windshields of the cars at issue (MINIs) were "part of the vehicle's safety restraint system and if a MINI with a cracked windshield is in a roll-over accident, the windshield can become dislodged, compromising roof-crush resistance and causing serious head and neck injuries, failure of the passenger side airbag to deploy, or the ejection of passengers from the vehicle").

   Defendant argues that the Window Regulator Defect does not create a safety issue because it is not reasonable for a passenger to rely upon windows for occupant ejection mitigation. This argument is premature at the motion to dismiss phase: although the evidence may ultimately demonstrate that the Window Regulator Defect did not create a safety risk, Plaintiffs' burden at this stage is to allege the "plausible prospect of a safety problem." Marsikian v. Mercedes Benz USA, LLC, No. CV 08-04876-AHM-JTLx, 2009 WL 8379784, at *6 (C.D. Cal. May 4, 2009); see also Ehrlich 801 F. Supp. 2d at 918 (denying a motion to dismiss a CLRA claim premised on the failure to disclose a safety risk where the plaintiff alleged that defective windshields created an unreasonable safety risk because, according to the plaintiff, windshields were part of the vehicle's safety restraint system that prevented passenger injury during roll-overs). As Plaintiffs allege, windows play a role in preventing ejection during a crash and protect occupants from the elements; windows stuck in open or semi-open positions would obviously reduce such protections. Defendant argues that a window in an open or semi-open position does not create a safety risk, as it is no different than a window being rolled down; however, there is support for the proposition that side windows play *some* role in preventing ejections. 49 C.F.R. § 571.205 (specifying *side* car window-glazing requirements, and noting that one of the purposes of such a standard is to "minimize the possibility of occupants being thrown through the vehicle windows in collisions"). Moreover, Plaintiffs allege that the Window Regulator Defect to shatter and can create a loud noise, each of which create additional safety risks.

     3.  Knowledge

   Finally, under the CLRA, "plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." Wilson, 668 F.3d at 1145. Plaintiffs' SAC contains a wealth of specific factual allegations that, taken as true, support a plausible inference that Defendant was aware of the Window Regulator Defect at the time it sold the class vehicles.

|  | : |
|---|---|
| Initials of Preparer | PMC |

CV-90 (06/04)              CIVIL MINUTES - GENERAL            Page 9 of 18

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | June 10, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

Specifically, Plaintiffs allege that Honda monitored NHSTA databases as "part of their ongoing obligation to identify potential defects in their vehicles." SAC ¶ 83. Plaintiffs further list a "sampling" of complaints made to NHSTA, including several complaints about failing power windows made to NHTSA well before the sales of the Class Vehicles. See SAC ¶ 64, 72, 78, 84, 91. Taken together, these allegations support a plausible inference that Defendant saw and reviewed the specific complaints that were made about the Window Regulator. See Cirulli v. Hyundai Motor Co., No. SACV 08-0854 AG MLG, 2009 WL 5788762, at *4 (C.D. Cal. June 12, 2009) (holding that the plaintiff had sufficiently pled Hyundai was aware that its vehicles were unusually vulnerable to premature oxidation and corrosion, and consequently structural deterioration, where plaintiff alleged that "[s]ince 1999, [Defendant] has . . . constantly tracked the National Highway Traffic Safety Administration . . . database to track reports of defective Sonata sub-frames. From this source, [Defendant] knew that its 1999–2004 Sonatas were experiencing unusually high levels of sub-frame deterioration, steering control arm separation, steering loss, and highway accidents . . . ."). Moreover, Plaintiffs' SAC contains a number of other allegations that, together with the NHTSA complaints, bolster Plaintiffs' allegation that Defendant was aware of the Window Regulator Defect at the time they sold the Class Vehicles, including:

- A "sudden and significant increase" in Window Regulator failures beginning in or around 1994 (when the Window Regulators at issue in this suit were first installed), including one Honda repair shop's records that show that "since at least the late 1990s, Window Regulators have been the single most frequently repaired replacement part on the Class Vehicles," SAC ¶ 67;
- Testing data from before Defendant began installing the Window Regulator in its cars that "would have revealed to [Defendant] that the design and materials of the plastic shuttle/cable Window Regulator were insufficient for the intended use," SAC ¶ 68;
- Information allegedly submitted from Honda Service Centers for *in*-warranty repairs throughout the Class period, SAC ¶¶ 70-71;
- The "high number of replacement Window Regulator parts" ordered from Defendants, which "sudden[ly] increase[d]" in or around 1994, SAC ¶¶ 74-76;
- Complaints made directly to Defendant, SAC ¶ 77;
- Complaints posted about the Window Regulator Defect on "public online vehicle owner forums," beginning as early as 2003, SAC ¶¶ 64, 72, 78, 86, 91, 104.

