1   Michael L. Mallow, SBN 188745
    mmallow@sidley.com
2   Rachel A. Straus, SBN 268836
    rstraus@sidley.com
3   SIDLEY AUSTIN LLP
    555 West Fifth Street, Suite 4000
4   Los Angeles, California 90013
    Telephone: 213-896-6000
5   Facsimile: 213-896-6600

6   [Additional attorneys listed on signature page]

7   *Attorneys for Defendant*
    *American Honda Motor Co., Inc.*

8

9                    **UNITED STATES DISTRICT COURT**

10      **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

11

12  PHYLLIS GRODZITSKY, et al.,        ) <span style="color:red">**REDACTED**</span>
                                       ) Case No. CV 12-1142 SVW (PLAx)
13              Plaintiffs,            )
                                       ) Assigned to: Hon. Stephen V. Wilson
14  vs.                                )
                                       ) **AMERICAN HONDA MOTOR CO.,**
15  AMERICAN HONDA MOTOR CO.,          ) **INC.'S OPPOSITION TO**
    INC.,                              ) **PLAINTIFFS' RENEWED MOTION**
16                                     ) **FOR CLASS CERTIFICATION**
                Defendant.             ) **AND APPOINTMENT OF CLASS**
17                                     ) **REPRESENTATIVES AND**
                                       ) **COUNSEL**
18                                     )
                                       ) Complaint Filed: February 9, 2012
19                                     )
                                       ) Date:  August 14, 2017
20                                     ) Time:  1:30 p.m.
                                       ) Ctrm:  6
21  _____)

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................... 1

FACTUAL BACKGROUND ....................................................... 4

I.  A Brief Case Background ................................................. 4

II.  Window-Regulator Assemblies in the Putative Class Vehicles ..................... 6

III.  Facts Relevant To Named Plaintiffs' Vehicle Purchase and Experience ....... 7

STANDARD ............................................................................ 8

ARGUMENT ........................................................................... 9

I.  Plaintiffs Fail to Demonstrate a Common Defect ........................................... 9

    A.  Akhavein's Opinion That Window Regulators Should Never Fail .... 10

    B.  Akhavein's Opinion That the Carrier Plate/Ferrule Interface in the Putative Class Vehicles' Window Regulators is Insufficiently Strong and Durable ........................................ 14

    C.  Akhavein's Opinion that Honda Did Not Adequately Test the Window Regulators for Vibration Exposure ....................................... 16

II.  Plaintiffs Fail to Submit a Damages Methodology, As They Must ............. 18

III.  Plaintiffs Fail to Show the Requisite Commonality and Predominance as to the Elements of Their CLRA and UCL Claims .............................. 20

IV.  Plaintiffs Fail to Show Typicality ............................................ 22

V.  Superiority Remains Lacking .............................................. 23

VI.  Plaintiffs' Request for Rule 23(b)(2) Certification Also Fails .................... 24

CONCLUSION ..................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Wolin v. Jaguar Land Rover N. Am., LLC,*
  617 F.3d 1168 (9th Cir. 2010) ................................................................ 16, 20, 21

*Baghdasarian v. Amazon.com, Inc.,*
  No. 2:05-cv-08060, 2009 WL 4823368 (C.D. Cal. Dec. 9, 2009) ....................... 22

*Butler v. Sears, Roebuck & Co.,*
  727 F.3d 796 (7th Cir. 2013) ............................................................................... 23

*Cholakyan v. Mercedes-Benz, USA LLC,*
  281 F.R.D. 534 (C.D. Cal. 2012) ............................................................... 10, 16, 26

*Comcast Corp. v. Behrend,*
  133 S.Ct. 1426 (2013) ................................................................................... *passim*

*Doyle v. Chrysler Group LLC,*
  663 Fed. Appx. 576 (9th Cir. 2016) ................................................................. 3, 20

*Fine v. ConAgra Foods, Inc.,*
  10-CV-01848, 2010 WL 3632469 (C.D. Cal. Aug. 26, 2010) ............................. 22

*Hanon v. Dataproducts Corp.,*
  976 F.2d 497 (9th Cir. 1992.) ............................................................................... 23

*Helm v. Alderwoods Grp. Inc.,*
  No. 08-cv-01184, 2011 WL 855810 (N.D. Cal. Mar. 9, 2011) ............................ 24

*Korea Supply Co. v. Lockheed Martin Corp.,*
  29 Cal. 4th 1134 (2003) ....................................................................................... 24

*Leyva v. Medline Indus. Inc.,*
  716 F.3d 510 (9th Cir. 2013) ........................................................................... 4, 19

*Mazza v. Am. Honda Motor Co., Inc.,*
  666 F.3d 581 (9th Cir. 2012) ................................................................................. 9

*Mirkin v. Wasserman,*
  5 Cal. 4th 1082 (1993) ......................................................................................... 21

*Oestreicher v. Alienware Corp.*,
 544 F. Supp. 2d 964 (N.D. Cal. 2008) *aff'd* 322 F. App'x 489 (9th Cir.
 Apr. 2, 2009) ................................................................................................... 14

*Ollier v. Sweetwater Union High Sch. Dist.*,
 768 F.3d 843 (9th Cir. 2014) .......................................................................... 17

*Pella Corp. v. Saltzman*,
 606 F.3d 391 (7th Cir. 2010) ........................................................................... 26

*Tait v. BSH Home Appliances Corp.*,
 289 F.R.D. 466 (C.D. Cal. 2012) ..................................................................... 10

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practice & Prods.*
 *Liab. Litig.*,
 288 F.R.D. 445 (C.D. Cal. 2013) ..................................................................... 25

*Vaquero v. Ashley Furniture Indus., Inc.*,
 824 F.3d 1150 (9th Cir. 2016) ......................................................................... 19

*In re Vioxx Class Cases*,
 180 Cal. App. 4th 116,129 (2009) ................................................................... 21

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) .................................................................................... 9, 26

*Webb v. Carter's Inc.*,
 272 F.R.D. 489 (C.D. Cal. 2011) ..................................................................... 22

*Zinser v. Accufix Research Inst. Inc.*,
 253 F.3d 1180 ...................................................................................... 24, 25, 26

**Statutes**

Cal. Civ. Code §§ 1761(e), 1770(a) ...................................................................... 24

Fed. R. Civ. P. 23(a)(1)–(4) & 23(b)(3) ................................................................. 9

Fed. R. Civ. P. 23(a)(3) ........................................................................................ 23

Federal Rule of Civil Procedure Rule 23 ................................................................. 1

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Plaintiffs have spent the better part of five years searching for a "common" defect in various American Honda Motor Co., Inc. ("Honda") window-regulator assemblies in an effort to force Honda to pay for window-regulators that have been replaced by customers in the past or may fail at some time in the infinite future. Now, in Plaintiffs' third attempt at certification, Plaintiffs allege the window-regulators in 2003 to 2008 Honda Pilots—vehicles that are nine to fourteen years old—are defectively designed because they are not sufficiently strong and durable enough to last the life of the vehicle.

Plaintiffs argue their new putative class should be certified because they checked all the boxes the Court in previous class certification denials identified for them. According to Plaintiffs, they:

√ Narrowed the putative class;

√ Engaged a new expert;

√ Their new expert conducted testing; and

√ Their new expert relied on someone else's testing.