These factual allegations state sufficient factual matter, taken as true, to support a plausible inference that Defendant "was aware of a defect at the time of sale." See In re Toyota, 754 F. Supp. 2d at 1192

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | June 10, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

(finding that a complaint adequately alleged that defendants had knowledge of a defect upon alleging that it knew of "NHTSA's findings of a 400% increase in 'Vehicle Speed' complaints in [defendant's cars], 37,000 concealed consumer complaints, secret Field Technical Reports and Dealership Report, issues with the electronic throttle actuator assemblies shared only with dealers and later NHTSA, eliminated references to [its cars'] speed control problems, concealed 'surging' complaints, and received consumer complaints post-recall, demonstrating the problem has not been fixed"); see also Mui Ho v. Toyota Motor Corp., No. 12-2672 SC, 2013 WL 1087846, at *8-*9 (N.D. Cal. Mar. 14, 2013) (holding that Plaintiffs had adequately alleged that Toyota had knowledge of a headlamp defect upon alleging that Toyota "had non-public, internal data about the Class Vehicles' headlamp problems, including pre-release testing data, early consumer complaints about the defect to Defendants' dealers who are their agents for vehicle repairs, dealership repair orders, testing conducted in response to those complaints, and other internal sources") (internal quotation marks omitted); Kowalsky v. Hewlett-Packard Co., No. 10-CV-02176-LHK, 2011 WL 3501715, at *4 (N.D. Cal. Aug. 10, 2011) (finding that plaintiffs raised a plausible inference that a defendant knew of a defect by alleging that it had advertised that it tested its printers using recognized standards that would have revealed the alleged defect and had received complaints three months prior before the plaintiff purchased his printer).

### B. The UCL Claim

California's UCL creates a cause of action for business practices that are 1) unlawful, 2) unfair, or 3) fraudulent. Cal. Bus. & Prof. Code § 17200; see also Gutierrez v. Wells Fargo Bank, NA, 704 F.3d 712, 717 (9th Cir. 2012) (same). "Although remedies under the [UCL] are limited to injunctive relief and restitution, the law's scope is 'sweeping.'" Gutierrez, 704 F.3d at 717 (quoting Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999)). Moreover, each "prong" of the UCL provides a separate and distinct theory of liability. See Lozano v. AT & T Wireless Servs., Inc., 504 F.3d 718, 731 (9th Cir.2 007) (citing South Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861 (1999)). Plaintiffs allege that Defendant has committed unlawful, unfair, and fraudulent business practices.

"To be 'unlawful' under the UCL, the [alleged business practice] must violate another 'borrowed' law." Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1168 (9th Cir. 2012); see also Cel–Tech, 20 Cal. 4th at 180 ("[S]ection 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.") (internal quotation marks omitted). "Virtually any state, federal or local law can serve as the predicate for an action under section 17200." Davis, 691 F.3d at 1168 (internal citations, quotation marks, and alteration omitted). Plaintiffs allege that Defendant committed an unlawful business practice by violating the CLRA; as discussed above, Plaintiffs have alleged sufficient factual matter, taken as true, to state a plausible claim

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | June 10, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

that Defendant violated the CLRA.  Therefore, Plaintiffs have also sufficiently alleged a UCL claim on a theory that Defendants have engaged in an "unlawful" practice.

"A business practice constitutes unfair competition 'if it is forbidden by any law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made, or if it is unfair, that is, if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1098 (N.D. Cal. 2007) (quoting People v. Duz–Mor Diagnostic Laboratory, Inc., 68 Cal. App. 4th 654, 658 (1998) (alterations omitted).  As discussed above, the failure to disclose the Window Regulator Defect is a violation of the CLRA; therefore, they have alleged an unfair business practice.  See Falk, 496 F. Supp. 2d at 1098 (holding that a failure to disclose a defective speedometer "constitutes a violation of the CLRA, which in turn can be an unfair practice under the UCL"); see also Ho, 2013 WL 1087846 , at *10-*11 ("Plaintiffs allege sufficient facts to state a CLRA claim premised on Defendants' failure to disclose a material safety problem.  The Court finds that this failure to disclose violates public policy as well as the CLRA.  Therefore, Plaintiffs adequately plead a violation of the unfairness code.").