But certifying a class is not about superficially checking boxes; it is about demonstrating that all of the requirements of Federal Rule of Civil Procedure Rule 23 are met, which Plaintiffs have once again—for the third time—failed to do.

In denying Plaintiffs' second motion for class certification, this Court first excluded Plaintiff's expert Stephen Batzer's testimony because it was unreliable, unscientific, and inadmissible, and then found "the Court's exclusion of Batzer's opinions [was] fatal to Plaintiffs' commonality argument" and that "even if [Batzer's] testimony were admissible, the same flaws discussed above also render his opinions insufficient to show commonality." Dkt. No. 272 at 16-17.

Shockingly, and despite having 15 months to hone their defect theory; Plaintiffs present the Court with expert testimony that in many respects is even more baseless, speculative, and unreliable than Batzer's testimony. For example, the Court excluded

1

Batzer's testimony that the window regulators should last the "useful life" of the vehicle (which Batzer asserted was 10 years) because Batzer's opinion "rest[ed] primarily on his own personal opinion and speculation regarding consumers' expectations." Dkt No. 272 at 12-13. Glenn Akhavein, Plaintiffs' new (but not improved) expert, goes one step farther. According to Akhavein, the window regulators in the putative class vehicles—which are comprised of motors, cables, brackets, and other moving parts that normally wear over time—are defective because they should never fail — **ever!**—even if the car is 20, 30 or 40 years old or more. Mallow Decl. Ex. A at 10:6-11 ("Q: how durable is it supposed to be? A: It's supposed to never fail? Q: Ever? A: It shouldn't fail ever").

Akhavein identified nothing wrong with the plastics or metals used, nor anything wrong with the design itself, other than its failure to last forever. Like Batzer, Akhavein can point to nothing other than his own say so to support his illogical conclusion that because window regulators are —he believes—designed to be inaccessible, they should never fail. But even Akhavein's unsupported inaccessibility theory is undermined by the experiences of the named plaintiffs as two of the three named plaintiffs performed what one plaintiff described as a "fairly simple repair," to replace his window regulator and the other plaintiff performed after watching one of the 30 or 40 videos on YouTube about how to change a window-regulator assembly.

Akhavein fairs no better with his opinion that the carrier-to-ferrule interface in the putative class vehicles is insufficiently strong and durable. Akhavein bases his entire defect theory after reviewing a statistically insignificant number of window regulators in the putative class vehicles that were cherry-picked for him by Plaintiffs' counsel. Akhavein also ignores the multitude of other reasons a window regulator may either fail or otherwise need to be replaced. He did, however, admit in deposition that to determine the root cause of any particular window-regulator assembly replacement, the window-regulator would need to be inspected.

Finally, Akhavein's opinion that Honda did not adequately test the window-

2

AMERICAN HONDA MOTOR CO., INC.'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS
CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND COUNSEL

regulators for vibration exposure is equally baseless because: (1) Akhavein has no basis for his opinion that the two test standards he used—one for an entirely unrelated vehicle component, and one for military vehicles intended to perform combat and support missions in environments unique to the military—are used by any other auto manufacturer to test the vibrations on the window regulators; (2) Akhavein did not run any durational vibration testing to demonstrate what would happen at the frequencies he observed in his testing; and (3) Akhavein fails to account for the fact that the amount of vibration each window regulator experiences depends on numerous individual factors, such as actual use, driving conditions, and environmental exposure factors.

In short, despite Plaintiffs narrowing their class and paying Akhavein to perform some unenlightening testing, the parties and the Court are in exactly the same place they were two years ago —with no reliable expert testimony and no reliable evidence of a defect, much less a common defect, across the putative class vehicles.

The lack of a common defect is not the only fatal flaw in Plaintiffs' motion for class certification. Throughout this litigation, including in Plaintiffs' most recent motion for class certification, Plaintiffs have relied heavily on the district court's decision in *Doyle v. Chrysler Group LLC*, a putative class action involving window regulators. While Plaintiffs were working with their new expert on his defect theory, the Ninth Circuit reversed the district court's decision granting certification. 663 Fed. Appx. 576 (9th Cir. 2016). Citing *Comcast Corp. v. Behrend,* 133 S.Ct. 1426 (2013), the Ninth Circuit in *Doyle* explained that the plaintiff there failed to meet the predominance standard requirement because there was "no way to determine whether the proposed damage model measures damages that [were] solely attributable to [plaintiff's] theory of liability." 663 Fed Appx. at 579. In other words, Rule 23 requires plaintiffs "to show that their [claimed] damages stemmed from defendant's actions that created liability." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). In contrast to *Doyle*, where the court found the plaintiff's damage model

3

incomplete and flawed, Plaintiffs identify no methodology whatsoever here to ensure that any claimed damages would include only those "attributable to [their] theory of liability." In other words, Plaintiffs do not even attempt to attribute the injury the putative class members purportedly suffered to a failure at the carrier/ferrule interface, and not some other root cause. Rather, Plaintiffs want to hold Honda responsible for *all* failed window regulators, no matter the cause and regardless of whether it is attributable to their alleged "common" defect theory. This is not the law, as the Supreme Court in *Comcast* and the Ninth Circuit in *Doyle* confirmed.

Many other flaws plague this latest certification bid. Plaintiffs wrongly assume that, because their claims are based generally on an alleged omission, they do not have to provide any common proof for any element of their claims. Plaintiffs likewise fail to show they are typical class representatives, and the class action procedure is superior to other methods of resolving any potentially valid claims. Plaintiffs' alternative request to certify an "Owner Class under Rule 23(b)(2) for declaratory relief as to future Regulator failures . . . that would allow them to have failed Regulators replaced at no cost for the expected life of their Vehicles," however long that may be, also fails because Plaintiffs do not meet the indivisibility or cohesion requirements.

Throughout this litigation, Plaintiffs have presented a moving target of claims, allegations, and defect theories, including switching plaintiffs and dropping claims, changing alleged defect theories and purportedly affected vehicles and model years, and pursuing last-minute amendments. One thing, however, has remained constant—Plaintiffs fail consistently to present any proper basis on which to certify any putative class. The Court should again deny certification— for the last time, and with prejudice.

## FACTUAL BACKGROUND

### I.   A Brief Case Background

Plaintiffs Phyllis Grodzitsky and Jeremy Bordelon initiated this action on February 9, 2012. Dkt. No. 1. Since then, Plaintiffs have moved to amend their complaint four times, added and dropped named plaintiffs, added and dropped claims,

AMERICAN HONDA MOTOR CO., INC.'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND COUNSEL

proposed different classes and subclasses, swapped experts, and twice unsuccessfully moved for class certification. Dkt Nos. 31, 62, 90, 170, 192, 193, 286.

In early 2014, the Court denied Plaintiffs' original motion to certify a class comprised of "all persons in the United States who own or lease a Class Vehicle," which they defined to include 11 different makes and models across as many as 12 model years. Dkt. No. 168. The Court denied Plaintiffs' motion because Plaintiffs did not provide "evidence supporting the contention that the materials are the same throughout the Class Vehicle window regulators," but granted Plaintiffs leave to conduct "additional discovery related to the materials used, the designs, and the manufacturing of the various window regulators." *Id*.