Finally, "[i]n order to state a fraud claim under the UCL, a plaintiff must show that 'members of the public are likely to be deceived.'"  Falk, 496 F. Supp. 2d at 1098 (quoting Bardin v. Daimlerchrysler Corporation, 136 Cal. App. 4th 1255, 1261 (2006)).  As several federal courts have found, the failure to disclose a safety defect is "likely to deceive" members of the public.  Falk, 496 F. Supp. 2d at 1098; Ho, 2013 WL 1087846 , at *11 (failure to disclose a headlamp defect stated a claim under the UCL fraudulent defect theory).

Therefore, Plaintiffs have asserted a claim under all three prongs of the UCL.

### C. The Iowa Consumer Fraud Act Claim

Iowa's Private Right of Action for Consumer Frauds Act (the "Iowa Act") prohibits persons from "engaging in a practice or act the person knows or reasonably should know is an . . . omission of a material fact, with the intent that others rely upon . . . the omission in connection with the advertisement, sale, or lease of consumer merchandise[.]"  Iowa Code Ann. § 714H.3.[8]  Under Iowa law, an omission is

---

[8] The Iowa Act was signed into law in 2009, and applies only to causes of action accruing after July 1, 2009.  See Iowa Code Ann. § 714H.1.  At one point in the complaint, Plaintiffs allege that Olson bought his Honda in 2007; at another point, they allege that he bought it in 2009, without specifying when in 2009 he bought the car at issue.  For purposes of this motion to dismiss, the Court infers, as it must, that Olson bought his Honda after July 1, 2009; otherwise, he would have no cause of action under

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | June 10, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

material if it is "likely to affect a consumer's conduct or decision with regard to a product or service." State ex rel. Miller v. Rahmani, 472 N.W.2d 254, 258 (Iowa 1991).[9]

Defendant does not dispute that the Window Regulator Defect is material—that is, likely to affect a consumer's conduct or decision—within the meaning of Iowa's Consumer Fraud Act.[10]  Instead, Defendant argues that it did not know of the defect, and therefore was not required to disclose it; however, for the reasons discussed above, see supra Part III.A, Plaintiff has plausibly alleged that Defendant did have knowledge of the Window Regulator Defect at the time of sale.

### D.  The New Jersey Consumer Fraud Act Claim

The New Jersey Consumer Fraud Act ("CFA"), N.J.S.A 56:8-1 to -20 declares unlawful the "act, use or employment by any person of . . . [an] omission of any material fact with intent that others rely upon such . . . omission, in connection with the sale or advertisement of any merchandise or real estate . . . ." N.J. Stat. Ann. § 56:8-2.[11]  However, "a plaintiff cannot maintain an action under New Jersey's CFA when the only allegation is that the defendant 'provided a part—alleged to be substandard—that outperforms the warranty provided." Noble v. Porsche Cars N. Am., Inc., 694 F. Supp. 2d 333, 337 (D.N.J. 2010) (quoting Perkins v. DaimlerChrysler Corp., 383 N.J. Super. 99, 112 (App. Div. 2006));

---

Iowa law.

[9] In order to bring a private cause of action under the Iowa Act, a consumer must have suffered "an ascertainable loss of money or property as the result of a prohibited practice or act in violation of this chapter."  Iowa Code Ann. § 714H.5.  Defendants do not dispute that the $189 paid by Olson is an "ascertainable loss" within the meaning of the Iowa Act.

[10] Defendant argues that Plaintiffs have not alleged that Olson's Honda suffered from the Window Regulator Defect but only a vague "Window Regulator problem."  SAC ¶ 23.  However, the Court infers, as it must at the motion to dismiss phase, that the "problem" alleged with reference to Olson's car is the Window Regulator Defect.