In February 2015, after extensive discovery, Plaintiffs renewed their motion for class certification. Dkt. No. 192. The Court excluded Plaintiffs' expert's opinions because "his testimony amounted to little more than speculation, as he did not rely on his own testing, the testing of others, or peer-reviewed literature." Dkt. No. 299 at 4. The Court then denied Plaintiffs' motion for class certification because the "Court's exclusion of [Batzer's] opinions is fatal to Plaintiffs' commonality argument….Moreover, even if Batzer's testimony were admissible, the same flaws. . . also render his opinions insufficient to show commonality" or that the putative class members suffered the same injury. Dkt. No. 272 at 16-17 The Ninth Circuit denied the Plaintiffs' Rule 23(f) petition and their request for rehearing *en banc*. Dkt No. 284.

After 14-month's of docket inactivity, Plaintiffs moved to amend and renewed their certification bid, which the Court allowed, providing Plaintiffs "*one more opportunity* to certify their proposed class." Dkt. No. 299 at 4 (emphasis added).

This time Plaintiffs are seeking to certify a class of: "all persons in the United States who purchased or leased a 2003-08 Honda Pilot in California," Dkt. No. 301 ¶ 148, a sub-class of Honda customers Plaintiffs unsuccessfully sought to certify in their second class certification effort. Hedging once again, Plaintiffs seek certification of a "Damages Subclass" under 23(b)(3) for all putative class members who replaced their

window-regulators (regardless of cause), and an "Owner Subclass" under Rule 23(b)(2) "for purposes of declaratory relief as to future Regulator failures" to require Honda to "replace failed Regulators in Class Vehicles at no cost to the Class members, for the Vehicle's expected life" (also regardless of cause). *Id*. at ¶ 149; 187(e).

## II. Window-Regulator Assemblies in the Putative Class Vehicles

As this Court accurately described, window regulator assemblies include a number of components, including switches, motors, cables, brackets and other moving parts. See Dkt. No. 168 at 2; *see also* Dkt. No. 282 at 2.

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████ These window-regulators have been replaced for a variety of reasons. Mallow Decl. Ex. K (Lange Report) at 23; *see also* Dkt No. 293-2 (Akhavein Report) at 21; Mallow Decl. Ex. L (Ray Report) at ¶ 11-19. For example,

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ Mallow Decl. Ex. N. This has nothing to do with ferrules and carrier plates. Where there has been a replacement due to failure, the failures have occurred for a variety of reasons unrelated to Plaintiffs' defect theory, including:

- Failure of the cable;
- Failure of the electric motor;
- Failure of the electrical control system;
- Failure of the carrier insert;
- Failure of the motor drum to retain the ferrule;
- External interference with cable movements;
- Excessive friction resisting window movement; and
- Failure of a switch.

*Id*. As confirmed by Plaintiffs' expert, the only way to determine why a window-

regulator failed or needed to be replaced is to inspect the individual regulator. Mallow Decl. Ex. A at 179:11-15.

### III. Facts Relevant To Named Plaintiffs' Vehicle Purchase and Experience

**Charity Anyiam**: In or around May 2013, Anyiam purchased her 2005 Honda Pilot for $5,000 at an auction, by which time it had already been driven for eight years and 177,000 miles. Mallow Decl. Ex. C at 18:3-29:4; 32:6-10; *see also* Exhibit F. The vehicle needed at least $1,000 worth of repairs before Anyiam could drive it. *Id.* at 31:3-8. Anyiam has no knowledge about the previous owners of the vehicle or their driving practices. *Id.* at 142:6-21. In May 2016, after she had driven her vehicle for approximately an additional 100,000 miles, her left, rear window became stuck. Dkt. No. 293-24 at ¶ 4; Mallow Decl. Ex. C at 68:7-13. Instead of having the window repaired, Anyiam had the window sealed shut. Mallow Decl. Ex. C at 89:24-90:12. About six months later, the right, front window allegedly collapsed. Anyiam Decl. ¶ 6. Anyiam had the window repaired for $200. Mallow Decl. Ex. C at 97:13-19. Currently, Anyiam has over 312,000 miles on her vehicle, which she still drives and "loves." *Id.* at 151:14-15; 153:21-154:4; *see also* Mallow Ex. K at ¶ 26. Anyiam had such a positive experience with her 2005 Pilot that when she needed another vehicle, she purchased a 2013 Honda Pilot. *Id.* at 20:21-22:2.

**Jonathan Pendarvis**: Pendarvis purchased his 2007 Honda Pilot used in June of 2008. Mallow Decl. Ex. D at 49:13-51:8. When Pendarvis purchased his vehicle it had been driven for two years and had over 22,000 miles on it. Mallow Decl. Ex. F. Pendarvis has no knowledge about the previous owners of the vehicle or their driving practices. Mallow Decl. Ex. D at 125:20-126:15. In early fall 2016, after Pendarvis's vehicle was over ten years old and had close to 100,000 miles on it, the window-regulator allegedly failed. *Id.* at 122:11-14. After propping the window up for approximately "three to four weeks," Pendarvis purchased a regulator from a Honda dealership and performed the repair himself. *Id.* at 81:10-15; 99:9-100:23. Although Pendarvis never changed a window regulator before, he was able to change the

window regulator in an hour and a half by "finding 30 or 40 different videos" and watching YouTube." *Id*. at 97:25-98:1; 98:23-99:8; 102:22-103:17. Despite the window-regulator assembly failing, Pendarvis is "very pleased" with the vehicle, which has over 103,853 miles on it, and which he still drives. *Id*. at 61:5-13; 132:8-13.

**Dennis Mason**: Mason purchased his 2007 Honda Pilot new in December 2006. Mallow Decl. Ex. E at 16:1-3. Mason had to replace a window regulator in a 2004 Ford F150 that he previously owned because the window dropped into the door while he was driving. *Id*. at 56:23-57:17. He did not submit a claim to Ford, did not notify any consumer-protection groups about the incident, and did not file a lawsuit against Ford. *Id*. at 60:4-15. On December 27, 2016, after Mason had owned his Pilot for 10 years and it had been driven approximately 132,186 miles, the right rear window regulator allegedly failed. Dkt No. 293-26 ¶ 4; Mallow Decl. Ex. E at 95:6-19. Mason purchased a replacement window regulator for $71.66 and performed the repair himself after watching videos online. *Id*. at ¶ 5. Mason described the repair, which he finished in a little over an hour, as "relatively simple" and a "fairly simple repair." Mallow Decl. Ex. E at 105:6-25. Mason also admitted that if he would have known he would need to make a $71 repair, ten years after purchasing his Pilot, he would likely have still purchased it. *Id*. at 122:24-123:8. Mason still drives his Pilot, which has over 134,475 miles on it. *Id*. at 49:14-17.

## STANDARD

A class action "is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). Certification requires a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23, which will often "entail some overlap with the merits of the plaintiffs' underlying claim. That cannot be helped." *Dukes*, 564 U.S. 351. This rigorous analysis requires "significant proof" that the proposed classes should "in fact" be certified. *Id*. at 350-51.