[11] The New Jersey Act further provides that "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . may bring an action or assert a counterclaim therefor in any court of competent jurisdiction."  N.J. Stat. Ann. § 56:8-19.  The parties do not dispute that Defendant and Plaintiffs are both "persons" within the meaning of the New Jersey Act.

|  | : |  |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | June 10, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

see also Nobile v. Ford Motor Co., 2011 WL 900119, at *5-*6 (D.N.J. Mar. 14, 2011); Duffy v. Samsung Electronics Am., Inc., 2007 WL 703197, at *8 (D.N.J. Mar. 2, 2007) ("[B]ecause Plaintiff's microwave continued to perform beyond the period in which Samsung was contractually bound to repair or replace any defective part, Plaintiff cannot maintain a CFA claim. To recognize Plaintiff's claim would essentially extend the warranty period beyond that to which the parties agreed."). Moreover, unlike the CLRA, "it is of no moment [to a CFA claim] that Plaintiffs allege that Defendant concealed defects and allege safety concerns." Nobile, 2011 WL 900119, at *6. Plaintiffs do not, and cannot, allege that the Window Regulator Defect occurred during the warranty period; thus, they cannot state a claim under New Jersey's CFA. Therefore, Plaintiff's New Jersey CFA claim is DISMISSED WITH PREJUDICE.

## V.   THE IMPLIED WARRANTY OF MERCHANTABILITY CLAIMS

### A.  The Song-Beverly Act Claim

The Song-Beverly Act provides: "Unless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. This statutory implied warranty of merchantability guarantees that "consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description; (2) Are fit for the ordinary purposes for which such goods are used; (3) Are adequately contained, packaged, and labeled; (4) Conform to the promises or affirmations of fact made on the container or label." Cal. Civ. Code § 1791.1(a).

Defendant contends that the California Plaintiffs' Song-Beverly Act claim is barred by the Act's duration provision, which provides:

> The duration of the implied warranty of merchantability and where present the implied warranty of fitness shall be coextensive in duration with an express warranty which accompanies the consumer goods, provided the duration of the express warranty is reasonable; but in no event shall such implied warranty have a duration of less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer.

Cal. Civ. Code § 1791.1(c). Defendant reasons that, because the Window Regulator Defect did not manifest itself until more than a year after the California Plaintiffs bought their car, Section 1791.1(c) bars their claims. Plaintiffs respond that a similar line of reasoning was rejected by the Fourth District of the California Court of Appeals in Mexia v. Rinker Boat Co., 174 Cal. App. 4th 1297 (2009). Mexia

|  | : |  |
|---|---|---|
|  | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | June 10, 2013 |
|---|---|---|---|

| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. |
|---|---|

held that the "implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale." Id. at 1304.  Thus, under Mexia, if a product is *sold* with a latent defect, the product is rendered merchantable "by the existence of the unseen defect, not by its subsequent discovery." Id. at 1305.  Thus, Plaintiffs argue, because they have alleged that the Window Regulator Defect existed at the time of the sale, the Song-Beverly Act's duration provision does not bar their claim.

This Court "must defer to the California Court of Appeal's interpretation [of a state statute] unless there is convincing evidence that the California Supreme Court would decide the matter differently." California Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1099 (9th Cir. 2003). However, as other federal courts have observed, Mexia "enjoys the limelight as a case 'contrary to established California case law with respect to the duration of the implied warranty of merchantability.'" Marchante v. Sony Corp. of Am., Inc., 801 F. Supp. 2d 1013, 1022 (S.D. Cal. 2011) (quoting Hovsepian v. Apple, Inc., No. 08-5788 JF (PVT), 2009 WL 2591445, at *8 n.7 (N.D. Cal. Aug. 21, 2009)); see also Tietsworth v. Sears, Roebuck & Co., No. 5:09-CV-00288 JFHRL, 2009 WL 3320486, at *12 n.6 (N.D. Cal. Oct. 13, 2009) (noting that "Mexia appears to be something of an outlier").  The flaw in Mexia's reasoning is readily apparent: its holding "renders meaningless any durational limits on implied warranties[,]" as "[e]*very* defect that arises could conceivably be tied to an imperfection existing during the implied warranty period." Marchante, 801 F. Supp. 2d at 1022 (emphasis added).

Moreover, several California Appellate Courts appear to disagree with Mexia's conclusion.  In Atkinson v. Elk Corp. of Texas, the Sixth District of California's Court of Appeals expressly held that a suit filed after the one-year warranty period provided for in Section 1791.1(c) was barred by Section 1791.1(c). 142 Cal. App. 4th 212, 230-32 (2006).  Although Mexia cited Atkinson, it did not expressly overrule it.  Furthermore, in a decision handed down two weeks *after* Mexia, the First District of California's Court of Appeals concurred with Atkinson's holding.  See Larsen v. Nissan N. Am., No. A121838, 2009 WL 1766797, at *5-*6 (Cal. Ct. App. June 23, 2009) (finding that a defects in a car that manifested themselves four years after purchase could not form the basis of a Song-Beverly Act claim and noting that "the warranty of merchantability implied as a matter of law in California is limited to one year after purchase").  Similarly, the Fifth District of California's Court of Appeals noted in a decision handed down five years after Mexia that the "implied warranties of merchantability and fitness have a duration of no more than one year following the sale of a new consumer good to a retail buyer." Balakian v. Mercedes-Benz USA, LLC, No. F060461, 2011 WL 6826723, at *7 n.8 (Cal. Ct. App. Dec. 29, 2011).[12]