As the party seeking certification, the plaintiffs must meet-with "evidentiary

proof" the requirements of both Rule 23(a) (numerosity, commonality, typicality, and adequacy) as well as either Rule 23(b)(2) or 23(b)(3) (predominance and superiority). *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012); Fed. R. Civ. P. 23(a)(1)–(4) & 23(b)(3). These requirements serve to limit class claims to those fairly represented by the named plaintiffs because the representative plaintiffs must share the same interests and injury as the class members. *Dukes*, 564 U.S. 347-48.

Under Rule 23(a)(2), Plaintiffs must show "there are questions of law or fact common to the class." *Id*. Plaintiffs must do more than merely raise "common 'questions'—even in droves." *Id*. Plaintiffs must show the "capacity of a classwide proceeding to generate common answers." *Id*. "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id*. Similarly, Rule 23(b)(3) "requires a court to find that 'the questions of law or fact common to the class members predominate over any questions affecting only individual members.'" *Comcast Corp*., 133 S. Ct. 1432. "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Id*. As the Court previously noted, Rule 23(b)(3)'s predominance requirement also requires the moving party to show that "damages are capable of measurement on a classwide basis" and "to tie their method of proving damages to their theory of liability." Dkt No. 272 at 15 (quoting *Comcast Corp*., 133 S. Ct. at 1433). To have a class certified under Rule 23(b)(2), Plaintiffs must also prove Honda "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiffs again fail to carry their burden on certification under the appropriately rigorous analysis.

## ARGUMENT

## I.   Plaintiffs Fail to Demonstrate a Common Defect

As this Court has previously recognized in its two prior class certification denials, each of the common questions Plaintiffs advance turns on proof of a common

defect. Dkt. No. 168; Order 6, Dkt No. 272 at p. 16-18; *see also Cholakyan v. Mercedes-Benz, USA LLC*, 281 F.R.D. 534, 552-56 (C.D. Cal. 2012) (holding that plaintiff failed to establish commonality where he failed to adduce evidence that there was a single defect which caused the putative class members' alleged injuries). In other words, if Plaintiffs cannot demonstrate a common defect, this case cannot be certified for class treatment.

Like their previous attempts at certification, Plaintiffs adduce no evidence beyond their expert's unsupported opinion that the putative class vehicles share a common defect. *See* Dkt. No. 272 at 17; *see also Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 475 (C.D. Cal. 2012) ("argument without support from an expert or citation to the record is insufficient to defeat Plaintiffs' showing of commonality"). As discussed below and in the accompanying Motion to Exclude the Testimony of Glenn Akhavein, Akhavein's opinion that the carrier-plate/ferrule interface in Honda's window-regulator assemblies is defective because it does not last the life of the vehicle is speculative and baseless and does not demonstrate a common defect.

## A.    Akhavein's Opinion That Window Regulators Should Never Fail

According to Akhavein, 2003 to 2008 Honda Pilots have a common design defect even though he concedes these window-regulators are more than sufficiently strong over the short-term. Dkt No. 293-2 (Akhavein Report) at 6. According to Akhavein, they were not adequately designed to be strong and durable enough to withstand the continual effects of plastic creep and metal fatigue at the carrier-to-ferrule interface over the entire life of the vehicle. Mallow Decl. Ex. A at 10:6-11; 16:3-17; *see also* Dkt No. 293-2 at 5-6. And by that, he means, although plastic creep and metal fatigue are inherent characteristics of these materials and although he finds no fault in the materials themselves, the window-regulators in the putative class vehicles are nonetheless defective because they do not last the life of the vehicle, which he defines as the duration the vehicle is on the road —however long that may be. Mallow Decl. Ex. A at 10:6-11 ("Q: how durable is it supposed to be? A: It's

10

supposed to never fail? Q: Ever? A: It shouldn't fail ever").[1] Indeed, according to Akhavein, a window-regulator assembly must not fail regardless of whether the vehicle is driven over 10 years like the window-regulators in the named Plaintiffs' vehicles—or for 30, 40, 50 years or more. *Id.* at 136:14-137:24 (asked whether the window-regulator in a 1957 Thunderbird that is still on the road today should last the life of the vehicle, Akhavein answered "yes").

Not surprisingly, Akhavein, like his predecessor Batzer (who at least defined the useful life of the vehicle)[2] lacks any support for this illogical view of automobile component design, as a "zero failure rate" is not embraced by any manufacturer, industry group, or governmental agency, nor is it expected or required by the law or by the consuming public. Indeed Akhavein, like Batzer, identified:

- no industry standards to support his theory;[3]
- no standards for replacement rates in the industry;[4]
- no average rates for replacements;[5]
- no studies with respect to customer expectations;[6] and

---

[1] *See also id.* at 87:2-6 ("[L]ife of the vehicle, again, is somewhat ambiguous, but if a vehicle is running and functioning, then it's my opinion that a component like a window regulator should also be functioning within that vehicle"); *id.* at 102:16-18 (Q: "you said that the window regulator should last the life of the vehicle, correct?" A:"That I have said"); *id.* at 135:2-4 ("again durable enough in my opinion is a function of this product lasting the life of the vehicle"); *id.* at 137:4-5 ("[w]hat I'm saying is, again, the product, in my opinion, should last the life of the vehicle"); *id.* at 136:3-6 ("[A]gain, you can keep asking this, but it's the life of the vehicle. That answer is not going to change, regardless how you ask it or how many times you ask it. This particular part is designed to go into a vehicle and it's my opinion it should last the life of the vehicle.").

[2] Dkt. No. 272 at 12. If a window-regulator assembly needs to only last 10 years as Plaintiffs' prior expert opined, then the newly added named plaintiffs have no claims because the window-regulator assembly failures in their vehicles occurred 10 years or more after the vehicles first in use date.

[3] Mallow Decl. Ex. A at 87:8-15 ("Q: But we don't have any industry – you don't have any industry specification or industry authority suggesting that the window regulator assembly in a vehicle should last the functional life of the vehicle?" A: If you're asking is there some specific industry standard, I don't believe that there is.")

[4] *Id.* at 137:17-24 ("Q: And you haven't seen anything in terms of an industry standard indicating that window-regulator assembly, if they do not last the life of the vehicle are defective. A: If you're asking – to be certain – you are asking that have I seen something along those lines; then no.").

[5] *Id.* at 138:1-16; 186:16-187:6.

[6] *Id.* at 166:3-12.

---

11

- no studies of replacement rates.[7]

Dkt No. 272 at 12 (excluding Batzer's zero failure rate opinion because Batzer did not do these things); Mallow Decl. Ex. K (Lange Report) at ¶ 22 (confirming "there is no common industry standard that requires any component or system to provide infinite performance, including window regulators" and explaining that Akhavein's standard of performance is no standard by which a defect evaluation can be measured because it is a standard beyond reasonable performance for durability and reliability).