---

[12] Although unpublished California cases have no precedential value, they may be considered "as a possible reflection of California law." Roberts v. McAfee, Inc., 660 F.3d 1156, 1167 n.6 (9th Cir.

|  | : |  |
|---|---|---|
|  | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | June 10, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

    Finally, Mexia's precedential value is limited by the readily-distinguishable precedent upon which it relied. In reaching its conclusion, the Mexia Court drew upon an earlier California Court of Appeals case, Moore v. Hubbard & Johnson Lumber Co., 149 Cal. App. 2d 236, 241 (1957). Moore involved the sale of beetle-infested lumber, an infestation that rendered the lumber at issue *unusable from the start*. Here, by contrast, the windows worked as they were supposed to for several years after the expiration of the one-year duration period. Several federal courts have distinguished Mexia on exactly these grounds. See Elias v. Hewlett-Packard Co., 12-CV-00421-LHK, 2012 WL 4857822 (N.D. Cal. Oct. 11, 2012) (finding plaintiff's Song-Beverly Act claim barred by Section 1791.1(c) because he did not "allege that the computers at issue failed to work properly from the outset. Instead, Plaintiff alleges that his computer's issues arose only after seventeen months of use, well outside the one-year period established by the Song–Beverly Act."); Marchante, 801 F. Supp. 2d at 1021-22 (dismissing plaintiffs Song-Beverly Act claim because they "do not allege that the televisions failed to work properly from the outset. They instead allege issues arising after several years of use.").

    In sum, the Court concludes that Mexia is "contrary to established California case law with respect to the duration of the implied warranty of merchantability." Hovsepian, 2009 WL 2591445, at *8 n.7. Because the windows at issue in this case did not begin to fail until well more than a year after they were purchased, Plaintiffs' Song-Beverly Act claim is barred by Section 1791.1(c). Therefore, Plaintiffs' Song-Beverly Act claim is DISMISSED WITH PREJUDICE.

### B. The New Jersey Breach of Implied Warranty of Merchantability Claim

    New Jersey's Implied Warranty of Merchantability provides, in relevant part: "Unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.J. Stat. Ann. § 12A:2-314. Under New Jersey law, this warranty is "limited to the same term as the express warranty." Suddreth v. Mercedes-Benz, LLC, 2011 WL 5240965 (D.N.J. Oct. 31, 2011); see also N.J. Stat. Ann. § 12A:2-317 ("Warranties whether express or implied shall be construed as consistent with each other and as cumulative[.]"). Thus, defects—even latent ones—that manifest themselves after the expiration of the express warranty period cannot form the basis of an implied warranty of merchantability claim under New Jersey law. See Nobile v. Ford Motor Co., 2011 WL 900119, at *4 (D.N.J. Mar.14, 2011) (relying on N.J.S.A. 12A:2–317 to dismiss claims for breach of implied warranty where latent defect discovered after the expiration of express warranty period). Here, Plaintiff Shah alleges that the Window Regulator Defect manifested itself in his car almost six years after his warranty expired. See SAC ¶¶ 27-29.

---

2011) (internal citations and quotation marks omitted).

|  | : |  |
|---|---|---|
|  | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-1142-SVW-PLA | Date | June 10, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