Instead, and, like Batzer, Akhavein relies solely on his "own personal opinion" and offers no methodology or reliable support by which he arrived at this conclusion that window-regulators should simply never fail. Dkt. No. 272 at 13. His only reasoning is that window regulators should never fail because in his belief, a window regulator is "not designed to be taken out. Therefore, it should last the life of the vehicle." Mallow Decl. Ex. A at 14:1-6; *see also* Mov. Br. at 7:4-7 ("the regulator is not intended to be replaced over the life of the vehicle, like windshield wipers blades, headlight lamps, or tires"); 293-2 (Akhavein Report) at 19. Akhavein further explains:

> [as] an expert in product design, product development when you design something, there's a lot of factors that go into it, and you can -- if you know what you are doing you can look at a product, and you can look at the way's designed, and you can look at how it is designed, and that gives you insight as to whether or not this object is designed to be easily accessible, easily replaced, and you know that comes with a lot of years experience designing products.

Mallow Decl. Ex. A at 14:1-24.

Yet, Akhavein's premise that window-regulators should never fail because they are supposedly difficult to access and replace is not only unreasonable and unsupported, it is belied by the named Plaintiffs' own testimony. *See* Mallow Decl. Ex. E at 105:6-25 (Mason describing the repair as "relatively simple" after watching YouTube videos); *also id*. Ex. D at 97:25-98:1; 98:23-99:8; 102:22-103:17 (Pendarvis explaining how he was able to change the window-regulator in an hour and a half after finding 30 or 40 different videos of people changing window-regulators and watching

---

[7] *Id*. at 193:23-194:8.

YouTube); Mallow Decl. Ex. H at 94:7-11 (individual Plaintiff Shah explaining how he changed the window-regulator in his 2003 Pilot himself); Ex. I at 66:13-14 (Individual Plaintiff Manzo testifying that her husband installed a new window-regulator in their 2007 Honda Pilot in less than a few hours); *see also* Mallow Decl. Ex. K (Lange Report) at ¶¶ 13-16.

Additionally, Akhavein admitted he is personally aware of aftermarket part suppliers who sell window-regulator assemblies as replacement parts for all major automobile manufacturers, which means window-regulator assemblies need to be replaced with sufficient regularity across all manufacturers that third-parties can not only easily access window regulators, and profit from a market that has a meaningful number of replacements across all manufacturers. Mallow Decl. Ex. A at 187:8-16; Ex. K (Lange Report) at ¶¶ 16-20.

As Plaintiffs and their experts appear to understand (because they have now offered two unsupported opinions that the window regulators must last some amount of time), unless Plaintiffs can support their belief that the window regulators should last longer than they do, there is no common defect. These are just parts that wear out over time—a long time. But merely getting old and suffering the consequences of age, like plastic creep and vibration induced metal fatigue, is not a defect, lest everything that ages would be defective. Mallow Decl. Ex. A at 142:12-21 (explaining that 90% of all mechanical service failures can be attributed to metal fatigue); Dkt No. 293-2 (Akhavein Report) at 31; Mallow Decl. Ex. A at 29:5-19 (explaining that all plastics are susceptible to plastic creep, which in and of itself is not a defect). Courts have repeatedly and expressly refuted this notion; Mallow Decl. Ex. K at ¶¶ 41=45[8]

---

[8] *See, e.g.*, *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 972 (N.D. Cal. 2008) *aff'd* 322 F. App'x 489 (9th Cir. Apr. 2, 2009) *(*quoting *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986)),; *see also Daugherty*, 144 Cal. App. 4th 824, 830-31 (quoting same).

**B.     Akhavein's Opinion That the Carrier Plate/Ferrule Interface in the Putative Class Vehicles' Window Regulators is Insufficiently Strong and Durable**

Akhavein's opinion that the carrier-plate/ferrule interface in all putative class vehicle window regulators is insufficiently strong and durable is likewise unsupported and does not rest upon sufficient facts or data. Akhavein claimed in his report that he "inspected more than 45 window regulators, both new and failed exemplars, including failed Honda Regulators from the Plaintiffs and proposed Class representatives' vehicle as well as aftermarket regulators."[9] In actuality, although Akhavein looked at approximately 20 new and used window regulators from 2003-08 Pilot vehicles, the only failed regulators he inspected were "three or four" failed regulators from the named plaintiffs' vehicles. Giving him the benefit of the doubt, Akhavein saw a total of approximately a dozen window regulators that failed as a result of the ferrule separating from the carrier plate, or may fail at some unknown time in the future because cracks may lead to failure. Mallow Decl. Ex. A at 19:21-25; 21:31-6 ("Q: How many actual failures have you seen where the ferrule has pulled out of the carrier plate?" "A: It's either three or four."); *id.* at 107:25-108:1.[10] Akhavein has undertaken no effort to inspect any other failed window regulators, nor to identify other failure modes.

Other than the few failed window-regulator assemblies he actually inspected, Akhavein has no opinion why any particular window-regulator may have failed. *Id.* at

---

[9] 293-2 (Akhavein Report) at 13.

[10] Akhavein also reviewed test results confirming what he says he already expected: that the plastics in the named Plaintiffs' window-regulators he inspected failed because of creep rupture at the interface between the metal and the plastic. Mallow Decl. Ex. A: 26:2-15; 28:14-29:12. Akhavein also claims that he looked at photographs from the named Plaintiffs' vehicle inspections and saw signs of fatigue at the carrier-plate ferrule interface. Mallow Decl. Ex. A at 19:11-20. But according to Akhavein's theory, the window-regulators are not defective until they actually fail because the vehicle may become inoperable before the regulator fails and thus outlast the vehicle. This is a very real possibility in all of the putative class vehicles which have been on the road for many years, and especially vehicles like Anyiam's vehicles, which has over 300,000 miles and is over 13 years old. Mallow Decl. Ex. C at 151:14-15; 153:21-154:4.

1   94:24-95:6; 107:16-22; 127:6-128:18. █████████████████████████

2   ██████████████████████████████████████, was available to him so he could

3   determine if other putative class vehicle window-regulators were replaced for the

4   same reason, or at the very least, determine whether the percentage of putative class

5   vehicles that had window-regulator replacements caused by insufficiently strong

6   carrier-plate/ferrule interfaces was statistically significant, Akhavein believes the

7   reason for any other regulator failure, other than the relatively few he looked at, is

8   "irrelevant." Mallow Decl. Ex. A at 127:6-128:18; 215:7-25 ("Q: So you don't know

9   what percentage of failures are related to what root cause, do you? A: again, that is not

10  relevant to my analysis."). Not only is Akhavein's limited sample inadequate to

11  conclude that all window regulators in the putative class vehicles are insufficiently

12  strong and durable, but Akhavein does not even know if the window regulators he

13  inspected are, in fact, Honda window regulators. Mallow Decl. Ex. A at 32:10-33:1.

14          Plaintiffs seemingly recognize their expert must base his opinion on more than

15  the statistically insignificant number of failed regulators he inspected. Plaintiffs claim

16  "hundreds of thousands of Regulators have been replaced to date." *See* Dkt. No. 293-1

17  at 12. As discussed in Honda's Motion to Exclude the Testimony of Allise Wachs and

18  the accompanying Motion to Strike Exhibit B to the Martin Declaration, Wachs's

19  method for arriving at a number of purportedly failed window regulators is baseless.

20  Dkt. No. 205. But even if Wachs's method was not baseless, Plaintiffs cannot have it

21  both ways. Either Akhavein relied on the limited number of failed window regulators

22  he inspected for his opinion and any other failure mode is "irrelevant," *or* Plaintiffs

23  are relying on all window-regulator failures and replacements in the putative class

24  vehicles. But if Plaintiffs are relying on *all* replacements, Plaintiffs have not shown –

25  as they must – that there is a single root cause for the window-regulator replacements

26  in the putative class vehicles. *Cholakyan*, 281 F.R.D. 534 (holding that plaintiff failed

27  to establish commonality where he failed to adduce evidence that there was a single

28  defect which caused the putative class members' alleged injuries). As the Court

15

recognized, Wachs's opinion about replacement rates "is insufficient to prove a common defect. Wachs does not tie the observed replacement rates to Plaintiffs' alleged defect – an insufficiently strong and durable carrier-plate/ferrule interfaces." Dkt No. 282 n. 12. And Akhavein admitted, the only way to determine the root cause of a window-regulator replacement is to inspect each and every replaced window regulator.[11] Mallow Decl. Ex. A at 179:11-15.

## C.    Akhavein's Opinion that Honda Did Not Adequately Test the Window Regulators for Vibration Exposure

Akhavein opines that Honda did not adequately test the window-regulators for long-term vibration exposure and because Honda did not follow two test standards that Akhavein says they should have: SAE USCAR2 for electrical connectors, and MIL-STD 810G for military cargo transport. Dkt No. 293-2 (Akhavein Report) at 34-39; Ex. A at 62:18. Akhavein is not aware of any authority supporting that anyone in the automotive industry relies on either of these tests in designing window regulators. Mallow Decl. Ex. A at 74:7-17; 168:6-20. This is not surprising considering that the SAE standard does not even apply to all electrical connectors, much less window regulators, and MIL-STD 810G is a guideline (not a standard) for military vehicles that are exposed to combat and support missions in environments unique to the military. *See* Mallow Decl. Ex. K (Lange Report) at ¶ 75(B); Mallow Decl. Exs. M and N. In fact, there is no common industry standard for testing window regulators in a specific dynamic range for vibrational loading. Mallow Decl. Ex. K at ¶ 75(B), 91. For that reason alone, Akhavein's testing is of no use to the Court. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 860 (9th Cir. 2014) (invalidating expert opinion because the reasoning and methodology underlying the expert's

---

[11] To be clear, Honda is not arguing Plaintiffs need to demonstrate each putative class member manifested the purported defect, *a la Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010). Rather, Honda is arguing Plaintiffs present no evidence to suggest all window regulator replacements, for which they seek compensation from Honda, can be attributed to their purported carrier-plate/ferrule interface defect.

testimony was not valid and could not properly be applied to the facts).

Beyond allowing Plaintiffs to say their expert conducted testing in this case, Akhavein's testing is of no consequence in this case. According to Akhavein, if Honda had tested to the SAE USCAR2 for electrical connectors and MIL-STD 810G for military cargo transports, Honda would have learned that the window regulators are susceptible to vibration amplification at certain frequencies. Dkt No. 293-2 (Akhavein Report) at 24-39. Akhavein did not, however, run any durational vibration testing to demonstrate what would actually happen at the frequencies he observed. Mallow Decl. Ex. A at 63:15-20. He has no idea whether those amplified vibrations he measured would accelerate the degradation and fatigue of the plastic and metal components, which he believes caused the failures at the carrier-plate/ferrule interface. Put another way, Akhavein fails to establish what, if any, significance exposing window-regulator assemblies to resonance frequency over a prolonged time has on the durability or performance of the window-regulator assembly. To the contrary, the vibration exposure testing he performed established the window-regulator assemblies experienced no changes after resonance frequency exposure. Dkt. No. 293-2 (Akhavein Report) at 24-39.

What is significant, however, and as Akhavein and Honda's expert Robert Lange both acknowledge, actual use and driving conditions, as well as environmental factors, impact vibrations and load imposed on the window-regulators. Mallow Decl. Ex. K (Lange Report) at ¶¶51-74; see also 36(B)(3).  Not surprisingly, heavy load variability (like driving over very rough roads or off-road, high temperature exposures, or heavy usage through repetitive window operation) will age a window regulator assembly faster than with lighter loads, more moderate temperatures, and more moderate usage. *Id.* Therefore, each person's driving style, their vehicles use, and environmental exposure will need to be analyzed to determine whether the vibrations which purportedly caused the alleged failure, were caused by the

purportedly defective design or by some other causes.[12] *Id*. at ¶¶ 74, 97-102 (concluding that "the cable loads registered under those conditions vary from vehicle to vehicle and are not constant. There is no common proof related to cable loading or the state of stress at the ferrule/carrier insert interface).

\* \* \*

In short, Akhavein's opinions suffer the same fatal flaws as Batzer's opinions: they are based on little more than his speculation, instead of facts and data. Dkt. No. 282 at 4-13. Like Batzer's opinions Akhavein's opinions should be excluded; but even if they were admissible, the opinions do not support Plaintiffs' contention of a common defect. *Id*. at 16-17. Because Plaintiffs once again fail to provide evidence of a common defect, this case will necessarily delve into a series of mini-trials which is the antithesis of what a class trial should be.

## II.     Plaintiffs Fail to Submit a Damages Methodology, As They Must

In *Comcast*, the Supreme Court held that Rule 23(b)(3)'s predominance requirement would be reduced to a mere "nullity" if a district court were permitted to certify a class based on an "arbitrary" measurement of class wide damages, without regard for whether that methodology is "just and reasonable" or "speculative." 133 S. Ct. at 1433. Although "the need for individual damages calculations does not, alone, defeat class certification,[13] the Ninth Circuit, relying on *Comcast*, has explained that Rule 23(b)(3) requires plaintiffs "to show that their [claimed] damages stemmed from the defendant's actions that created the legal liability." *Leyva*, 716 F.3d at 514; *see* Dkt. No. 272 at 15 (citing *Comcast* and explaining that "Rule 23(b)(3)'s predominance requirement also requires the moving party to show that 'damages are capable of measurement on a classwide basis.")

In *Doyle*, which Plaintiffs have relied on throughout this litigation, the Ninth

---

[12] This is made even more complicated by the fact that many of the putative class vehicles are older and may be used vehicles (*see, e.g.*, Anyiam and Pendarvis). The driving history of not just the current owner, but all previous owners must be analyzed.

[13] *See Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016).

Circuit reversed a grant of class certification for individuals who had purchased window-regulator-assembly replacements for their vehicles. 663 Fed. App'x. at 579. Citing *Comcast*, which Plaintiffs incorrectly assert is applicable only to antitrust cases, the Ninth Circuit found that because Plaintiff failed to provide an adequate damage model, "[t]here was no way to determine whether the proposed damage model measured damages that [were] solely attributable to [plaintiff's] theory of liability." *Id*. at 579. In other words, Rule 23 requires plaintiffs "to show that their [claimed] damages stemmed from the defendant's actions that created legal liability." *Levya*, 716 F.3d at 514; *Jimenez v. Allstate Ins.* Co., 765 F.3d 1161, 1167) (recognizing Comcast's holding that "a methodology for calculation of damages that could not produce class-wide results was not sufficient to support certification.")

Here, Plaintiffs ask the Court to certify a "Damages Subclass under 23(b)(3) for all Class Members who experienced Window-regulator Failures," but they fail to submit any methodology whatsoever, much less one that complies with *Comcast* and *Doyle*, to ensure that any damages would include only those "attributable to the theory of liability." 663 Fed. Appx. at 579. Plaintiffs never explain, for example, how the Court could isolate only those individuals who paid for a window-regulator replacement due to the alleged defect that caused weakness at the ferrule/carrier plate interface without resorting to a highly individualized inspection process on a window-regulator-by-window-regulator basis. Nor can they. As Plaintiffs' expert admits, the only way to determine the root cause for any individual regulator failure is to "take them and look at them." Mallow Decl. Ex. A at 179:11-15.

On this score, *Wolin* is instructive. *Wolin* does not, as Plaintiffs suggest, hold that the root cause of product failure is never relevant on certification. To the contrary, *Wolin* specifically found individualized questions predominated in the plaintiffs "Tire Warranty" claims because Land Rover agreed to replace tires or pay for realignment only "when the tire is caused by a defect in the vehicles." 617 F.3d at 1174 (emphasis in original). As *Wolin* explained:

Claims for breach of the Tire Warranty do not easily satisfy the predominance test. A determination whether the defective alignment caused a given class member's tires to wear prematurely requires proof specific to that individual litigant…Whether each proposed class member's tires wore out, and whether they wore out prematurely and as a result of the alleged alignment defect, are individual causation and injury issues.

617 F.3d at 1174 (citing *Zinser v. Accufix Research Inst. Inc.,* 253 F.3d 1180, 1183) ("notwithstanding common liability issues regarding a pacemaker defect, "to determine causation and damages…it is inescapable that many triable individualized issues may be presented").

Identical individualized inquiries are presented by Plaintiffs' request for reimbursement for window-regulator replacements. Like the "tire warranty" in *Wolin,* the reason for each individual replacement and the root cause of any window-regulator failure is critical to whether any putative class member would be entitled to any recovery under Plaintiffs' defect theory. Yet this critical inquiry cannot be met through class-wide proof, and instead requires individualized determinations, which, as in *Wolin,* fail "the predominance test."

### III. Plaintiffs Fail to Show the Requisite Commonality and Predominance as to the Elements of Their CLRA and UCL Claims

The Plaintiffs' failure to establish that common issues predominate on their CLRA and UCL claims only further precludes certification. Plaintiffs premise their CLRA and UCL claims on an alleged omission, which requires them to show Honda "had a duty to disclose the withheld information." Dkt No. 293-1 at 18-19. But instead of showing Honda actually had a duty to disclose, Plaintiffs (again) ask the Court simply to assume such a duty. *Id*. Similarly, instead of providing evidence of materiality on a class-wide basis, Plaintiffs simply assume materiality. Their assumptions are misplaced.

**Reliance**: The element of reliance still precludes certification, as it requires each class member to prove he or she would have been aware of a disclosure had one been made and would have acted differently based on that disclosure. *Mirkin v.*

20

AMERICAN HONDA MOTOR CO., INC.'S OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND COUNSEL

*Wasserman*, 5 Cal. 4th 1082, 1093 (1993). If reliance "would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116,129 (2009).

Plaintiffs cannot present common proof either that all putative class members would have been aware of a disclosure had one been made, or that they would have acted differently based on that disclosure. This is because consumers respond to the same safety message or warning differently based on a number of factors. *See* Mallow Decl. Ex. J (Expert Decl. of E. Joachimsthaler) at 76, 86–90. Moreover, when a plaintiff's "own deposition testimony undermines his own claims," the plaintiff "cannot take advantage of a presumption or inference of reliance." *Baghdasarian v. Amazon.com, Inc*., No. 2:05-cv-08060, 2009 WL 4823368, at *6 (C.D. Cal. Dec. 9, 2009). *See, e.g.,* Mallow Decl. Ex. E at 122:24-123:8 (named plaintiff Mason admitting he would have still purchased his vehicle had he known he would have to repair his window regulator).

**Materiality**: Like reliance, if materiality "would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action." *Fine v. ConAgra Foods, Inc.*, 10-CV-01848, 2010 WL 3632469, at *3 (C.D. Cal. Aug. 26, 2010). Where "there are many individual factors that must be examined before determining whether a particular individual's behavior with respect to" a product "would have been materially changed" had the defendant made different representations, there is neither commonality nor typicality. *Id.*

While Honda vehemently denies the existence of any safety defect, the level of importance a potential car buyer places on safety is nonetheless not determinable on a class wide basis because it varies from consumer to consumer, as Honda's consumer behavior expert Dr. Joachimsthaler explains, "consumers could not be expected to respond uniformly to the message." Mallow Decl. Ex. J (Joachimsthaler Decl.) at ¶¶ 8(a), 11, 19, 57, 82–86; *see also Webb v. Carter's Inc.*, 272 F.R.D. 489, 503 (C.D.

21

Cal. 2011). Plaintiffs have offered no expert evidence that a disclosure as to their narrow alleged defect that requires a relatively inexpensive repair late in a vehicle's life would be material to a reasonable consumer, and their own conduct rebuts any such a suggestion. For example, while Plaintiffs allege the purported defect can occur "often suddenly and dangerously," and "failure caused by the Defect is not necessarily a one-time event"[14]—meaning their vehicles are all subject to unexpected and dangerous failures—named plaintiffs still own and drive their vehicles. Mallow Decl. Ex. C at 153:21-154:4; Ex. D at 61:5-13, 132:8-13; Ex. E at 49:14-17. And they want to keep driving them; they just want a free replacement window-regulator assembly should they ever need one. In fact, Pendarvis and Anyiam drove around for a significant period of time without having the alleged defect repaired. Mallow Decl. Ex. C at 89:24-90:12 and Ex. D at 81:10-15.

**Causation**: A presumption of uniform causation, of course, would require a showing that there is a common product defect at issue. As discussed above, this simply does not exist. Moreover, as discussed above, given Plaintiffs' narrow defect theory, they cannot show a "class-wide injury" based merely on the need for a window-regulator-assembly replacement. Thus, unlike in *Butler* (on which Plaintiffs rely),[15] and like in *Behrend* and *Doyle*, there *is* a possibility that damages based purely on a window-regulator-assembly replacement or "failure" "could be attributed to acts of defendant that are not challenged on a class-wide basis." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013).  Plaintiffs therefore cannot prove injury, damages, or causation on a class wide basis, further defeating commonality and predominance.

## IV.    Plaintiffs Fail to Show Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality

---

[14] Dkt No. 301 at ¶¶ 82-84.
[15] Dkt. No. 293-1 at 24, 26.

requirement precludes certification "where a putative class representative is subject to unique defenses which threaten to become the focus of litigation," *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992.)  Plaintiffs are not typical of the putative class they seek to represent because they paid for window-regulator failures due to the carrier/ferrule interface issue, as opposed to the myriad other reasons window-regulators may need replacing. There are other reasons the named Plaintiffs are not typical of the putative class they seek to represent. For example, Pendarvis and Anyiam are atypical of the putative class members they seek to represent because they purchased vehicles used, and thus, have no information about how their vehicles were previously driven and whether the window-regulators in their vehicles are certified Honda window regulators, Mallow Decl. Ex. C at 142:6-1 and Ex. D at 125:20-126:15. Moreover, because Plaintiffs Anyiam and Pendarvis purchased their vehicles used, they cannot show any transaction with Honda, as is required for a CLRA claim.[16] Finally, Anyiam and Mason did not purchase their replacement regulators from Honda so they are not eligible for restitution under the UCL. *Id.* at Ex. C at 95:11-20; Exhibit E at 32:25-33:4.[17]

## V.   Superiority Remains Lacking

The superiority requirement is not met where "each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually" and where the putative class claims cannot be managed in any efficient manner. Zinser, 253 F.3d at 1192. That is the case here. All of the individualized determinations about why (if at all) a putative class members' specific window-regulator failed would cause any trial to devolve into a never ending series of mini-trials on his or her claim. *Helm v. Alderwoods Grp. Inc.*, No. 08-cv-01184, 2011 WL 855810, at *7 (N.D. Cal. Mar. 9, 2011) (denying certification because "the liability of defendants for any of the claims made will depend on the resolution of factual

---

[16] *See* Cal. Civ. Code §§ 1761(e), 1770(a).
[17] *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003).

questions" on individual basis).

Although Plaintiffs submitted a boiler-plate trial plan, they have not provided the Court with any guidance as to how it could deal with the numerous individualized issues discussed above. *Zinser*, 253 F.3d at 1189. A "court cannot rely merely on assurances of counsel that any problems with predominance or superiority can be overcome." *Id*. This is especially true because Plaintiffs do not provide any common proof of a defect, nor any way, other than with a window-regulator-by-window-regulator inspection, to determine if any individual class member experienced a failure due to Plaintiffs' narrow defect theory. These individual, fact-specific inquiries weigh heavily against the superiority of maintaining Plaintiffs' case as a class action. *Id*. Such inquiries would be incredibly time consuming and a waste of scarce judicial resources, especially in a case where the number of putative class members that allegedly experienced the alleged defect is "tiny".[18] *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practice & Prods. Liab. Litig.*, 288 F.R.D. 445, 450 (C.D. Cal. 2013).

## VI.   Plaintiffs' Request for Rule 23(b)(2) Certification Also Fails

In addition to the 23(b)(3) "Damages Class," Plaintiffs are seeking to certify an "Owner Class under Rule 23(b) for declaratory relief as to future regulator failures" to require Honda to "replace failed Window Regulators in the Class Vehicles at no cost to the Class member, for the life of the Vehicle." Dkt No. 301 ¶¶ 149, 184(e).

Plaintiffs' failure to present evidence of a common defect, and failure to meet the requirements of Rule 23(a) compel denial of certification of any class. But that is not the only reason Plaintiffs' Rule 23(b)(2) request must be denied.

First, Plaintiffs provide no reason Honda should have to replace the window-regulators in the putative class vehicles that did not fail due to the defect Plaintiffs

---

[18] Even using Dr. Wachs' and Plaintiffs highly inflated numbers, only 9.64% of vehicles have experienced window regulator replacement, for whatever reason and some substantial number less than that failed due to a weakness at the carrier-plate/ferrule interface. Mallow Decl. Ex. K (Lange Report) at 23; *see also* Dkt No. 293-2 (Akhavein Report) at 21; Mallow Decl. Ex. L (Ray Report) at ¶ 11-19.

allege. Thus, every failed window-regulator would need to be examined to determine whether it failed due to the defect Plaintiffs allege or for some unrelated reason. Each window-regulator would also need to be examined to see if it was an actual Honda window-regulator or an aftermarket part. This individual inquiry completely undermines any suggestion that a 23(b)(2) class should be certified. Put another way, by their (b)(2) class, Plaintiffs seek to make Honda the perpetual insurer of window regulators—any window regulators. This is not the law. *See supra* n. __.

Second, under Plaintiffs' theory, current owners may be part of both the putative Rule 23(b)(2) class *and* the putative Rule 23(b )(3) class; yet, according to Plaintiffs, they would not need to show predominance for the former class while they would for the latter. Plaintiffs fail to explain how treating the same putative class members across these overlapping classes disparate fashion comports with Rule 23.

Finally, Contrary to Plaintiffs' assertion, *Pella Corp. v. Saltzman*, 606 F.3d 391, 395 (7th Cir. 2010), does not suggest the Court should certify an issue class when faced with myriad individualized issues. *Pella* also predates *Dukes* and the Supreme Court's discussion of the impropriety of certifying a class under Rule 23(b)(2) where the relief sought is essentially individualized awards of monetary damages. 253 F.3d at 1195–96. The relief Plaintiffs seek here—essentially, compensation and reimbursement for future repairs (regardless of cause)—is akin to the future compensation and reserve-fund relief the Ninth Circuit found inappropriate under Rule 23(b )(2) in *Zinser*. 253 F.3d at 1195–96; cf. *Cholakyan*, 281 F.R.D. at 558–62. The fact that Plaintiffs are seeking compensation and reimbursement prospectively instead of retrospectively does not change the analysis.

## CONCLUSION

Plaintiffs have had ample opportunities over the past five years to certify this case, yet they have failed to do so. The latest attempt simply replicates the failures of their previous certification attempts. For the reasons stated above, Honda respectfully requests that this Court deny Plaintiffs' motion—and this time with prejudice.

1

2   Dated:  May 24, 2017

3                                          By:/s/ Michael L. Mallow
                                              _____ Michael L. Mallow

4                                          SIDLEY AUSTIN LLP
                                           Michael L. Mallow, SBN 188745
5                                          mmallow@sidley.com
                                           Rachel A. Straus, SBN 268836
6                                          rstraus@sidley.com
                                           555 West Fifth Street, Suite 4000
7                                          Los Angeles, California 90013
                                           Telephone: 213-896-6000
8                                          Facsimile: 213-896-6600

9                                          BOWMAN AND BROOKE LLP
                                           Paul G. Cereghini (SBN: 148016)
10                                         2901 North Central Avenue, Ste. 1600
                                           Phoenix, AZ  85012
11                                         Paul.cereghini@bowmanandbrooke.com
                                           Robert L. Wise *(pro hac vice)*
12                                         901 East Byrd Street, Ste. 1650
                                           Richmond, VA  23219
13                                         Rob.wise@bowmanandbrooke.com
                                           Ryan L. Nilsen  (SBN:  310642)
14                                         750 B. Street, Ste. 1740
                                           San Diego, CA  92101
15                                         Ryan.nilsen@bowmanandbrooke.com
                                           Marion V. Mauch (SBN:  253672)
16                                         970 West 190th Street, Ste. 700
                                           Torrance, CA  90502
17                                         Marion.mauch@bowmanandbrooke.com

18                                         *Attorneys for Defendant*
                                           *American Honda Motor Co., Inc.*
19

20

21

22

23

24

25

26

27

28