  Plaintiff Shah does not dispute that Section 12A:2-317 limits the implied warranty to the length of the express warranty, and that the Window Regulator Defect manifested itself after the term of the express warranty. Instead, Shah argues that his claim is saved by an exception to Section 12A:2-317 that permits a plaintiff to assert an implied warranty of merchantability claim where the express warranty is unconscionable. Some federal district courts in New Jersey interpreting Section 12A:2-317 have found that such an exception exists when a plaintiff "alleged sufficiently that the limitation of the implied warranties is unconscionable." Payne v. Fujifilm U.S.A., Inc., 2007 WL 4591281, at *5 (D.N.J. Dec. 28, 2007); see also In re Samsung DLP Television Class Action Litig., 2009 WL 3584352, at *4 (D.N.J. Oct. 27, 2009) (finding that allegations of unconscionability rendered plaintiff's implied warranty of merchantability "viable" even though the defect did not arise until after the express warranty period had expired). However, unlike the complaints in Payne and In re Samsung, Plaintiffs' complaint contains no allegations of unconscionability. See, e.g. In re Samsung, 2009 WL 3584352 at *5 (noting that plaintiffs alleged that they had "no meaningful choice in determining [the warranty] time limitations; the terms of the limited warranties unreasonably favored [Defendant] over members of the Class; a gross disparity in bargaining power existed as between [defendant] and class members"). Moreover, "a manufacturer's mere knowledge that a part will ultimately fail, after the expiration of a warranty period . . . does not alone make the time/mileage limitation unconscionable." Henderson v. Volvo Cars of N. Am., LLC, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010); see also Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 520 (D.N.J. 2008) ("'[V]irtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a 'latent defect' that existed at the time of sale or during the term of the warranty . . . . A rule that would make failure of a part actionable based on such 'knowledge' would render meaningless time/mileage limitations in warranty coverage.'") (quoting Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 250 (2d Cir. 1986)). The only ground on which Plaintiffs appear to argue that the warranty was unconscionable was Defendant's knowledge that the Window Regulator would expire after the warranty period; these allegations alone are insufficient to support their contention that the warranty's limitations were unconscionable. Therefore, the Court DISMISSES Plaintiffs' New Jersey Implied Warranty claims WITH PREJUDICE.

     **C. The Tennessee Breach of Implied Warranty Claim**

  Tennessee's Implied Warranty of Merchantability Statute provides, in relevant part: "Unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Tenn. Code Ann. § 47-2-314. "To be merchantable, a used car must be in reasonably safe condition and substantially free of defects that could render it inoperable and must perform up to the level reasonably expected of a car of the same age,

|  | : |  |
|---|---|---|
|  | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:12-cv-1142-SVW-PLA | Date | June 10, 2013 |
|---|---|---|---|
| Title | Phyllis Grodzitsky, et al. v. American Honda Motor Co., Inc. | | |

mileage, and price." Patton v. McHone, 822 S.W.2d 608, 617 (Tenn. Ct. App. 1991) (internal citations and quotation marks).

However, like New Jersey's Implied Warranty of Merchantability, Tennessee law limits the implied warranty of merchantability to the same term as an express warranty. See Tenn. Code Ann. § 47-2-317 ("Warranties whether express or implied shall be construed as consistent with each other and as cumulative[.]"). This Court has not found any decision interpreting this provision of Tennessee law. When a case raises an issue of first impression, a court sitting in diversity "must use its best judgment to predict how the [relevant state] Supreme Court would decide the issue." Burlington Ins. Co. v. Oceanic Design & Const., Inc., 383 F.3d 940, 944 (9th Cir. 2004) (internal citations, quotation marks, and alterations omitted). "In so doing, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions." Id. (internal citations and quotation marks omitted).

Tennessee's limiting provision is exactly the same as New Jersey's: both were taken verbatim from the Uniform Commercial Code. In interpreting this provision in a case involving New Jersey's law, the Third Circuit concluded that "it is only reasonable to construe the two warranties [i.e. the express and implied warranty of merchantability] as consistent with each other for the [term] of the express warranty. Beyond that period, the implied warranty of merchantability conflicts with the contract's specifications, and is therefore displaced by the express warranty." New Jersey Transit Corp. v. Harsco Corp., 497 F.3d 323, 329 (3d Cir. 2007). Following the Third Circuit's lead, this Court finds that actions under the implied warranty of merchantability are limited to the term of an express warranty, when one is so provided. Therefore, Plaintiffs' claim under Tennessee's implied warranty of merchantability is DISMISSED WITH PREJUDICE.

### VI. CONCLUSION

For the reasons put forward in this Order, this Court DENIES Defendant's motion as to Plaintiffs' CLRA, UCL, and Iowa Consumer Fraud Act claims. The Court GRANTS Defendant's motion as to Plaintiffs' New Jersey Consumer Fraud Act, Song-Beverly Act, Tennessee Implied Warranty of Merchantability, New Jersey Implied Warranty of Merchantability, and Deceit and Common Law fraud claims and DISMISSES those claims WITH PREJUDICE.

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |